IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD COOEY,

and

JEFFREY D. HILL,

    Plaintiffs,

  v.

ROBERT TAFT, Governor,                 Case No. 2:04-cv-1156
                                                            JUDGE GREGORY L. FROST
REGINALD WILKINSON, Director,       Magistrate Judge Abel

and

JAMES HAVILAND, Warden,

    Defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

      Jeffrey Hill, a state prisoner sentenced to death by the State of Ohio, is a plaintiff in a civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio. This matter is before the Court on Plaintiff Hill's emergency motion for a preliminary injunction, *i.e.*, a stay of execution. (Doc. # 37.) For the reasons that follow, the Court finds the motion well taken. Thus, it is ORDERED, ADJUDGED, and DECREED that the State of Ohio, and any person acting on its behalf, is hereby STAYED from implementing an order for the execution of Jeffrey D. Hill issued by any court of the State of Ohio until further Order from this Court.

      Plaintiff Richard Cooey initiated in this Court a civil rights action challenging multiple facets of Ohio's lethal injection protocol as violating the Eighth Amendment's prohibition

against cruel and unusual punishment.  These proceedings have been stayed since April 13, 2005, when the Court issued an order granting Defendants' motion for an order certifying an interlocutory appeal to the United States Court of Appeals for the Sixth Circuit concerning the issue of whether Plaintiffs' action is time-barred.  (Doc. # 21.)  On August 24, 2005, the Sixth Circuit issued an order expanding the scope of the interlocutory appeal to include the issues of whether Plaintiffs' action is barred by *res judicata* and whether Plaintiffs' action should be construed as a habeas corpus action pursuant to 28 U.S.C. § 2254 instead of a civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. # 22.)

On January 19, 2006, this Court issued an order granting Plaintiff Jeffrey Hill permission to intervene.  (Doc. # 35.)  On April 12, 2006, the Supreme Court of Ohio set an execution date for Plaintiff Hill, *i.e.*, June 15, 2006.  (Plaintiff's Emergency Motion for Preliminary Injunction, Doc. # 37, at 1.)  Accordingly, Plaintiff Hill filed the instant Emergency Motion for Preliminary Injunction on April 14, 2006.  Also before the Court are the Defendants' brief in opposition (Doc. # 39) and Plaintiff's reply memorandum (Doc. # 42).

On April 28, 2006, this Court conducted an informal telephone conference in accordance with S.D. Ohio Civ. R. 65.1.  During that conference, the parties agreed to forego a hearing and have this Court resolve the preliminary injunction motion on their briefs.

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)). The decision of whether to issue a preliminary injunction rests within the discretion of

the district court.  *See, e.g., N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir. 1989).  In determining whether to exercise its discretion to grant a preliminary injunction, a district court must balance the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995)).  The parties should note that "findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits."  *United States v. Edward Rose & Sons*, 384 F.3d. 258, 261 (6th Cir. 2004) (citing *University of Texas v. Camenisch*, 451 U.S. 390 395 (1981)).

Addressing the stay-of-execution issue in the context of a method-of-execution challenge, the Supreme Court of the United States in *Nelson v. Campbell*, 124 S.Ct. 2117, 2125-26 (2004), observed that, "the mere fact that an inmate states a cognizable § 1983 claim does not warrant the entry of a stay as a matter of right."  The Supreme Court pointed to its decision in *Gomez v. United States Dist. Court for Northern Dist. of California*, 503 U.S. 653 (1992) (*per curiam*), where it left open the question of whether an inmate's claim was cognizable under § 1983, but vacated the stay of execution nonetheless because the inmate "waited until the 11th hour to file his challenge despite the fact that California's method of execution had been in place for years."  *Nelson*, 124 S.Ct. at 2126 (discussing *Gomez,* 503 U.S. at 654).  The Supreme Court emphasized:

> Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State's significant interest in enforcing its criminal judgments, see *Blodgett*, 502 U.S., at 239, 112 S.Ct. 674; *McCleskey*, 499 U.S., at 491, 111 S.Ct. 1454, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

*Nelson*, 124 S.Ct. at 2126.

In connection with this civil rights action and similar actions that have since been dismissed, this Court has twice considered and denied motions for a preliminary injunction staying the execution of a movant. In the case of Adremy Dennis, the Court was constrained to deny that plaintiff's motion for a preliminary injunction because, given the State's strong interest in enforcing its criminal judgments, along with the plaintiffs' inexcusable delay in pursuing a civil rights action challenging Ohio's lethal injection protocol, "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Dennis v. Taft*, 2:04-cv-532, Doc. # 14, at 14 (quoting *Nelson v. Campbell*, 124 S.Ct. 2117 (2004)). Following the United States Supreme Court's reasoning in *Nelson* and *Gomez*, this Court concluded that:

> If the instant action cannot be characterized as an 11th hour challenge, given the fact that Petitioner Dennis was not facing an execution date when he filed his complaint, it can certainly be characterized as a 9th or 10th hour challenge, given the fact that he had exhausted all of his other available remedies and the State had requested an execution date to be set.

*(Dennis*, 2:04-cv-532, Doc. # 14, at 12.)

In the case of John R. Hicks, who was granted permission on November 23, 2005 to intervene in the instant action, the Court observed that:

> The situation here is perhaps even more egregious than that in *Dennis*.

> Here, although the Ohio Supreme Court set Hicks's execution date on October 5, 2005, Hicks waited until November 23, 2005 to pursue a stay. This exceeds the eleven days separating the establishment of an execution date and the motion for injunctive relief involved in *Dennis*. In both instances, the movant delayed unnecessarily.

(Doc. # 26, at 4.)

Plaintiff Jeffrey Hill's case is readily distinguishable from those of Dennis and Hicks. First, Plaintiff Hill, when he moved to intervene in the instant action, initiated his civil rights action challenging Ohio's lethal injection protocol in a timely fashion as specifically outlined by this Court in its Opinion and Order of March 28, 2005. (Doc. # 14.) There, the Court concluded that "the statute of limitations on claims raising specific challenges to a method of execution, but otherwise conceding that the execution can be carried out in a constitutional manner if the specific challenges are addressed, begins to run when the execution becomes imminent and the plaintiff knows or has reason to know of the facts giving rise to his specific challenges." (Doc. # 14, at 12.) This Court has reasoned that those two conditions are met when the plaintiff has exhausted all of his state and federal avenues of relief, *i.e.*, when the United States Supreme Court denies *certiorari* in the plaintiff's habeas corpus proceedings or otherwise issues a decision foreclosing federal habeas corpus relief. (Doc. # 14, at 11.) When Plaintiff Hill filed his emergency motion to intervene on December 11, 2005, he avers, the United States Supreme Court had "recently denied [his] petition for a writ of certiorari and the time for filing the rehearing petition has not yet run." (Hill's Emergency Motion to Intervene, Doc. # 29, at 2.) Thus, unlike Dennis and Hicks, Plaintiff Hill was <u>not</u> within days of his execution. He did <u>not</u> sit on his laurels. He did <u>not</u> wait until the State had set or even requested an execution date. Rather, immediately after the occurrence in his case of the preconditions identified by this Court

5

in its March 28, 2005 for the accrual of his cause of action, Plaintiff Hill moved to intervene in the instant action.

The Court takes note of *Crawford v. Taylor*, 126 S.Ct. 1192 (2006), a case highlighted by Plaintiff Hill in his reply memorandum in which the Supreme Court of the United States refused to interfere with the entry of a stay of execution in a case challenging the State of Missouri's lethal injection protocol. (Reply Memorandum, Doc. # 42, at 4.) As Plaintiff Hill points out, and as review of the attached docket confirms, the plaintiff had commenced his federal litigation challenging the lethal injection protocol years before his execution date had been set. (Doc. # 42, at 4-5; App. A, at 7-10.) Thus, to the extent that *anything* can be gleaned from non-action on the part of the Supreme Court of the United States, it would appear that the Court seems poised to let stand an entry of a stay of execution in cases raising lethal-injection challenges wherein the plaintiff had not engaged in undue delay in bringing his challenge.

A second factor distinguishing Plaintiff Hill's case from those of Dennis and Hicks is the mounting evidence calling Ohio's lethal injection protocol, and the same or similar protocols employed by other states, increasingly into question. In *Morales v. Hickman*, 415 F. Supp. 2d 1037 (N.D. Cal. 2006), the district court took note of "evidence of a kind that was not presented in [] earlier cases," *id.* at 1043, purporting to demonstrate that inmates recently executed in California under its lethal-injection protocol may have continued breathing more than a minute after the administration of sodium thiopental, in contravention of the opinion of Dr. Mark Dershwitz that the amount of sodium thiopental prescribed under California's lethal-injection protocol, *i.e.*, 5 mg, would cause an inmate to lose consciousness and stop breathing within one minute. *Id.* at 1043-44. Although the State subsequently submitted a supplemental affidavit by

6

Dr. Dershwitz opining that the "respirations" observed by witnesses may have been "chest wall movements" and not respirations at all, the district court, while duly considering Dr. Dershwitz's opinion in that regard, concluded that "evidence from eyewitnesses tending to show that many inmates continue to breathe long after they should have ceased to do so cannot simply be disregarded on its face." *Id*. at 1045.

Less than two months later, in *Brown v. Beck*, No. 5:06-CT-3018-H, the District Court for the Eastern Division of North Carolina, Western Division, also had the benefit of "evidence of a kind that is different from that presented in the cases previously considered by this and other courts." (Doc. # 37-2, at 8.)  Specifically, the district court had before it toxicology data following four recent executions in North Carolina showing post-mortem levels of sodium pentothal contradicting the opinion of Dr. Dershwitz as to the expected concentration that would be present in a man of average size after having been given a dose of 3000 mg of sodium pentothal.  (Doc. # 37-2, at 8-9.)  As in *Morales*, the defendants submitted a supplemental affidavit from Dr. Dershwitz offering possible explanations for the post-mortem levels of sodium pentothal.  The district court in *Brown* stated that, "[w]hile Dr. Dershwitz's explanation may be correct, the Court cannot ignore the serious questions raised by this [toxicology] data."  (Doc. # 37-2, at 9.)  The district court in *Brown* also had before it affidavits from attorneys present at recent executions who had witnessed the condemned inmates "writhing, convulsing, and gagging when executed." (Doc. # 37-2, at 9.)  The district court noted that, according to an affidavit by Dr. Mark J.S. Heath, such witness accounts of writhing and convulsing would be inconsistent with a sufficient dose of sodium pentothal having been successfully delivered to the brain such that the condemned inmate" would not feel pain.  (Doc. # 37-2, at 10.)

7

This Court has no evidence before it of the kind that the district courts in *Morales* and *Brown* had before them.  The reason is not due to a lack of diligence on the part of the plaintiffs, but because this case has been stayed since April 13, 2005, when this Court granted *Defendants'* motion for an order to certify an interlocutory appeal.  (Doc. # 21.)  The parties in this case have also relied, preliminarily, on affidavits by Drs. Mark J.S. Heath and Mark Dershwitz.[1]  That being so, this Court would be remiss if it did not take note of the evidence that the district courts in *Morales* and *Brown* considered.  And that evidence raises grave concerns about whether a condemned inmate would be sufficiently anesthetized under Ohio's lethal-injection protocol prior to and while being executed, especially considering that the dose of sodium thiopental prescribed under Ohio's lethal-injection protocol (2 grams) is less than that prescribed under California's protocol (5 grams) and that prescribed under North Carolina's protocol (3000 mg).  Compounding the gravity of the risk that Plaintiff Hill will not be properly anesthetized prior to and while being executed, as the district courts in *Morales* and *Brown* noted, is the absence prior to and during the execution process of certified medical personnel capable of ensuring, among other things, that the drugs are properly prepared and delivered, and that the condemned inmate has been rendered unconscious prior to and during the administration of the pancuronium bromide and potassium chloride.  In short, the growing body of evidence calling Ohio's lethal injection protocol increasingly into question distinguishes Plaintiff Hill's case from previous cases that this Court has considered.

As the foregoing demonstrates, principles of equity do not militate against Plaintiff Hill regarding undue delay versus the State's substantial interest in enforcing its criminal judgments.

---

[1] The defendants have also submitted an affidavit by Dr. Carl Rosow agreeing with various observations by Dr. Dershwitz and disagreeing with several observations by Dr. Mark J.S. Heath.  (Doc. # 39-7.)

Turning to the four factors that must be balanced, *McPherson*, 119 F.3d at 459, this Court is persuaded that Plaintiff Hill is entitled to a preliminary injunction staying his execution. At the very least, Plaintiff has demonstrated a *stronger* likelihood of success on the merits than the plaintiffs who preceded him, given the growing body of evidence calling Ohio's lethal injection protocol increasingly into question. This Court can not and will not turn a blind eye to the evidence presented in the cases of *Brown v. Beck* in North Carolina and *Morales v. Hickman* in California appearing to contradict the opinion of Dr. Mark Dershwitz that virtually all persons given the dose of sodium thiopental prescribed under Ohio's lethal-injection protocol would be rendered unconscious and would stop breathing within one minute. (Doc. # 39-6, at ¶ 8.) Given the evidence that has begun to emerge calling this and other conclusions by Dr. Dershwitz into question, the Court is persuaded that there is an unacceptable and unnecessary risk that Plaintiff Hill will be irreparably harmed absent the injunction, *i.e.*, that Plaintiff Hill could suffer unnecessary and excruciating pain while being executed in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment.

  The Court is not persuaded that issuance of the preliminary injunction will cause substantial harm to the State by comparison. Without diminishing in any way the State's significant interest in enforcing its criminal judgments in a timely fashion, it appears to this Court – even without a fully developed record – that the potential flaws identified in Ohio's lethal injection protocol giving rise to the unacceptable risk of violating the Eighth Amendment's proscription against cruel and unusual punishment are readily fixable. Thus, any delay in carrying out Plaintiff's execution should and can be minimal. Additionally, in regard to Defendants' argument that the granting of an injunction would harm the State's interest in

9

fulfilling the judgment against Plaintiff Hill in a timely manner, the Court notes that but for the State's interlocutory appeal, many if not all of the underlying issues would in all likelihood have been resolved by now. The fact that the state-obtained stay has prevented such resolution qualifies the weight to be afforded Defendants' asserted harm, because such harm is ultimately self-inflicted. Self-inflicted harm that could result from issuance of preliminary injunctive relief should not necessarily preclude an injunction. *Cf. Pappan Enter. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (holding in trademark infringement case that "a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchiser of the mark"); *Midwest Guar. Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harms way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct"). Finally, as noted by counsel for Plaintiff Hill during the informal telephone conference, it bears noting in regard to the extent to which issuance of the preliminary injunction would cause substantial harm to others that the victim's family in this case, who are also Plaintiff Hill's family, do not want him to be executed at all.

      Finally, this Court is in agreement with Plaintiff Hill that the public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.

      This Court is mindful of the many cases raising the same or similar challenges in which

motions for a preliminary injunction have been denied. *See, e.g., Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006); *Bieghler v. Donahue*, No. 06-1300, 2006 WL 229027 (7th Cir. Jan. 26, 2006), *vacated*, 126 S.Ct. 1190 (2006); *Vinson v. Johnson*, No. 05A971, 2006 WL 1109748 (U.S. Apr. 27, 2006). In those cases, however, the plaintiff's undue delay in bringing his § 1983 action was a factor weighing against him relative to the State's strong interest in enforcing its criminal judgments. For instance, in *Smith v. Johnson*, the Fifth Circuit remarked, "we have made clear that waiting to file such a challenge days before a scheduled execution constitutes unnecessary delay." 440 F.3d at 263 (citations omitted). Further, in *Vinson v. Johnson*, it appears that the plaintiff filed his § 1983 action within one month of his scheduled execution. (Doc. # 44-1.) As discussed more fully above, Plaintiff Hill does not, in this Court's view, have that factor weighing against him.

The Court is also mindful that in the cases upon which it has relied in finding that petitioner has demonstrated a stronger likelihood of success on the merits than any plaintiff before him, *Morales* and *Brown*, the district courts conditionally denied the plaintiffs' respective motions for a preliminary injunction, choosing instead to fashion remedies under which the States of California and North Carolina, respectively, could carry out the planned executions without violating the plaintiffs' Eighth Amendment rights. *Morales*, 415 F. Supp. 2d at 1047; *Brown*, No. 5:06-CT-3018-H, at *13-15 (Doc. # 37-2). In view of the lack of development of the record in this case, this Court does not feel that it is in a position to avoid the issuance of a preliminary injunction by fashioning a remedy by which Ohio could carry out the execution of Plaintiff Hill within the confines of the Eighth Amendment.

For the foregoing reasons, Plaintiff Hill's motion for an emergency preliminary

11

injunction is **GRANTED**. (Doc. # 37.) This Court declines to require a security bond. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (explaining that whether to require a bond is within the discretion of the court).

**Thus, it is ORDERED, ADJUDGED, and DECREED that the State of Ohio, and any person acting on its behalf, is hereby STAYED from implementing an order for the execution of Jeffrey D. Hill issued by any court of the State of Ohio until further Order from this Court.**

**IT IS SO ORDERED.**


    s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**