UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD COOEY, et al.,**

        **Plaintiffs,**                           **Case No. 2:04-cv-1156**
                                                  **JUDGE GREGORY L. FROST**
        **v.**                                             **Magistrate Judge Mark R. Abel**

**ROBERT TAFT, et al.,**

        **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for consideration of an emergency motion to intervene (Doc. # 65-1) filed by Jeffrey Lundgren, Defendants' memorandum in opposition (Doc. # 69), and Lundgren's reply (Doc. # 71). For the reasons that follow, the Court **DENIES WITHOUT PREJUDICE** the motion to intervene.

**I.  Discussion**

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original plaintiff in the captioned civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio. On November 23, 2005, John R. Hicks was permitted to intervene in the action.[1] (Doc. # 26.) On January 9, 2006, Jeffrey D. Hill was permitted to intervene in the action. (Doc. # 35.) On June 16, 2006, Johnnie Baston and Arthur Tyler were permitted to intervene in the action. (Doc. # 54.) On September 1, 2006, Jeffrey Lundgren filed an emergency motion to intervene. (Doc. # 65-1.)

The original complaint alleges that Ohio's lethal injection protocol risks torturing a

---

[1] Hicks thereafter was dismissed as a plaintiff on January 4, 2006, following his November 29, 2005 execution. (Doc. # 34.)

conscious inmate to death by suffocation.  Defendants oppose Lundgren's motion to intervene, not only on the basis of his failure to exhaust administrative remedies, but also because, in Defendants' view, Lundgren is attempting to circumvent rules governing class actions and Lundgren's obesity, diabetes, and hypertension present unique medical problems not accounted for by the current protocol.  (Doc. # 69, at 3, 6.)  Regarding Defendants' exhaustion argument, the record before this Court does not reflect that Lundgren, before attempting to intervene in this action, exhausted his administrative remedies by filing a grievance challenging the lethal injection protocol.  However, Lundgren avers in his reply that "[s]teps are being taken to exhaust those remedies ...." (Doc. # 71, at 2.)

>The Prison Litigation Reform Act ("PLRA") provides in relevant part that:
>
>No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The Sixth Circuit has explained that "[t]he Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems."  *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

It is now well settled that complete exhaustion of administrative remedies, while not jurisdictional, is a mandatory pre-condition to the filing of an action in federal court challenging prison conditions.  *Thomas v. Woolum*, 337 F.3d 720, 725 (6th Cir. 2003); *Knuckles El v. Toombs*, 215 F.3d 640, 640 (6th Cir. 2000); *Freeman*, 196 F.3d at 645; *Brown v. Toombs*, 139 F.3d at 1103-04.  In order to demonstrate that he or she has completely exhausted his or her administrative remedies, a plaintiff must attach to the complaint in federal court a copy of the administrative dispositions.  *Knuckles El*, 215 F.3d at 640; *Brown*, 139 F.3d at 1104.  If it does

not appear that a plaintiff has completely exhausted his or her administrative remedies, the federal court should dismiss the complaint without prejudice. *Brown*, 139 F.3d at 1104.

The exhaustion requirement set forth in the PLRA applies only to claims challenging "prison conditions." However, the PLRA does not define "prison conditions." Accordingly, the Sixth Circuit held "that the scope of § 1997e(a)'s exhaustion requirement is determined by the definition of a 'civil action with respect to prison conditions' as set forth in [42 U.S.C.] § 3626(g)(2)." *Freeman*, 196 F.3d at 644. That section, in turn, provides:

> The term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

42 U.S.C. § 3626(g)(2).

In a related complaint filed by Richard Cooey and Adremy Dennis, this Court concluded that the complaint filed by the plaintiffs challenging Ohio's lethal injection protocol was an action "with respect to prison conditions" within the meaning of 42 U.S.C. §§ 1997e(a) and 3626(g)(2), and that the plaintiffs had available to them under O.A.C. 5120-9-31 the prison administrative remedy of a grievance filed directly with the Office of the Chief Inspector of the Ohio Department of Rehabilitation and Correction. (Case No. 2:04-cv-532, Doc. #20.) The Court went on to dismiss the complaint without prejudice, due to the plaintiffs' failure to exhaust the administrative remedies available to them.

Cooey and Dennis subsequently exhausted their administrative remedies by filing grievances directly to the Office of the Chief Inspector, and thereafter filed new complaints in this Court (Case Nos. 2:04-cv-1156 and 2:04-cv-920, respectively). The Chief Inspector issued

nearly identical decisions dismissing those grievances. Specifically, the decision in Cooey's case was as follows:

> The Office of the Chief Inspector is in receipt of your Notification of Grievance. In your grievance, you challenge the means by which lethal injection is conducted as it relates to an execution. You also challenge not being able to have your attorney present during the execution unless the attorney attends as one of the three witnesses you are allowed.
>
> In regards to witnesses this is controlled by statute, which is not within the control of the director or warden. O.R.C. 2949.25 states "only the following persons may be present:" It goes on to list the warden and any other person selected by the director to ensure that the death sentence is executed, the sheriff, the director or director's agent, physicians, "the clergy person in attendance upon the prison, and not more than three other persons to be designated by the prisoner, who are not confined in any state institution;" not more than three persons to be designated by the immediate family of the victim, and representatives of the news media. Any prosecutor that is present would be a designee of the immediate family of the victim and one of their three permitted witnesses. Accordingly because there is no specific provision to permit your attorney to be present, your attorney can only attend as one of your designated witnesses.
>
> As it relates to the means used to carry out the lethal injection: DRC Policy #01-COM-11 states that it is the policy of the department to carry-out the process in a professional, humane, sensitive and dignified manner. Each person involved in administering the lethal injection is required to be appropriately qualified under Ohio law to perform the task they are required to perform i.e. administer medications, prepare the intravenous injection, etc. This policy and procedure was developed and designed based upon research and information received from various sources, including other states that perform lethal injections. It is also noted this matter is currently the subject of litigation, therefore a proper court of law will ultimately decide the legality of the methods used.
>
> This grievance is **DISMISSED**.

(Case No. 2:04-cv-1156, Doc. # 2-2, at 24.) Cooey's action remains pending; he is the primary named plaintiff in the action in which Lundgren seeks to intervene. Dennis's action ultimately was dismissed, following his execution. (Case No. 2:04-cv-920, Doc. # 25.)

On November 23, 2005, this Court issued an order allowing John R. Hicks to intervene in

the instant action. Hicks had asserted that exhaustion of his administrative remedies was futile, but had in any event attempted to exhaust his remedies by the time he had sought to intervene. Because he had received no response to his grievance despite the immediacy of his pending execution date, the Court allowed his claim to proceed. (Case No. 2:04-cv-1156, Doc. # 35, at 7.) Ultimately, the Court concluded that Hicks was not entitled to a preliminary injunction staying his execution, and he was dismissed as a party from this action on January 4, 2006, following his execution. (Doc. # 34.)

On January 9, 2006, this Court issued an order allowing Jeffrey D. Hill to intervene in the instant action. (Doc. # 35.) Regarding the prerequisite of exhausting his available administrative remedies, Hill averred in his proffered complaint that the requirement was inapplicable to him because of the decision that had been issued by the Chief Inspector dismissing Cooey's grievance. (*Id*. at 4.) This Court agreed. Specifically, the Court concluded that the Chief Inspector had provided no reason for denying Cooey's grievance that spoke to the core issue of his grievance: the protocol used in executing the inmate. (*Id*. at 5-6.) The Court also concluded that the only portion of the Chief Inspector's decision that *did* touch upon the core issue amounted to a non-decision that effectively evaded the merits of the issue so long as they were part of a litigation pending in federal court. (*Id*. at 6-7.) Ultimately, the Court concluded "that based on the limited information in the record, Ohio does not–on the narrow method-of-execution issue and at least during the litigation forming the captioned case–have an 'available' administrative grievance process as federal law requires." (*Id*. at 8.) To be clear, regarding Defendants' argument that exhaustion of administrative remedies is mandatory, even if it is a foregone conclusion that pursuit of those remedies will be futile, the Court concluded that

5

the administrative remedy at issue was *unavailable*, not futile. (*Id.* at 7-8.)

On June 16, 2006, this Court issued an order allowing Johnnie Baston and Arthur Tyler to intervene in the instant action. (Doc. # 54.) Whether these parties had exhausted their administrative remedies was not an issue, because Defendants raised no new arguments concerning the exhaustion requirement following the conclusions this Court had reached as to Hill. (Doc. # 50, at 3; Doc. # 51, at 3.)

On August 21, 2006, Jerome Henderson filed a *pro se* motion to intervene in the instant action. (Doc. # 60.) On September 8, 2006, Defendants filed a memorandum in opposition. (Doc. # 68.) Henderson has not yet filed a reply. His motion to intervene remains pending.

On September 1, 2006, Lundgren filed an emergency motion to intervene in the instant action. (Doc. # 65.) Defendants filed a response in opposition on September 8, 2006. (Doc. # 69.) Lundgren filed a reply on September 14, 2006. (Doc. # 71.) This matter is now before the Court on the question of whether Lundgren should be permitted to intervene. The Court is constrained to answer that question in the negative.

Regarding the mandatory pre-condition of complete exhaustion of administrative remedies, Defendants argue in opposing Lundgren's motion to intervene that, subsequent to this Court's conclusion as to Hill's motion to intervene that administrative remedies were not available on the narrow method-of-execution issue, "intervening changes in both law and the facts warrant reconsideration of that position." (Doc. # 69, at 3.) Specifically, Defendants note that a decision issued by the Chief Inspector on June 23, 2006 dismissing the grievance filed by Johnnie Baston conflicts with this Court's prior interpretations, insofar as it directly addressed the core issue of Baston's grievance: the protocol used in executing the inmate. (Doc. # 69, at 4-

6

5.) Defendants assert that "[t]here is now evidence then that the administrative review process is an available remedy." (*Id*. at 5.) The Court agrees.

A review of the Decision of the Chief Inspector as to Johnnie Baston's grievance (Doc. # 69) reveals a one-hundred-eighty-degree turn on the part of the Chief Inspector with respect to addressing the core issue of grievances challenging the protocol used in executing the inmate. In dismissing the grievances filed by Cooey and Dennis, the Chief Inspector did not provide a reason that spoke to the core issue of the grievance; rather, the Chief Inspector simply noted the policy underlying executions in Ohio, the qualifications of the people involved, and the development of the policy. (*See* Doc. # 35, at 5-6.) To the extent that the Chief Inspector *did* touch upon the core issue of the grievance, he "punted the issue to the judicial branch" (Doc. # 35, at 6), thereby serving notice, in this Court's view, that the administrative remedy was unavailable during the pendency of this litigation on the specific method-of-execution claim involved here. The decision issued by the Chief Inspector dismissing Johnnie Baston's grievance, on the other hand, addressed the core issue head on. Citing an affidavit by Dr. Mark Dershwitz, the Chief Inspector concluded, among other things, that "[t]o the extent that your grievance alleges that the department's method of execution will result in unnecessary pain and suffering, your allegation is without merit and your grievance must be denied." (Doc. # 69-2, at 2.) That being the case, the Court is constrained to find that, as to Jeffrey Don Lundgren, the administrative remedy of a grievance directly to the Office of the Chief Inspector pursuant to O.A.C. 5120-9-31 is an available remedy within the meaning PLRA. *See* 42 U.S.C. § 1997e(a).

The Court's conclusion in this regard does not reach back retroactively to plaintiffs Hill, Baston, or Tyler. The limited information available to the Court at the time they filed their

motions to intervene demonstrated that Ohio did not have an available administrative grievance process on the narrow method-of-execution issue and at least during the litigation forming the captioned case. That the landscape in this regard has *now* apparently changed does not and should not impact Hill, Baston, or Tyler.

In sum, the Court is constrained to deny Lundgren's emergency motion to intervene (Doc. # 65-1), without prejudice, due to Lundgren's failure to exhaust administrative remedies available to him in violation of 42 U.S.C. § 1997e(a). Because the Court is denying Lundgren's motion on the basis of his failure to exhaust administrative remedies, the Court need not address Defendants' additional arguments against allowing Lundgren to intervene.

In his reply, Lundgren states that "[s]teps are being taken to exhaust [administrative] remedies however, it is imperative that a stay be granted and the ultimate sentence held in abeyance pending the grievance process exhaustion." (Doc. # 71.) There is no motion before the Court for a preliminary injunction to stay Lundgren's execution. Assuming that Lundgren intends to exhaust his administrative remedies and attempt to intervene in this action following complete exhaustion, he is advised that, in addition to filing any motion to intervene in this action, he must also file a *separate* motion for a preliminary injunction to stay his execution.

The Court hastens to add what should be readily apparent to all parties involved: Time is of the essence. Lundgren faces an execution date of October 24, 2006. Lundgren can do his part by taking the necessary steps to promptly and properly pursue his administrative remedies, steps that he avers are already being taken. The Court can only hope that prison officials will do their part by taking prompt action on any administrative grievance filed by Lundgren.

## II. Conclusion

For the foregoing reasons, Jeffrey Don Lundgren's emergency motion to intervene is **DENIED WITHOUT PREJUDICE**.  (Doc. # 65-1.)

**IT IS SO ORDERED.**

        /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE