IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD COOEY, et al.,**

       **Plaintiff,**

     **v.**                                                          **Case No. 2:04-cv-1156**
                                                                        **JUDGE GREGORY L. FROST**
**ROBERT TAFT, et al.,**                              **Magistrate Judge Mark R. Abel**

       **Defendants.**

<u>**OPINION AND ORDER**</u>

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original

plaintiff in a civil rights action pending before this Court that challenges multiple facets of the

lethal injection protocol used by the State of Ohio.   This matter is before the Court for

consideration of movant Jerome Henderson's second amended emergency motion to intervene

(Doc. # 104) and motion for a preliminary injunction (Doc. #106).  For the reasons that follow,

the Court **GRANTS** the former and **DENIES** the latter.

**I.  Second Amended Emergency Motion to Intervene**

**A.  Statute of Limitations**

Defendants first argue that it would be futile to allow Henderson to intervene because his

§ 1983 claims are time-barred.  On March 28, 2005, this Court issued an Opinion and Order

denying Defendants' motion to dismiss Cooey's civil rights action challenging multiple facets of

Ohio's lethal injection protocol.  (Doc. # 14.)  In so doing, the Court stated the following about

when the statute of limitations begins to run on such claims:

> [T]he statute of limitations begins to run on method-of-execution challenges
> raised in a § 1983 action when two conditions are met: the execution becomes
> imminent and the plaintiff knows or has reason to know of the facts giving rise to
> his specific method-of-execution challenge.  In terms of defining when an

> execution becomes imminent, this Court is of the view that an execution becomes imminent not necessarily when an execution date is set, but when all other legal challenges to the validity of a death sentence come to an end, *i.e.*, when the plaintiff has exhausted all of his state and federal avenues of relief.  In this Court's view, that occurs when the United States Supreme Court denies *certiorari* in the plaintiff's habeas corpus proceeding or otherwise issues a decision foreclosing federal habeas corpus relief.

(Doc. # 14, at 11.)  Defendants argue that Henderson's § 1983 claims began to accrue on April 25, 2002, when the United States Supreme Court denied certiorari in Henderson's habeas corpus appeal.  Defendants insist that "[w]hile Henderson litigated a collateral Rule 60(b) action after that point in time, his execution date was 'imminent' at the moment the Supreme Court denied certiorari."  (Doc. # 111, at 5.)  Defendants reason that "if collateral litigation successfully staying an execution date changed the analysis, then this Court would have found that the statute of limitations never began for Cooey, who similarly avoided execution through collateral Rule 60(b) litigation before he resorted to filing the instant § 1983 action."  (Doc. # 111, at 5.)  Defendants conclude, therefore, that Henderson's two-year statute of limitations ran out on April 25, 2004.  Defendants' arguments miss the mark and, for the reasons that follow, this Court finds that Henderson's § 1983 method-of-execution challenge is not time-barred.

The Court rejects Defendants' dubious argument that this Court's language defining when the statute of limitations begins to run on a § 1983 method-of-execution challenge forecloses the possibility that Henderson's collateral Rule 60(b) litigation tolled the statute in his case.  Defendants' reason that "if collateral litigation successfully staying an execution date changed the analysis, then this Court would have found that the statute of limitations never began for Cooey, who similarly avoided execution through collateral Rule 60(b) litigation before he resorted to filing the instant § 1983 action."  (Doc. # 111, at 5.)  Fatal to Defendants'

argument is that the fact of Cooey's collateral Rule 60(b) litigation was never before this Court

for consideration when it issued its March 28, 2005 Opinion and Order (Doc. # 14) defining

when a § 1983 method-of-execution claim accrues.  This is the first that the Court has heard

anything about Cooey's collateral Rule 60(b) litigation.  Therefore, the language from this

Court's March 28, 2005 order cannot be construed as expressing an opinion one way or the other

about whether, or to what extent, collateral Rule 60(b) litigation may toll the statute of

limitations on a § 1983 method-of-execution challenge.  Defendants will not be heard to argue

otherwise.

This Court's language in its March 28, 2005 decision defining when the statute of

limitations begins to run on § 1983 method-of-execution challenges, as well as the reasoning

supporting that definition, make it clear that the imminency of a plaintiff's execution is one of

two paramount conditions that trigger the statute of limitations.  (The other condition is when the

plaintiff knows or has reason to know of the facts giving rise to his specific method-of-execution

challenge.)  The Court attempted, based on the limited facts it had before it at the time, to define

when that usually occurs as to individuals under sentence of death, but the United States

Supreme Court denying certiorari in the plaintiff's habeas corpus proceeding was but one

occurrence that this Court offered that usually signals the imminency of a plaintiff's execution.

The Court preceded that example by explaining that "an execution becomes imminent not

necessarily when an execution date is set, but when all other legal challenges to the validity of a

death sentence come to an end, *i.e.*, when the plaintiff has exhausted all of his state and federal

avenues of relief."  (Doc. # 14, at 11.)  That the Court did not then speculate about all of the

various means by which a plaintiff could legitimately challenge the validity of his death

3

sentence, staving off execution so that his execution is not imminent, should not now result in the absurd conclusion that Henderson's execution became imminent when the United States Supreme Court denied certiorari in his habeas corpus appeal in April 2002 and remained so even when, on July 10, 2003, the district court conditionally granted habeas corpus relief that invalidated Henderson's death sentence.

Defendants' argument assumes that, had this Court been aware of Cooey's collateral Rule 60(b) litigation, it would have found that the statute of limitations on Cooey's § 1983 method-of-execution challenge had never began to run. That is not necessarily the case. The Court made no such finding when it first considered the statute of limitations as to Cooey's § 1983 method-of-execution challenge, and the Court need not now say what effect, if any, Cooey's collateral Rule 60(b) litigation might have had on the running of his statute of limitations because the Court still has too few facts before it about that Rule 60(b) litigation.

With respect to Jerome Henderson, however, the Court has sufficient facts before it to say the following. Consistent with this Court's March 28, 2005 Opinion and Order (Doc. # 14), the statute of limitations could have began to run on Henderson's § 1983 method-of-execution challenge *no earlier than* April 15, 2002. That is when Henderson's execution became imminent by virtue of the United States Supreme Court's decision denying *certiorari* in his habeas corpus appeal. If Henderson knew or had reason to know of the facts giving rise to his specific method-of-execution challenge by that date, then the limitations period would have started to run.

But even assuming *arguendo* that both of the foregoing conditions were satisfied as of April 15, 2002, Henderson's claim is still not time-barred. The letter and spirit of this Court's March 28, 2005 Opinion and Order compel the conclusion that the statute of limitations on

Henderson's § 1983 claim was equitably tolled on July 10, 2003, when the district court issued

its decision conditionally granting habeas corpus relief that invalidated Henderson's death

sentence.  At that point, Henderson's execution was no longer imminent; it is absurd to suggest

otherwise.  And at that point, just over one year of Henderson's two-year statute of limitations

had run, which means that Henderson was within the statute of limitations when he filed the

instant motion to intervene.[1]  The appellate mandate in those proceedings just issued in October

2006, and the filings indicate that Henderson is currently preparing to seek review from the

United States Supreme Court.  Having found that Henderson's § 1983 method-of-execution

challenge is not time-barred, the Court rejects Defendants' argument that allowing Henderson to

intervene would be futile.

### B.  Permissive Intervention

Having determined that Henderson's § 1983 method-of-execution challenge is not time-

barred, the Court turns now to the question of whether intervention is warranted.  As it did with

respect to John Hicks, Jeffrey Hill, Johnnie Baston, Arthur Tyler, and Jeffrey Lundgren, the

Court concludes that permissive intervention is warranted pursuant to Fed. R. Civ. P. 24(b)(2).

That rule provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: ... (2)
> when an applicant's claim or defense and the main action have a question of law
> or fact in common. ... In exercising its discretion the court shall consider whether
> the intervention will unduly delay or prejudice the adjudication of the rights of the

---

[1]     The Court notes the *possibility*–a dearth of sufficient facts prevents the Court from saying with *certainty*–that the statute of limitations on Henderson's § 1983 method-of-execution challenge was tolled far earlier when the district court refused to lift its already-issued stay of execution.  Both parties reference the fact that the Warden asked the district court to lift its stay of execution and that the district court apparently refused.  (Doc. # 111, at 3; Doc. # 117, at 5.)  Thus, there may well be a stay of execution that continued until a date unknown to this Court and perhaps still exists.  That said, this Court is in no position, based on the limited record before it, to express any opinion as to what effect the district court's action or inaction in this regard had on the tolling of Henderson's statute of limitations.  The existing stay order is an alternative ground that this Court need not and does not reach.

original parties.

Fed. R. Civ. P. 24(b)(2).

The Court must first determine whether the application to intervene is timely.  In

addressing timeliness, the Court must consider:

> (1) the point to which the suit has progressed; (2) the purpose for which
> intervention is sought; (3) the length of time preceding the application during
> which the proposed intervenor knew or reasonably should have known of his
> interest in the case; (4) the prejudice to the original parties due to the proposed
> intervenor's failure, after he or she knew or reasonably should have known of his
> interest in the case, to apply promptly for intervention; and (5) the existence of
> unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870

F.2d 343, 345 (6th Cir. 1989)).

Pursuant to the reasoning set forth in this Court's March 28, 2005 Opinion and Order

(Doc. # 14), the statute of limitations on Henderson's § 1983 claim does not begin to run until

his execution becomes imminent (*i.e.*, when the United States Supreme Court declined to review

his habeas corpus case or when the time for seeking United States Supreme Court review

expired) and when he knows or has reason to know of the facts giving rise to his claim.  It

appears from the record that the district court granted Henderson's original petition for a writ of

habeas corpus as to his death sentence on August 4, 1999.  *Henderson v. Collins*, 101 F. Supp.

2d 866, 913-918 (S.D. Ohio 1999).  After both parties appealed, the Sixth Circuit reversed that

decision and reinstated Henderson's capital conviction and death sentence.  *Henderson v.

Collins*, 262 F.3d 615 (6th Cir. 2001).  The United States Supreme Court denied Henderson's

certiorari petition on April 15, 2002.  *Henderson v. Collins*, 535 U.S. 1002 (2002).[2]

On April 24, 2002, the Warden asked the district judge to lift the stay of execution in Henderson's case.  (Doc. # 111, at 3.)  Henderson opposed that request and filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b).  It appears that substantial litigation transpired in the district court in connection with Henderson's Rule 60(b) motion, including some DNA testing.  Initially, the district court issued a decision denying Henderson's Rule 60(b) motion.  (Doc. # 117, at 3.)  Subsequently, however, on July 10, 2003, the district court issued an order reconsidering its previous dismissal of the Rule 60(b) motion and conditionally issuing a writ of habeas corpus on Henderson's acquittal first jury instruction claim.  (Doc. # 117, at 4.)  Both parties appealed, ultimately resulting in a decision by the Sixth Circuit on June 9, 2006 reversing the district court's decision to grant relief and essentially reinstating Henderson's capital conviction and death sentence.  Henderson filed a *pro se* petition for rehearing, which was denied on July 26, 2006.  Henderson's counsel filed a petition for rehearing and a suggestion for rehearing en banc, which was denied on October 2, 2006.  The Sixth Circuit issued its mandate on October 10, 2006.  (Doc. # 111, at 4.)  According to Henderson's current counsel, a petition for certiorari is presently being prepared.  (Doc. # 117, at 4.)  Following the State's request for an execution date, on October 23, 2006, the Ohio Supreme Court scheduled Henderson's execution for December 5, 2006.  (Doc. # 106-2.)

Henderson, proceeding *pro se*, first sought to intervene in this action on August 21, 2006.  (Doc. # 60.)  This Court denied that motion without prejudice due to Henderson's failure to

---

[2]     It appears that the United States Supreme Court denied Henderson's certiorari petition on April 15, 2002.  However, Defendants later assert that Henderson's certiorari petition was denied on April 25, 2002.  (Doc. # 111, at 5.)  Moreover, Henderson later asserts that his certiorari petition was denied on April 23, 2002.  (Doc. # 117, at 3.)

exhaust his administrative remedies as required by the Prison Litigation Reform Act.  (Doc. #

100.)  Represented by counsel, Henderson filed the instant motion to intervene on October 25,

2006.  (Doc. # 104.)

In determining whether Henderson's application is timely, the first factor the Court must

consider is the point to which the suit has progressed.  *United States v. Tennessee*, 260 F.3d at

592.  It is beyond dispute that this litigation remains in its early stages.  On April 13, 2005, this

Court issued an order granting Defendants' request for an interlocutory appeal.  (Doc. # 21.)

This litigation has not even reached the discovery stage.  Thus, by the time Henderson filed the

instant motion to intervene, this Court had long before stayed the instant litigation, which has not

progressed since.

The second factor this Court must consider is the purpose for which intervention is

sought.  The Court finds that this factor also militates in favor of finding that Henderson's

motion to intervene is timely because it is obvious from the record that Henderson has a

significant interest in the adjudication of this lawsuit, as well as shared questions of law and fact.

The third factor for this Court to weigh in determining whether the instant application is

timely is the length of time preceding the application during which the proposed intervenor knew

or reasonably should have known of his interest in the case.  Although it could be suggested that

Henderson reasonably should have known about the Cooey lawsuit for at least the last two years,

the Court does not see how this factor tilts against finding that Henderson's motion is timely.

Two years ago, when Cooey first filed this lawsuit, Henderson was still actively litigating a Rule

60(b) motion for relief from judgment–a motion that from July 10, 2003 until the Sixth Circuit's

decision resulted in a conditional writ of habeas corpus invalidating Henderson's death sentence.

Thus, to extent that Henderson had reason to be aware of Cooey's lawsuit for the last two years,

he had no reason to recognize and act upon his own significant interest in the outcome of

Cooey's lawsuit until his pursuit of habeas corpus relief was foreclosed, which technically

speaking, has not occurred yet.  As noted earlier, a certiorari petition stemming from

Henderson's Rule 60(b) litigation is not due until December 31, 2006.  (Doc. # 117, at 6.)

The fourth factor this Court must consider in determining whether the instant application

is timely is the prejudice to the original parties due to the proposed intervenor's failure, after he

knew or reasonably should have known of his interest in the case, to apply promptly for

intervention.  The Court finds no prejudice or undue burden in the expedited briefing that

Defendants were required to endure in connection with this motion to intervene, and the Court

finds no undue or needless burden that the original parties might subsequently suffer if

Henderson is permitted to join this lawsuit now. Given the procedural posture of this stayed

litigation, the Court concludes that permitting intervention here will neither unduly delay nor

prejudice the adjudication of the rights of the original parties.  Rather, permitting intervention

here will facilitate the expeditious resolution of the rights of the original parties.  *See Secretary*

*of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (affirming allowance of permissive

intervention on such grounds).

The fifth and final factor for this Court to weigh in assessing the timeliness of

Henderson's motion to intervene is the existence of any unusual circumstances militating against

or in favor of intervention.  Defendants have not alleged any other unusual factors militating

against intervention and none are apparent to the Court.

Having found that Henderson's motion to intervene is timely, the Court turns to the issue

of whether Henderson's proffered complaint and the main action have a question of law or fact in common.  The Court concludes that they do.  At the core of Henderson's complaint is the same method-of-execution challenge that the other plaintiffs assert, and Defendants do not appear to argue otherwise.  That said, Defendants advance several reasons for why this Court should not permit Henderson to intervene in this case.  First, Defendants reiterate, merely to preserve the arguments, that intervention improperly circumvents class action rules and that the intervenors had other, less intrusive ways of protecting their rights.  (Doc. # 111, at 6.)  The Court continues to find those arguments unpersuasive for the reasons previously expressed. Defendants further argue that this Court should not permit Henderson to intervene because of his failure to explain how the other parties to this case will not protect his rights through their litigation.  (Doc. # 111, at 6-7.)  The Court rejects this argument.

Henderson has a significant interest in this case that cannot adequately be protected by the other plaintiffs because of the time-sensitive nature of his claims and the independent schedule that Henderson faces.  If there were to be no executions by the specific lethal injection protocol at the heart of this lawsuit until this litigation were resolved, then the Court might accept Defendants' argument that Henderson's rights, as well as the rights of all other similarly-situated inmates, could adequately be protected by Cooey and the other plaintiffs.  But it is ridiculous to suggest that Cooey can adequately protect Henderson's rights when Henderson faces an execution date of December 5, 2006, and Cooey faces no execution date at this point.  It is this factor that distinguishes the unreported decisions offered by Defendants supporting their argument, *i.e.*, Donald Hall's motion to intervene in *Johnston v. Crawford*, Case No. 4:04CV1075, pp. 2-3 (E.D. Missouri 2005), and Victor French's motion to intervene in *Brown v.*

10

*Beck*, Case No. 5:06-CT-3018, p. 2 (E.D. N.C. 2006).  (Doc. # 110, at 8.)  That is, it is not

apparent from the decisions cited by Defendants in which the Courts denied motions to intervene

in a pending § 1983 suit challenging the lethal injection protocol, the point to which those

lawsuits had progressed or whether the proposed intervenors faced imminent execution dates

such that the existing plaintiffs could not adequately protect the interests of the proposed

intervenors.  For the foregoing reasons, the Court is persuaded that Henderson's motion to

intervene is well taken.  The Clerk shall detach the proffered complaint and file it on the docket.

## II.  Motion for Preliminary Injunction

Henderson also moves for entry of an emergency preliminary injunction preventing

Defendants from using their current procedures of execution on him until his § 1983 claims are

adjudicated.  For the reasons that follow, this Court is constrained to deny his motion.

On October 17, 2006, this Court issued an opinion and order granting Jeffrey Lundgren's

motion to intervene and motion for a preliminary injunction staying his execution.  (Doc. # 92.)

The Court incorporates that order by reference and attaches it for convenience.

For the reasons discussed more fully in that opinion and order, this Court is of the view

that Henderson, too, is entitled to a preliminary injunction staying his execution.  If anything,

Henderson's circumstances are even more compelling than Lundgren's situation, given that

Henderson's efforts to raise his claims at the earliest possible opportunity cannot be

characterized as anything but diligent.  Unfortunately for Henderson, the law of this case now

appears to preclude this Court from granting his motion for a preliminary injunction to stay his

execution.

On October 23, 2006, the Court of Appeals for the Sixth Circuit issued a one-page,

summary order vacating Lundgren's stay of execution.  The brevity of the Sixth Circuit's order

permits this Court with ease to reproduce the order in its entirety:

> SUHRHEINRICH, SILER, and GILMAN, Circuit Judges
>
> Defendants-Appellants move this Court to vacate the order of the district court allowing Plaintiff-Appellee/Intervenor Jeffrey Lundgren to intervene as well as granting a preliminary injunction, i.e., a stay of the execution scheduled for October 24, 2006.  The matter is currently before this panel after being transferred by the original panel by order dated October 23, 2006.
>
> The panel having considered the motion and the response in opposition thereto, and having found the motion to be well taken, it is
>
> ORDERED that the motion be, and it hereby is, GRANTED, and the stay of execution is hereby vacated.
>
> GILMAN, Circuit Judge, dissenting.  I would uphold the stay of execution granted by the district court because I find no abuse of discretion in its evaluation of the factors governing the grant of Lundgren's emergency motion for a preliminary injunction.  Furthermore, any harm to the State or to the public interest in extending the stay would be greatly ameliorated by this Court substantially advancing our hearing in pending case No. 05-4057, *Cooey v. Taft*, which the panel intends to reset *sua sponte*.

(Doc. # 123, Court of Appeals Order, Case No. 06-4374.)  The Sixth Circuit did not issue any

subsequent expanded opinion.

From the Sixth Circuit's October 23, 2006 Order, this Court now knows that it erred in

granting Lundgren's motion to intervene and/or for a preliminary injunction.  This Court just has

no idea *how* it erred.

Two observations regarding the Sixth Circuit's October 23, 2006 Order are necessary.

First, the appellate order apparently does not preclude the intervention that this Court found

permissible above.  Second, the appellate order clearly compels a denial of the injunctive relief

sought here but does not enable this Court to explain why a denial is warranted and just.

The Sixth Circuit's Order vacating the preliminary injunction that this Court issued as to Plaintiff Lundgren purported to address "the order of the district court allowing [intervention] . . . as well as granting a preliminary injunction, i.e., a stay of the execution."  The decision on its face therefore targeted an appeal not only of this Court's decision granting the preliminary injunction, but *also* of the Court's decision allowing Lundgren to intervene.  Despite this stated purpose, however, the appellate order stated that the panel "found the motion to be well taken" in a single sentence granting relief *that was confined only to vacating the preliminary injunction*.  It is thus unclear whether the two-judge majority intended to find the motion well taken in regard only to the specific action taken (vacating the stay) or in regard to all possible action (overturning both the intervention order and the stay).

This Court assumes that the appellate majority did not vacate the Court's decision allowing Lundgren to intervene.  The majority's order provides little to no guidance in this regard, other than arguably the majority's specific and limited action, but the dissent helps define the contours of what the majority actually held.  The dissenting judge states that he would uphold the stay and does not mention the intervention issue.  If the majority had addressed intervention, the dissent would have also had to address that threshold issue, because if the dissenting judge *agreed* that intervention was improper, Lundgren would be out of the case, there would be no jurisdiction supporting the stay order, and there would have been no need for the dissent to address the stay.  If, however, the majority did not address intervention but instead addressed only the stay, then the dissent is appropriately confined.

Because the dissenting judge was obviously part of the panel's discussion and privy to the intent of the majority, this Court reads the narrow nature of the dissenting opinion to reflect a

13

narrow nature of the majority opinion.  The Court is generally notably hesitant to read any appellate dissent as helping define a majority holding–such a situation risks contravening the axiomatic principle that a holding must be read for what it actually says and not by the characterization of a dissenting voice–but this is an unusual case insofar as the appellate majority has offered *no reasoning whatsoever* to support a decision that at best curiously addresses only one of two issues before it and at worst creates confusion by overturning both intervention and the stay, the former implicitly and the latter expressly.

In other words, this Court is left with the unenviable task of construing a holding that is a conclusion with no expressed rationale.  The Court therefore reads the majority's decision to reach no further than its explicit holding–*i.e.*, no stay was warranted–because reading the decision to mean anything more would mean that this Court is simply expansively guessing at what the appellate majority meant to hold.  If the majority intended to overturn both intervention and the stay, simply granting the appellants' motion would have done this.  But by expressly and specifically stating that the stay of execution was vacated, the majority was apparently narrowing the scope of its granting of the appellant's motion; to conclude otherwise would mean that by "repeating" the vacation of the stay, the majority was engaging in surplusage.  The spartan nature of the majority decision suggests that this was not a majority with a proclivity toward such verbosity.

The Sixth Circuit's October 23, 2006 Order therefore targeted only the injunction staying the execution.  The clear conclusion of the Order was that this Court erred in issuing a stay.  And in the absence of any stated rationale by the appellate majority, this Court cannot now conduct any meaningful discussion as to how Henderson's circumstances fall inside or outside the hidden

rationale of the Sixth Circuit majority.

For purposes of appellate review, this Court notes that it would grant injunctive relief in

the absence of the controlling appellate order.  In determining whether to exercise its discretion

to grant a preliminary injunction, a district court must balance the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2)
> whether the movant would otherwise suffer irreparable injury; (3) whether
> issuance of a preliminary injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by issuance of a preliminary
> injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en

banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir.

1995)).  This Court remains as convinced now as it was when it issued its decision as to

Lundgren that every factor that this Court is bound to consider in determining whether a

preliminary injunction is warranted favors an intervenor such as Henderson.

Given the evidence that Jeffrey Hill first produced and which Henderson, too, has

offered, at the very least, Henderson has demonstrated a *stronger* likelihood of success on the

merits than some of the plaintiffs who preceded him, in view of the growing body of evidence

calling Ohio's lethal injection protocol increasingly into question.  This Court stated

unequivocally in its order granting Hill's request for a preliminary injunction that it can not and

will not turn a blind eye to the evidence presented in the cases of *Brown v. Beck* in North

Carolina and *Morales v. Hickman* in California appearing to contradict the opinion of Dr. Mark

Dershwitz that virtually all persons given the dose of sodium thiopental prescribed under Ohio's

lethal-injection protocol would be rendered unconscious and would stop breathing within one

minute.  (Doc. # 45, at 6-9.)  The evidence that has begun to emerge calling this and other

conclusions by Dr. Dershwitz into question also persuades this Court that there is an unacceptable and unnecessary risk that Henderson will be irreparably harmed absent the injunction, *i.e.*, that Henderson could suffer unnecessary and excruciating pain while being executed in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment.

The Court is not persuaded that issuance of the preliminary injunction would cause substantial harm to the State by comparison. Without diminishing in any way the State's significant interest in enforcing its criminal judgments in a timely fashion, it appears to this Court–even without a fully developed record–that the potential flaws identified in Ohio's lethal injection protocol giving rise to the unacceptable risk of violating the Eighth Amendment's proscription against cruel and unusual punishment are readily fixable. Thus, any delay in carrying out Henderson's execution should and can be minimal. Any argument that the granting of an injunction would harm the State's interest in fulfilling the judgment against Henderson in a timely manner is somewhat disingenuous, considering that but for the State's interlocutory appeal, many if not all of the underlying issues would in all likelihood have been resolved by now. The fact that the state-obtained stay has prevented such resolution qualifies the weight to be afforded Defendants' asserted harm, because such harm is ultimately self-inflicted. Self-inflicted harm that could result from issuance of preliminary injunctive relief should not necessarily preclude an injunction. *Cf. Pappan Enter. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (holding in trademark infringement case that "a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchiser of the mark");

16

*Midwest Guar. Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harms way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct").

Finally, this Court is persuaded that the public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.

This Court is mindful of the many cases raising the same or similar challenges in which courts have denied motions for a preliminary injunction. *See, e.g., Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006); *Bieghler v. Donahue*, No. 06-1300, 2006 WL 229027 (7th Cir. Jan. 26, 2006), *vacated*, 126 S.Ct. 1190 (2006); *Vinson v. Johnson*, 126 S.Ct. 1908, 2006 WL 1109748 (U.S. Apr. 27, 2006). In those cases, however, the plaintiff's undue delay in bringing his § 1983 action was a factor weighing against him relative to the State's strong interest in enforcing its criminal judgments. For example, in *Smith v. Johnson*, the Fifth Circuit remarked that "we have made clear that waiting to file such a challenge days before a scheduled execution constitutes unnecessary delay." *Smith*, 440 F.3d at 263 (citations omitted). In this Court's view, there was no such delay on Henderson's part.

As noted, for the reasons set forth above and discussed more fully in its opinion and order granting Lundgren's motion to intervene and motion for a preliminary injunction, this Court is of the view that Henderson's motion for a preliminary injunction *should* be granted. But, as also noted, this Court is bound by the Sixth Circuit's October 23, 2006 Order. That being so, the Court is constrained by that decision to deny Henderson's motion for a preliminary

17

injunction to stay his execution.  (Doc. # 106.)  That the Court cannot tell Henderson

*substantively why* his request for injunctive relief fails is unfortunate.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Jerome Henderson's second emergency

motion to intervene (Doc. # 104) and **DENIES** Henderson's motion for a preliminary injunction

(Doc. # 106).[3]  The Clerk shall detach the proffered complaint attached to Doc. # 104 and file it

on the docket.

**IT IS SO ORDERED.**

> /s/   Gregory L. Frost
> GREGORY L. FROST
> UNITED STATES DISTRICT JUDGE

---

[3] The Court **STRIKES** Henderson's pro se motion for a preliminary injunction (Doc. # 121) because he has no right to file such a motion in addition to a motion submitted by counsel. *Cf. McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000).

The Court also **GRANTS** the motion to supplement (Doc. # 109) and the motion to withdraw as counsel filed in regard to Henderson (Doc. # 118).