**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RICHARD COOEY, et al.,**

    **Plaintiff,**

    **v.**　　　　　　　　　　　　　　　　　　　**Case No. 2:04-cv-1156**
　　　　　　　　　　　　　　　　　　　　　　　　**JUDGE GREGORY L. FROST**
**ROBERT TAFT, et al.,**　　　　　　　　　　　**Magistrate Judge Mark R. Abel**

    **Defendants.**

## OPINION AND ORDER

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original plaintiff in a civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio. This matter is before the Court on the motion of Kenneth Biros to intervene (Doc. # 95), Defendants' memorandum in opposition (Doc. # 110), and Biros's reply (Doc. # 115). For the following reasons, the Court finds Biros's motion to be well taken.

### I. Motion to Intervene

As it did with respect to John Hicks, Jeffrey Hill, Johnnie Baston, Arthur Tyler, Jeffrey Lundgren, and Jerome Henderson, the Court concludes that permissive intervention is warranted pursuant to Fed. R. Civ. P. 24(b)(2). That rule provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2).

The Court must first determine whether the application to intervene is timely. In

addressing timeliness, the Court must consider:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

Pursuant to the reasoning set forth in this Court's March 28, 2005 Opinion and Order (Doc. # 14), the statute of limitations on Biros's § 1983 claim did not begin to run until his execution became imminent (*i.e.*, when the United States Supreme Court declined to review his habeas corpus case or when the time for seeking United States Supreme Court review expired) and when he knew or had reason to know of the facts giving rise to his claim. It appears from the record that after the district court originally granted Biros's petition for a writ of habeas corpus (Doc. # 110, at 3), the United States Court of Appeals for the Sixth Circuit reversed that decision on September 9, 2005 and denied habeas relief. *Biros v. Bagley*, 422 F.3d 379 (6th Cir. 2005). According to Defendants, the Sixth Circuit denied Biros's petition for a rehearing en banc on January 23, 2006, after which the United States Supreme Court denied his certiorari petition on October 2, 2006. (Doc. # 110, at 3.) Biros filed the instant motion to intervene on October 18, 2006, before the expiration of his time for filing a petition for rehearing in the United States Supreme Court.

In determining whether Biros's application is timely, the first factor the Court must consider is the point to which the suit has progressed. *United States v. Tennessee*, 260 F.3d at

592. It is beyond dispute that this litigation remains in its early stages. On April 13, 2005, this Court issued an order granting Defendants' request for an interlocutory appeal. (Doc. # 21.) This litigation has not even reached the discovery stage. Thus, by the time Biros filed the instant motion to intervene, in accordance with this Court's interpretation of when the statute of limitations began to run on his § 1983 claim, this Court had long before stayed the instant litigation, which has not progressed since.

      The second factor this Court must consider is the purpose for which intervention is sought. In this regard, Defendants argue that "this Court should recognize that Biros is attempting to join *this* lawsuit for one reason: he knew that it was his best chance at obtaining delay." (Doc. # 110, at 4.) The Court respectfully disagrees and finds that this factor also militates in favor of finding that Biros's motion to intervene is timely. Defendants' argument, while perhaps plausible, is nonetheless purely speculative and ignores the significant interest that Biros has in the adjudication of this lawsuit, as well as the shared questions of law and fact that are obvious from the record and require no speculation.

      The third factor for this Court to weigh in determining whether the instant application is timely is the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case. Defendants argue that "it is beyond peradventure that Biros reasonably should have known about the Cooey lawsuit for at least the last two years." (Doc. # 110, at 4.) Although the Court agrees that Biros reasonably should have known about the Cooey lawsuit for at least the last two years, the Court does not see how this factor tilts against finding that Biros's motion is timely. Two years ago, when Cooey first filed this lawsuit, Biros was still actively litigating his habeas corpus action. In fact, at the time that

3

Cooey first filed this lawsuit, the Sixth Circuit had not yet reversed the district court's decision granting Biros's habeas corpus petition. Thus, to extent that Biros had reason to be aware of Cooey's lawsuit for the last two years, he had no reason to recognize his own significant interest in the outcome of Cooey's lawsuit until his pursuit of habeas corpus relief was foreclosed. That occurred when the United States Supreme Court denied his certiorari petition on October 2, 2006, after which Biros promptly filed the instant motion to intervene.

The fourth factor this Court must consider in determining whether the instant application is timely is the prejudice to the original parties due to the proposed intervenor's failure, after he knew or reasonably should have known of his interest in the case, to apply promptly for intervention. In this regard, Defendants take issue with this Court's determination on previous motions to intervene that there has been no prejudice to the State because the proceedings have been stayed. (Doc. # 110, at 4.) Defendants argue that they have been prejudiced "because we have undertaken additional and expedited litigation tasks due to the delay." (Doc. # 110, at 4.) Defendants' argument that they have been prejudiced by the expedited briefing schedule on Biros's motion to intervene requires this Court to accept the premise that Biros could and should have filed his motion to intervene earlier, thereby obviating the need for an expedited briefing schedule. This the Court cannot do. For the reasons discussed more fully above, this Court simply is not persuaded that Biros should have recognized and acted upon his interest in Cooey's litigation any earlier than he did, *i.e.*, when his pursuit of habeas corpus relief was essentially foreclosed. Further, Defendants have not alleged, and it is not otherwise apparent to the Court, what undue or needless burden the original parties will suffer if Biros is permitted to join this lawsuit now. Given the procedural posture of this stayed litigation, the Court concludes that

4

permitting intervention here will neither unduly delay nor prejudice the adjudication of the rights of the original parties. Rather, permitting intervention here will facilitate the expeditious resolution of the rights of the original parties. *See Secretary of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (affirming allowance of permissive intervention on such grounds).

The fifth and final factor for this Court to weigh in assessing the timeliness of Biros's motion to intervene is the existence of any unusual circumstances militating against or in favor of intervention. In this regard, Defendants argue that "because intervention now seems to equal injunction (at least for any inmate at least as 'diligent' as former intervenor Jeffrey Lundgren), that is an unusual circumstance that should warrant denial of intervention under the fifth factor." (Doc. # 110, at 5.) The Court does not agree with Defendants' view that "intervention now seems to equal injunction." This Court has dealt with every motion for a preliminary injunction to stay an execution that has been filed in connection with this proceeding on a case-by-case, fact-specific basis. Further, the Sixth Circuit vacated the preliminary injunction that this Court issued as to Plaintiff-Intervenor Lundgren (Doc. # 123).[1] It therefore tests the limits of credulity

---

[1] With respect to the Sixth Circuit's October 23, 2006 Order vacating the preliminary injunction that this Court issued as to Plaintiff Lundgren, the Court notes with concern that the appellate decision purported to address "the order of the district court allowing [intervention] . . . as well as granting a preliminary injunction, i.e., a stay of the execution." The decision on its face therefore targeted an appeal not only of this Court's decision granting the preliminary injunction, but *also* of the Court's decision allowing Lundgren to intervene. Despite this stated purpose, however, the appellate order stated that the panel "found the motion to be well taken" in a single sentence granting relief *that was confined only to vacating the preliminary injunction*. It is thus unclear whether the two-judge majority intended to find the motion well taken in regard only to the specific action taken (vacating the stay) or in regard to all possible action (overturning both the intervention order and the stay).

This Court assumes that the appellate majority did not vacate the Court's decision allowing Lundgren to intervene. The majority's order provides little to no guidance in this regard, other than arguably the majority's specific and limited action, but the dissent helps define the contours of what the majority actually held. The dissenting judge states that he would uphold the stay and does not mention the intervention issue. If the majority had addressed intervention, the dissent would have also had to address that threshold issue, because if the dissenting judge *agreed* that intervention was improper, Lundgren would be out of the case, there would be no jurisdiction supporting the stay order, and there would have been no need for the dissent to address the stay. If, however, the majority did not address intervention but instead addressed only the stay, then the dissent is appropriately confined.

for Defendants to suggest that "intervention now seems to equal injunction." Beyond that, Defendants have not alleged any other unusual factors militating against intervention, and none are apparent to the Court.

Having found that Biros's motion to intervene is timely, the Court turns to the issue of whether Biros's proffered complaint and the main action have a question of law or fact in common. The Court concludes that they do. At the core of Biros's complaint is the same method-of-execution challenge that the other plaintiffs assert, and Defendants do not appear to argue otherwise. That said, Defendants advance several reasons for why this Court should not permit Biros to intervene in this case. First, Defendants reiterate, merely to preserve the arguments, that intervention improperly circumvents class action rules and that the intervenors had other, less intrusive ways of protecting their rights. (Doc. # 110, at 7.) The Court continues to find those arguments unpersuasive for the reasons previously expressed. Defendants further argue that this Court should not permit Biros to intervene because of his failure to explain how the other parties to this case will not protect his rights through their litigation. (Doc. # 110, at 7-

---

Because the dissenting judge was obviously part of the panel's discussion and privy to the intent of the majority, this Court reads the narrow nature of the dissenting opinion to reflect a narrow nature of the majority opinion. The Court is generally notably hesitant to read any appellate dissent as helping define a majority holding–such a situation risks contravening the axiomatic principle that a holding must be read for what it actually says and not by the characterization of a dissenting voice–but this is an unusual case insofar as the appellate majority has offered *no reasoning whatsoever* to support a decision that at best curiously addresses only one of two issues before it and at worst creates confusion by overturning both intervention and the stay, the former implicitly and the latter expressly.

In other words, this Court is left with the unenviable task of construing a holding that is a conclusion with no expressed rationale. The Court therefore reads the majority's decision to reach no further than its explicit holding–*i.e.*, no stay was warranted–because reading the decision to mean anything more would mean that this Court is simply expansively guessing at what the appellate majority meant to hold. If the majority intended to overturn both intervention and the stay, simply granting the appellants' motion would have done this. But by expressly and specifically stating that the stay of execution was vacated, the majority was apparently narrowing the scope of its granting of the appellant's motion; to conclude otherwise would mean that by "repeating" the vacation of the stay, the majority was engaging in surplusage. The spartan nature of the majority decision suggests that this was not a majority with a proclivity toward such verbosity.

8.) The Court rejects this argument.

Biros has a significant interest in this case that cannot adequately be protected by the other plaintiffs because of the time-sensitive nature of his claims and the independent schedule that Biros faces. If there were to be no executions by the specific lethal injection protocol at the heart of this lawsuit until this litigation were resolved, then the Court might accept Defendants' argument that Biros's rights, as well as the rights of all other similarly-situated inmates, could adequately be protected by Cooey and the other plaintiffs. But it is ridiculous to suggest that Cooey can adequately protect Biros's rights when Biros might very well face an execution date before Cooey. It is this factor that distinguishes the unreported decisions offered by Defendants supporting their argument, *i.e.*, Donald Hall's motion to intervene in *Johnston v. Crawford*, Case No. 4:04CV1075, pp. 2-3 (E.D. Missouri 2005), and Victor French's motion to intervene in *Brown v. Beck*, Case No. 5:06-CT-3018, p. 2 (E.D. N.C. 2006). (Doc. # 110, at 8.) That is, it is not apparent from the decisions cited by Defendants in which the Courts denied motions to intervene in a pending § 1983 suit challenging the lethal injection protocol, the point to which those lawsuits had progressed or whether the proposed intervenors faced imminent execution dates such that the existing plaintiffs could not adequately protect the interests of the proposed intervenors. For the foregoing reasons, the Court is persuaded that Biros's motion to intervene is well taken.

## II. Exhaustion of Administrative Remedies

Defendants argue that granting Biros's motion to intervene would be futile because he had not exhausted his administrative remedies, as required by the Prison Litigation Reform Act, at the time that he filed his motion to intervene. (Doc. # 110, at 5-7.) Specifically, Defendants

argue that Biros filed the instant motion *before* he had received a ruling by the Chief Inspector denying Biros's prison grievance. For the reasons that follow, the Court disagrees.

The Prison Litigation Reform Act ("PLRA") provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). As the Sixth Circuit noted in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999), "The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems." *Id.* at 643.

It is now well settled that complete exhaustion of administrative remedies, while not jurisdictional, is a mandatory pre-condition to the filing of an action in federal court challenging prison conditions. *Thomas v. Woolum*, 337 F.3d 720, 725 (6th Cir. 2003); *Knuckles El v. Toombs*, 215 F.3d 640, 640 (6th Cir. 2000). In order to demonstrate that he has completely exhausted his administrative remedies, a plaintiff must attach to his complaint in federal court a copy of the administrative disposition. *Knuckles El, supra*, 215 F.3d at 640; *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). If it does not appear that a plaintiff has completely exhausted his administrative remedies, the federal court should dismiss the complaint without prejudice. *Brown*, 139 F.3d at 1104.

On September 20, 2006, this Court issued an opinion and order denying without prejudice Jeffrey Lundgren's emergency motion to intervene, explaining that Lundgren had failed to exhaust administrative remedies–namely, a direct grievance to the Office of the Chief Inspector pursuant to Ohio Administrative Code § 5120-9-31–as required by the PLRA. (Doc. # 73.) On October 5, 2006, this Court issued an opinion and order denying without prejudice

Lundgren's amended emergency motion to intervene, this time because of Lundgren's failure to demonstrate *complete* exhaustion of his administrative remedies with evidence of the administrative disposition of his grievance (*i.e.*, a decision by the Chief Inspector). (Doc. # 86.) Under this reasoning, it would appear that Biros had not completely exhausted his administrative remedies before he filed the instant motion to intervene. But that is not the case.

On October 24, 2006, this Court issued an order denying without prejudice a motion to intervene filed by Jerome Henderson, finding that he, too, had failed to include evidence of the administrative disposition of his grievance (*i.e.*, a decision by the Chief Inspector). (Doc. # 100.) In so ruling, however, the Court noted the following:

> It is true, as Henderson points out, that O.A.C § 5120-9-31, paragraph L, requires the Chief Inspector to respond within thirty calendar days of receipt of the grievance or to demonstrate good cause, with notice to the inmate, for extending the time in which to respond. Henderson is also correct that, under controlling Sixth Circuit law, "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004).

(Doc. # 100, at 3.) Pursuant to Ohio Administrative Code § 5120-9-31, Biros filed grievances directly to the Office of the Chief Inspector on September 10 and September 12, 2006. The Chief Inspector received those grievances on September 15, 2006, thereby requiring him to issue a ruling by October 15, 2006. Instead, in a letter dated October 12, 2006 that Biros received on October 16, 2006, the Chief Inspector indicated that he needed additional time to rule on Biros's grievances. The letter did not specify how much additional time the Chief Inspector needed or the reasons why he needed additional time. Two days later, Biros filed the instant motion to intervene, essentially asking this Court to deem his administrative review process exhausted because the Chief Inspector did not provide good cause for extending the 30-day time limit for

9

ruling on Biros's grievance.  (Doc. # 95.)

Defendants urge the Court to find otherwise.  Specifically, Defendants argue that Ohio Administrative Code § 5120-9-31 appears to grant the Chief Inspector the right to determine unilaterally whether good cause exists to extend the 30-day time limit and does not vest in the inmate the authority to determine whether the Chief Inspector has demonstrated good cause.  (Doc. # 110.)  Defendants also argue that this Court should reject Biros's alternative argument that the administrative grievance process is futile.  For the following reasons, the Court rejects Defendants' arguments and finds that Biros fully exhausted his administrative remedies.

Regarding Defendants' first argument, the administrative code provision at issue states in relevant part:

> The chief inspector or designee(s) shall respond within thirty calendar days of receipt of the grievance.  The chief inspector or designee(s) may extend the time in which to respond for good cause, with notice to the inmate.

Ohio Administrative Code § 5120-9-31(L).  Even assuming that Defendants are correct that this provision "seems to grant the Chief Inspector the right to make the determination [of what constitutes good cause] unilaterally," (Doc. # 110, at 5), the Chief Inspector's letter extending the time in which to respond to Biros's grievance did not provide *any* cause, much less cause that he "unilaterally determined" to be good, and no good cause is apparent to this Court now.

Defendants state that the reason for the delay appears to have been that Biros's grievance was a more comprehensive attack on the lethal injection protocol than the attacks that other inmates previously had filed.  (Doc. # 110, at 6 n.1.)  Even assuming that Defendants' assertion is factually accurate, that "good cause" was not conveyed to Biros as the statute appears to require.  Moreover, it seems implausible that the Chief Inspector required an additional fifteen

days as Defendants suggest simply because Biros's grievance was typewritten, two single-spaced pages, and printed in Times Roman font when, in the end, the decision that he issued rejecting Biros's grievance was substantially the same as the decision he had issued rejecting Jeffrey Lundgren's grievance on September 27, 2006.  *Compare* Doc. # 113-2 *with* Doc. # 101-3.

Conceding that the Chief Inspector cannot "simply declare that he will take more time to rule and then effectively preclude a lawsuit by never ruling," (Doc. # 110, at 6), Defendants argue that the delay in this case did not approach the point of futility because the extension was for fifteen days and because there was no indication of bad faith.  The Court disagrees.  Without holding that the Chief Inspector or any defendant acted in bad faith, the Court nonetheless is of the view that fifteen days represents a considerable amount of time when, as here, time is of the essence and when, as here, the State of Ohio, between the date that the Chief Inspector issued his letter stating that he needed more time (October 12, 2006) and the date that he subsequently issued his decision (October 30, 2006), requested an execution date (October 24, 2006).  It is absolutely clear the PLRA's exhaustion requirement is mandatory, requires strict compliance, and serves the important purpose of ensuring that state prison systems are given the opportunity to handle prison matters internally.  *See, e.g., Thomas v. Woolum*, 337 F.3d 720, 725-26 (6th Cir. 2003).  "It is not, however, designed to permit state administrative timeliness to handcuff the federal courts in adjudicating cases involving important federal rights."  *Id*. at 726.  In sum, the Court is satisfied that Biros had fully exhausted his administrative remedies when the Chief Inspector failed, within thirty days of receiving Biros's grievance, to respond or to show good cause, with notice to Biros, for extending the time to respond.

Regarding Defendants' second argument that Biros is asking the Court to find that the

11

administrative grievance process is futile (Doc. # 110, at 6), the Court is not persuaded that Biros is asking the Court to do anything of the sort.  The Court fully agrees with Defendants that, under controlling Sixth Circuit law, the PLRA requires inmates to exhaust their administrative remedies, even where doing so appears futile.  *See, e.g., Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).  However, Biros appears to argue not that the exhaustion requirement should be excused for futility, but that the exhaustion requirement has been fulfilled in this case because Biros did everything that he could do and because the Chief Inspector failed to timely respond to his grievance.  The Court agrees.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Biros's motion to intervene (Doc. # 95).  The Clerk shall detach the proffered complaint and file it on the docket.

**IT IS SO ORDERED.**

　/s/　Gregory L. Frost　
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE