IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD COOEY, et al.,**

    **Plaintiff,**

    v.                                               Case No. 2:04-cv-1156
                                                                  JUDGE GREGORY L. FROST
**ROBERT TAFT, et al.,**                      Magistrate Judge Mark R. Abel

    **Defendants.**

## OPINION AND ORDER

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original plaintiff in a civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio. This matter is before the Court on John Spirko's emergency motion to intervene (Doc. # 119) and motion for a preliminary injunction (Doc. # 120). For the reasons that follow, the Court **GRANTS** the former and **DENIES** the latter.

### I. Emergency Motion to Intervene

As it did with respect to John Hicks, Jeffrey Hill, Johnnie Baston, Arthur Tyler, Jeffrey Lundgren, Jerome Henderson, and Kenneth Biros, the Court concludes that permissive intervention is warranted pursuant to Fed. R. Civ. P. 24(b)(2). That rule provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2).

The Court must first determine whether the application to intervene is timely. In addressing timeliness, the Court must consider:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

Pursuant to the reasoning set forth in this Court's March 28, 2005 Opinion and Order (Doc. # 14), the statute of limitations on Spirko's § 1983 claim did not begin to run until his execution became imminent (*i.e.*, when the United States Supreme Court declined to review his habeas corpus case or when the time for seeking United States Supreme Court review expired) and when he knew or had reason to know of the facts giving rise to his claim. The United States District Court for the Northern District of Ohio denied Spirko's habeas corpus petition on July 11, 2000. (Doc. # 119, at 2.) The Court of Appeals for the Sixth Circuit affirmed the denial of habeas corpus relief on May 17, 2004. *Spirko v. Mitchell*, 368 F.3d 603, 614 (6th Cir. 2004). The United States Supreme Court denied certiorari on March 28, 2005. Additionally, Spirko filed in the district court on April 27, 2005 a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b), litigation of which concluded on December 22, 2005, when the Sixth Circuit affirmed the district court's decision denying relief. (Doc. # 130, at 3.) Further, the clemency application that Spirko began litigating simultaneously with his Rule 60(b) litigation is still unresolved and has five times resulted in reprieves, all of which the Attorney General requested

to allow for the completion of DNA testing. (*Id*. at 3-4) Most recently, Governor Taft granted Spirko a reprieve on October 20, 2006, delaying Spirko's execution date until April 17, 2007. (*Id*. at 4.) Spirko filed the instant emergency motion to intervene on November 20, 2006.

In determining whether Spirko's application is timely, the first factor the Court must consider is the point to which the suit has progressed. *United States v. Tennessee*, 260 F.3d at 592. It is beyond dispute that this litigation remains in its early stages. On April 13, 2005, this Court issued an order granting Defendants' request for an interlocutory appeal. (Doc. # 21.) This litigation has not even reached the discovery stage. Thus, by the time Spirko filed the instant motion to intervene, this Court had long before stayed the instant litigation, which has not progressed since.

The second factor this Court must consider is the purpose for which intervention is sought. In this regard, Defendants argue that "this Court should recognize that Spirko is attempting to join *this* lawsuit for one reason: he knew that it was his best chance at obtaining delay." (Doc. # 128, at 4.) The Court respectfully disagrees and finds that this factor also militates in favor of finding that Spirko's motion to intervene is timely. Defendants' argument, while perhaps plausible, is nonetheless purely speculative and ignores the significant interest that Spirko has in the adjudication of this lawsuit, as well as the shared questions of law and fact that are obvious from the record and require no speculation.

The third factor for this Court to weigh in determining whether the instant application is timely is the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case. Defendants argue that "it is beyond peradventure that Spirko reasonably should have known about the Cooey lawsuit for at least the

3

last two years." (Doc. # 128, at 4.) Although the Court agrees that Spirko reasonably should have known about the Cooey lawsuit for at least the last two years, the Court does not see how this factor tilts against finding that Spirko's motion is timely. Two years ago, when Cooey first filed this lawsuit, Spirko was still actively litigating his habeas corpus action. In fact, litigation on Spirko's Rule 60(b) motion for relief from judgment only concluded on December 22, 2005, and proceedings on his clemency application–proceedings that have five times resulted in reprieves to allow for DNA testing–has yet to conclude. Thus, to extent that Spirko had reason to be aware of Cooey's lawsuit for the last two years, he had no reason to recognize his own significant interest in the outcome of Cooey's lawsuit until his pursuit of habeas corpus relief was foreclosed. That occurred when the United States Supreme Court denied his certiorari petition on March 28, 2005. Spirko filed the instant motion to intervene on November, 2, 2006, well within the statute of limitations that this Court defined in its March 28, 2005 Opinion and Order (Doc. # 14, at 11).

The fourth factor this Court must consider in determining whether the instant application is timely is the prejudice to the original parties due to the proposed intervenor's failure, after he knew or reasonably should have known of his interest in the case, to apply promptly for intervention. In this regard, Defendants take issue with this Court's determination on previous motions to intervene that there has been no prejudice to the State because the proceedings have been stayed. (Doc. # 110, at 4.) Defendants argue that they have been prejudiced "because we have undertaken additional and expedited litigation tasks due to the delay." (Doc. # 128, at 4.) Defendants' argument that they have been prejudiced by the expedited briefing schedule on Spirko's motion to intervene requires this Court to accept the premise that Spirko could and

4

should have filed his motion to intervene earlier, thereby obviating the need for an expedited briefing schedule. This the Court cannot do. For the reasons discussed more fully above, this Court simply is not persuaded that Spirko should have recognized and acted upon his interest in Cooey's litigation any earlier than he did, *i.e.*, when his pursuit of habeas corpus relief was essentially foreclosed. Further, Defendants have not alleged, and it is not otherwise apparent to the Court, what undue or needless burden the original parties will suffer if Spirko is permitted to join this lawsuit now. Given the procedural posture of this stayed litigation, the Court concludes that permitting intervention here will neither unduly delay nor prejudice the adjudication of the rights of the original parties. Rather, permitting intervention here will facilitate the expeditious resolution of the rights of the original parties. *See Secretary of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (affirming allowance of permissive intervention on such grounds).

       The fifth and final factor for this Court to weigh in assessing the timeliness of Spirko's motion to intervene is the existence of any unusual circumstances militating against or in favor of intervention. In this regard, Defendants argue that "because intervention may equal injunction ... that is an unusual circumstance that should warrant denial of intervention under the fifth factor." (Doc. # 128, at 4.) The Court does not agree with Defendants' view that "intervention may equal injunction." Although the analysis and explanation of the Court's rationale are often the same in regard to every intervenor, this Court has dealt with every motion for a preliminary injunction to stay an execution that has been filed in connection with this proceeding on a case-by-case, fact-specific basis. Further, the Sixth Circuit vacated the preliminary injunction that this Court issued as to Plaintiff-Intervenor Lundgren (Doc. # 102). And, on November 9, 2006, this Court issued an Opinion and Order granting Jerome Henderon's motion to intervene and

5

denying his motion for a preliminary injunction. (Doc. # 124.) It therefore tests the limits of credulity for Defendants to suggest that "intervention may equal injunction." Beyond that, Defendants have not alleged any other unusual factors militating against intervention, and none are apparent to the Court.

Having found that Spirko's motion to intervene is timely, the Court turns to the issue of whether Spirko's proffered complaint and the main action have a question of law or fact in common. The Court concludes that they do. At the core of Spirko's complaint is the same method-of-execution challenge that the other plaintiffs assert, and Defendants do not appear to argue otherwise. That said, Defendants advance several reasons for why this Court should not permit Spirko to intervene in this case. First, Defendants reiterate, merely to preserve the arguments, that intervention improperly circumvents class action rules and that the intervenors had other, less intrusive ways of protecting their rights. (Doc. # 128, at 5.) The Court continues to find those arguments unpersuasive for the reasons previously expressed. Defendants further argue that this Court should not permit Spirko to intervene because of his failure to explain how the other parties to this case will not protect his rights through their litigation. (Doc. # 128, at 5.) The Court rejects this argument.

Spirko has a significant interest in this case that cannot adequately be protected by the other plaintiffs because of the time-sensitive nature of his claims and the independent schedule that Spirko faces. If there were to be no executions by the specific lethal injection protocol at the heart of this lawsuit until this litigation were resolved, then the Court might accept Defendants' argument that Spirko's rights, as well as the rights of all other similarly-situated inmates, could adequately be protected by Cooey and the other plaintiffs. But it is ridiculous to suggest that

Cooey can adequately protect Spirko's rights when Spirko might very well face an execution date before Cooey. It is this factor that distinguishes the unreported decisions offered by Defendants supporting their argument, *i.e.*, Donald Hall's motion to intervene in *Johnston v. Crawford*, Case No. 4:04CV1075, pp. 2-3 (E.D. Missouri 2005). (Doc. # 128, at 5.) That is, it is not apparent from the decision cited by Defendants the point to which that lawsuit had progressed or whether the proposed intervenor faced an imminent execution date such that the existing plaintiffs could not adequately protect the interests of the proposed intervenor. For the foregoing reasons, the Court is persuaded that Spirko's motion to intervene is well taken.

## II. Motion for Preliminary Injunction

Spirko also moves for entry of an emergency preliminary injunction preventing Defendants from using their current procedures of execution on him until his § 1983 claims are adjudicated. For the reasons that follow, this Court is constrained to deny his motion.

On October 17, 2006, this Court issued an opinion and order granting Jeffrey Lundgren's motion to intervene and motion for a preliminary injunction staying his execution. (Doc. # 92.) The Court incorporates that order by reference and attaches it for convenience.

For the reasons discussed more fully in that opinion and order, this Court is of the view that Spirko, too, is entitled to a preliminary injunction staying his execution. If anything, Spirko's circumstances are even more compelling than Lundgren's situation, given that Spirko's efforts to raise his claims at the earliest possible opportunity cannot be characterized as dilatory. Unfortunately for Spirko, the law of this case now appears to preclude this Court from granting his motion for a preliminary injunction to stay his execution. The Court first explained its rationale in a November 9, 2006 Opinion and Order denying Jerome Henderson's motion for

preliminary injunction (Doc. # 124) and repeats that rationale verbatim below.

October 23, 2006, the Court of Appeals for the Sixth Circuit issued a one-page, summary order vacating Lundgren's stay of execution. The brevity of the Sixth Circuit's order permits this Court with ease to reproduce the order in its entirety:

> BEFORE: SUHRHEINRICH, SILER, and GILMAN, Circuit Judges
>
> Defendants-Appellants move this Court to vacate the order of the district court allowing Plaintiff-Appellee/Intervenor Jeffrey Lundgren to intervene as well as granting a preliminary injunction, i.e., a stay of the execution scheduled for October 24, 2006. The matter is currently before this panel after being transferred by the original panel by order dated October 23, 2006.
>
> The panel having considered the motion and the response in opposition thereto, and having found the motion to be well taken, it is
>
> ORDERED that the motion be, and it hereby is, GRANTED, and the stay of execution is hereby vacated.
>
> GILMAN, Circuit Judge, dissenting. I would uphold the stay of execution granted by the district court because I find no abuse of discretion in its evaluation of the factors governing the grant of Lundgren's emergency motion for a preliminary injunction. Furthermore, any harm to the State or to the public interest in extending the stay would be greatly ameliorated by this Court substantially advancing our hearing in pending case No. 05-4057, *Cooey v. Taft*, which the panel intends to reset *sua sponte*.

(Doc. # 123, Court of Appeals Order, Case No. 06-4374.) The Sixth Circuit did not issue any subsequent expanded opinion.

From the Sixth Circuit's October 23, 2006 Order, this Court now knows that it erred in granting Lundgren's motion to intervene and/or for a preliminary injunction. This Court just has no idea *how* it erred.

Two observations regarding the Sixth Circuit's October 23, 2006 Order are necessary. First, the appellate court apparently does not preclude the intervention that this Court found

permissive above. Second, the appellate order clearly compels a denial of the injunctive relief sought here but does not enable this Court to explain why a denial is warranted and just.

  The Sixth Circuit's Order vacating the preliminary injunction that this Court issued as to Plaintiff Lundgren purported to address "the order of the district court allowing [intervention] ... as well as granting a preliminary injunction, i.e., a stay of execution." The decision on its face therefore targeted an appeal not only of this Court's decision granting the preliminary injunction, but *also* of the Court's decision allowing Lundgren to intervene. Despite this stated purpose, however, the appellate order stated that the panel "found the motion to be well taken" in a single sentence granting relief *that was confined only to vacating the preliminary injunction.* It is thus unclear whether the two-judge majority intended to find the motion well taken in regard only to the specific action taken (vacating the stay) or in regard to all possible action (overturning both the intervention order and the stay).

  This Court assumes that the appellate majority did not vacate the Court's decision allowing Lundgren to intervene. The majority's order provides little to no guidance in this regard, other than arguably the majority's specific and limited action, but the dissent helps define the contours of what the majority actually held. The dissenting judge states that he would uphold the stay and does not mention the intervention issue. If the majority had addressed intervention, the dissent would have also had to address that threshold issue, because if the dissenting judge *agreed* that intervention was improper, Lundgren would be out of the case, there would be no jurisdiction supporting the stay order, and there would have been no need for the dissent to address the stay. If, however, the majority did not address intervention but instead addressed only the stay, then the dissent is appropriately confined.

Because the dissenting judge was obviously part of the panel's discussion and privy to the intent of the majority, this Court reads the narrow nature of the dissenting opinion to reflect a narrow nature of the majority opinion. The Court is generally notably hesitant to read any appellate dissent as helping define a majority holding–such a situation risks contravening the axiomatic principle that a holding must be read for what it actually says and not by the characterization of a dissenting voice–but this is an unusual case insofar as the appellate majority has offered *no reasoning whatsoever* to support a decision that at best curiously addresses only one of two issues before it and at worst creates confusion by overturning both intervention and the stay, the former implicitly and the latter expressly.

In other words, this Court is left with the unenviable task of construing a holding that is a conclusion with no expressed rationale. The Court therefore reads the majority's decision to reach no further than its explicit holding–*i.e.*, no stay was warranted–because reading the decision to mean anything more would mean that this Court is simply expansively guessing at what the appellate majority meant to hold. If the majority intended to overturn both intervention and the stay, simply granting the appellants' motion would have done this. But by expressly and specifically stating that the stay of execution was vacated, the majority was apparently narrowing the scope of its granting of the appellants' motion; to conclude otherwise would mean that by "repeating" the vacation of the stay, the majority was engaging in surplusage. The spartan nature of the majority decision suggests that this was not a majority with a proclivity toward such verbosity.

The Sixth Circuit's October 23, 2006 Order therefore targeted only the injunction staying the execution. The clear conclusion of the Order was that this Court erred in issuing a stay. And

in the absence of any stated rationale by the appellate majority, this Court cannot now conduct any meaningful discussion as to how Spirko's circumstances fall inside or outside the hidden rationale of the Sixth Circuit majority.

For purposes of appellate review, this Court notes that it would grant injunctive relief in the absence of the controlling appellate order. In determining whether to exercise its discretion to grant a preliminary injunction, a district court must balance the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995)). This Court remains as convinced now as it was when it issued its decision as to Lundgren that every factor that this Court is bound to consider in determining whether a preliminary injunction is warranted favors an intervenor such as Spirko.

Given the evidence that Jeffrey Hill and Jerome Henderson first produced, as well as anecdotal evidence that Spirko included demonstrating problems that occurred during Ohio's execution of inmate Joseph Clark on May 2, 2006, Spirko has demonstrated a *stronger* likelihood of success on the merits than some of the plaintiffs who preceded him, in view of the growing body of evidence calling Ohio's lethal injection protocol increasingly into question. This Court stated unequivocally in its order granting Hill's request for a preliminary injunction that it can not and will not turn a blind eye to the evidence presented in the cases of *Brown v. Beck* in North Carolina and *Morales v. Hickman* in California appearing to contradict the opinion

11

of Dr. Mark Dershwitz that virtually all persons given the dose of sodium thiopental prescribed under Ohio's lethal-injection protocol would be rendered unconscious and would stop breathing within one minute. (Doc. # 45, at 6-9.) The evidence that has begun to emerge calling this and other conclusions by Dr. Dershwitz into question also persuades this Court that there is an unacceptable and unnecessary risk that Spirko will be irreparably harmed absent the injunction, *i.e.*, that Spirko could suffer unnecessary and excruciating pain while being executed in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment.

The Court is not persuaded that issuance of the preliminary injunction will cause substantial harm to the State by comparison. Without diminishing in any way the State's significant interest in enforcing its criminal judgments in a timely fashion, it appears to this Court–even without a fully developed record–that the potential flaws identified in Ohio's lethal injection protocol giving rise to the unacceptable risk of violating the Eighth Amendment's proscription against cruel and unusual punishment are readily fixable. Thus, any delay in carrying out Spirko's execution should and can be minimal. Any argument that the granting of an injunction would harm the State's interest in fulfilling the judgment against Plaintiff Spirko in a timely manner is somewhat disingenuous, considering that but for the State's interlocutory appeal, many if not all of the underlying issues would in all likelihood have been resolved by now. The fact that the state-obtained stay has prevented such resolution qualifies the weight to be afforded Defendants' asserted harm, because such harm is ultimately self-inflicted. Self-inflicted harm that could result from issuance of preliminary injunctive relief should not necessarily preclude an injunction. *Cf. Pappan Enter. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (holding in trademark infringement case that "a party's self-inflicted harm by

choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchiser of the mark"); *Midwest Guar. Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harms way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct").

Finally, this Court is persuaded that the public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.

This Court is mindful of the many cases raising the same or similar challenges in which courts have denied motions for a preliminary injunction. *See, e.g., Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006); *Bieghler v. Donahue*, No. 06-1300, 2006 WL 229027 (7th Cir. Jan. 26, 2006), *vacated*, 126 S.Ct. 1190 (2006); *Vinson v. Johnson*, 126 S.Ct. 1908, 2006 WL 1109748 (U.S. Apr. 27, 2006). In those cases, however, the plaintiff's undue delay in bringing his § 1983 action was a factor weighing against him relative to the State's strong interest in enforcing its criminal judgments. For example, in *Smith v. Johnson*, the Fifth Circuit remarked that "we have made clear that waiting to file such a challenge days before a scheduled execution constitutes unnecessary delay. *Smith*, 440 F.3d at 263 (citations omitted). In this Court's view, there has been no such delay on Spirko's part.

As noted, for the reasons set forth above and discussed more fully in its Opinion and Order granting Lundgren's motion to intervene and motion for a preliminary injunction, this Court is of the view that Spirko's motion for a preliminary injunction *should* be granted. But, as

13

also noted, this Court is bound by the Sixth Circuit's October 23, 2006 Order.  That being so, the Court is constrained by that decision to deny Spirko's motion for a preliminary injunction to stay his execution.  (Doc. # 120.)  That the Court cannot tell Spirko *substantively why* his request for injunctive relief fails is unfortunate.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** John Spirko's emergency motion to intervene (Doc. # 119) and **DENIES** Spirko's motion for a preliminary injunction (Doc. # 120). The Clerk shall detach the proffered complaint attached to Doc. # 119 and file it on the docket.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost  
GREGORY L. FROST  
UNITED STATES DISTRICT JUDGE