UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD COOEY, et al.,

    Plaintiffs,        Case No. 2:04-cv-1156
                JUDGE GREGORY L. FROST
  v.              Magistrate Judge Mark R. Abel

ROBERT TAFT, et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of a December 5, 2006 motion for reconsideration filed by intervenor John G. Spirko, Jr.  (Doc. # 143.)  Previously, in a November 22, 2006 Opinion and Order, this Court permitted Spirko to intervene in this litigation but denied a stay of his scheduled execution.  (Doc. # 137.)

Spirko bases his motion for reconsideration on the fact that after this Court denied his motion for a preliminary injunction (Doc. #120), which would have stayed his scheduled execution, a panel of the Sixth Circuit reversed this Court and granted a stay in regard to intervenor Jerome Henderson.  This Court's reasoning in regard to Henderson and Spirko was essentially identical: that because the Sixth Circuit has reversed without explanation a stay granted to intervenor Jeffrey Lundgren, this Court was mandated to deny stays in analogous situations.  (Docs. # 124, 137.)  Thus, Spirko posits, the *Henderson* appellate decision should control over the *Lundgren* appellate decision.

Before addressing directly the effect of the *Henderson* grant of a stay on the *Lundgren* denial of a stay, this Court must place the issue in its proper context.  This is because the Sixth

1

Circuit has placed its lower courts generally, and this Court specifically, in an unusual position that ultimately dictates the disposition of the reconsideration motion.

The captioned case involves a constitutional challenge to Ohio's lethal injection protocol and has been before this Court since 2004. The case has been stayed while an appeal involving the original plaintiff, Richard Cooey, is pending before the Sixth Circuit. During this stay, a number of death row inmates have sought to intervene in this litigation. They have succeeded in intervening, although the specific circumstances of each intervenor have dictated whether the intervenor could obtain a stay of his scheduled execution.

The Sixth Circuit has addressed some of the issues involved in this litigation only to a limited degree. For example, the appellate court addressed many of the same issues in decisions involving Sedley Alley, who had brought a similar 42 U.S.C. § 1983 challenge to Tennessee's lethal injection protocol earlier this year. *See Alley v. Little*, 452 F.3d 621 (6th Cir. 2006); *Alley v. Little*, 186 Fed. Appx. 604 (6th Cir. 2006); *Alley v. Little*, 447 F.3d 976 (6th Cir. 2006); *Alley v. Little*, 181 Fed. Appx. 509 (6th Cir. 2006).

This Court can draw little guidance from the *Alley* decisions, however, beyond their reiterating the same standards that this Court has endeavored to apply in considering stay requests; the core issue in Alley's case–the protocol's constitutionality–was never ultimately addressed. Moreover, because Alley's case was predicated on limited and often apparently different evidence than that involved in the present litigation (in which there has been some limited development of the evidence generally favoring the intervenors), Alley's failure to demonstrate a likelihood of success on the merits has provided no dispositive rule for addressing the numerous intervenors' stay requests with which this Court has dealt.

2

More recent developments have not clarified the state of the law on the issues involved. In an October 17, 2006 Opinion and Order, this Court permitted Jeffrey Lundgren to intervene in this action; the Court also stayed his execution.  (Doc. # 92.)  Defendants appealed that decision on October 18, 2006.  (Doc. # 94.)  In an October 23, 2006 Order, the Sixth Circuit declined en banc consideration of that appeal and, apparently pursuant to an internal operating rule of the appellate court, the appeal was assigned to the panel that had considered Lundgren's habeas appeal.  (Doc. # 102.)  Later that same day, the Sixth Circuit recognized that the appeal involving original plaintiff Cooey existed and issued a second order, which stated in part:

> In order to insure the consistent, uniform and fair application of federal law in all such lethal injection cases before the Court, and in deference to the first panel heretofore assigned to decide the issue, we transfer this case to the aforementioned panel, subject to that panel's acceptance of the case for decision along with other similar cases raising the constitutionality of Ohio's method of imposing capital punishment by lethal injection.  It would be grossly unfair for different panels of this Court to reach opposite conclusions on the issue of the constitutionality of Ohio's method of lethal injection so that some capital defendants are put to death by lethal injection while other similarly situated are spared.

(Doc. # 107, at 2.)  The Sixth Circuit therefore transferred the case to the *Cooey* panel.

Without providing an explanation of any sort, a majority of the *Cooey-Lundgren* panel reversed this Court's decision in a third October 23, 2006 Order.  (Doc. # 123.)  Lacking guidance, this Court was left only with a conclusion: that this Court had erred in granting a stay of execution.  Because the Sixth Circuit panel majority did not explain how this Court erred, this Court and any other court in this circuit that would have to address the issue is left in the dark as to how to avoid error in future cases.  This was an unfortunate development, because while a lack of clarity in the law in any case is troubling (even if at times unavoidable), a lack of clarity

when the death penalty is involved is of the utmost concern.

What is clear is that our system of law provides that an appellate court trumps a district court. Accordingly, given the Lundgren appellate decision, this Court was constrained to deny intervenors Jerome Henderson and John Spirko stays of their executions without being able to provide an explanation. (Docs. # 124, 137.)

Henderson appealed this Court's decision on his preliminary injunction stay request on November 28, 2006. (Doc. # 141.) In a December 1, 2006 Order, a Sixth Circuit panel reversed this Court and granted a stay of Henderson's execution. (Doc. # 142.) This appellate decision is interesting for two reasons.

The first interesting aspect of the *Henderson* decision is the panel that issued the decision. As noted above, the *Lundgren* appeal was originally assigned to the appellate panel that had considered Lundgren's habeas appeal. That panel transferred the appeal to the *Cooey* panel, in part because the original panel was concerned about the potential for inconsistent decisions. Henderson's habeas appellate panel kept his new appeal, however, without mentioning the prior *Lundgren* panel transfer or the issues that had motivated that transfer.

The second interesting aspect of the *Henderson* decision is that the new panel reversed this Court and stayed Henderson's execution. The *Henderson* majority opinion reads in its spartan entirety:

> Plaintiff, Jerome Henderson, asks this court to grant an emergency stay of execution of his death sentence which is set to take place at 10:00 a.m. on December 5, 2006.

> Having considered the motion and the response in opposition, and having found the motion to be well-taken, it is

4

      **ORDERED** that the motion is **GRANTED**, and a stay of execution will
issue.

(Doc. # 142, at 1.)  Like the *Lundgren* appellate panel, the *Henderson* panel was split.  And like

in the *Lundgren* decision, the *Henderson* majority issued a conclusory decision that provided no

guidance whatsoever to the lower courts.

      The dissenting judge in the *Henderson* appeal opined that she could not "reconcile the

majority's decision to grant this stay with our prior decision to vacate the district court's grant of

a stay to Jeffrey Lundgren less than six weeks ago."  (Doc. # 142, at 1.)  This Court agrees and

cannot fathom how the appellate court's earlier concern over how "[i]t would be grossly unfair

for different panels of this Court to reach opposite conclusions on the issue of the

constitutionality of Ohio's method of lethal injection so that some capital defendants are put to

death by lethal injection while other similarly situated are spared" meshes with what has

transpired in regard to Lundgren and Henderson.  In the words of the Sixth Circuit, there is no

"consistent, uniform and fair application of federal law in all such lethal injection cases before

the [appellate court]."  (Doc. # 107, at 2.)  Certainly, Henderson will not complain about the

inconsistency, but Lundgren, who was executed on October 24, 2006, would no doubt have been

interested in the *Henderson* panel's unexpressed rationale.

      The dissenting judge in *Henderson* noted that "the integrity of the judicial system

demands that courts of law adhere to [prior] decisions or else provide a reasoned explanation for

the refusal to do so."  (Doc. # 142, at 2.)  That axiomatic principle proves troubling here, where

this Court is now confronted with two different unreported decisions by two different appellate

panels, both concerned with the same issues of law and both reaching wholly opposite,

unexplained results.  It is difficult to discern principled distinctions justifying divergent outcomes in a vacuum.

It is thus unclear which appellate decision controls.  It is also unclear what the relevant substantive law is.  Such lack of clarity is most troubling because when our system of law includes unexplained decisionmaking, it loses the legitimacy that must guide the state-sanctioned taking of any human life.  Although it is not this Court's intent to find fault with any panel or judge of the higher court, it is this Court's intent to respectfully request clarification on the serious issues involved in this litigation.  This Court's inability to discern the appellate rationale for denying *or* granting a stay does not promote confidence in the system, does not promote consistency in court decisions, and does not promote the fundamental value of fairness that underlies any conception of justice.

This brings the Court to Spirko's pending motion for reconsideration.  (Doc. # 143.)  To grant this motion, the Court must recognize that it erred in previously denying his motion for a stay.  But in light of conflicting, unexplained decisions, the Court simply cannot say what the law is in this Circuit on the issues involved, and multiple panels of the appellate court have declined opportunities to explain the state of the law.  The end result is a morass of deadly ambiguity.  Accordingly, the Court cannot reasonably conclude that it erred in denying Spirko's motion for a preliminary injunction and must therefore **DENY** the motion for reconsideration. (Doc. # 143.)

The Court currently has on its docket a motion for a preliminary injunction/motion to stay his execution filed by intervenor Kenneth Biros.  (Docs. # 144.)  That motion will require issuance of a prompt decision in light of his scheduled January 23, 2007 execution date.  The

Sixth Circuit is set to entertain oral argument regarding this lethal injection litigation on

December 7, 2006.  It is the hope of this Court that all counsel involved will respectfully urge the

appellate court to issue a prompt decision providing this and other courts with much-needed

guidance on the issues involved in this litigation.

        **IT IS SO ORDERED.**

                                   /s/   Gregory L. Frost          
                                  GREGORY L. FROST
                                  UNITED STATES DISTRICT JUDGE