IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD COOEY**, et al., | ) | Case Number: 2:04-CV-1156 |
| | ) | |
| Plaintiff, | ) | Judge Gregory L. Frost |
| | ) | |
| vs. | ) | Magistrate Judge Abel |
| | ) | |
| | ) | |
| **ROBERT TAFT, Governor**, et al., | ) | |
| | ) | **REPLY BRIEF IN SUPPORT OF** |
| | ) | **MOTION OF ROMELL BROOM TO** |
| Defendants. | ) | **INTERVENE AS PLAINTIFF-** |
| | ) | **INTERVENOR** |

Romell Broom, by and through his undersigned counsel, hereby submits his Reply Brief in support of his pending motion to intervene as a plaintiff in this action.

Broom should be permitted to intervene in this action. The defendants' arguments to the contrary should be rejected because: (1) they have already been rejected by this Court in the context of other proposed intervenors; (2) the statute of limitations issue has not been finally decided by the Sixth Circuit and, in any event, the issue is not yet properly raised in this case; and/or (3) their arguments are otherwise without merit.

**I. Broom's Motion to Intervene is Timely**

All of the factors cited by defendants support Broom's intervention.

First, because of the defendants' interlocutory appeal, this suit has not progressed in the district

-1-

court beyond the initial pleading stage. It does not appear that any discovery has been conducted. For all intents and purposes, including the fact that the operative execution protocol was only recently adopted effective July 10, 2006, this litigation is in its infancy.

Second, the purpose for Broom's intervention is that his claims are now ripe and he does not want to be tortured to death in violation of his constitutional and human rights. If his participation in this suit delays his execution, that is a good thing, not a bad thing, for all parties and for the citizens of Ohio. Serious and legitimate claims have been raised in this lawsuit challenging the State's execution protocol. The merits of these claims have only become <u>more</u> compelling with the passage of time.

For example, most recently, the execution of Ohio inmate Christopher Newton on May 24, 2007, was seriously botched, as the prison execution technicians spent some 90-minutes searching for suitable veins into which to inject Mr. Newton with the three drug cocktail. Then, Newton took some 16 minutes to die from the chemicals, twice as long as the average Ohio lethal injection execution. (*See* Associated Press, "Execution Took 16 Minutes: Inmate Seen to Convulse, Twitch; Fuel for Debate," *Cincinnati Enquirer*, May 26, 2007, attached hereto as Exhibit A).

Also, on April 24, 2007, a new study was published in the peer-reviewed on-line medical journal, Public Library of Science (PloS) Medicine, entitled "Lethal Injection for Execution: Chemical Asphyxiation?" The study, which was led by Dr. Leonidas G. Koniaris of the University of Miami Miller School of Medicine, reviewed executions in North Carolina, California, and Virginia, three of the 37 states (in addition to the military and federal government) that can legally impose lethal injection. They determined that "thiopental might not be fatal and might be insufficient to induce surgical anesthesia for the duration of the execution" and that "potassium chloride in lethal injection does not reliably induce cardiac arrest."

"Because thiopental has no analgesic effects (in fact, it can be antianalgesic), and because pancuronium would prevent movement in response to the sensations of suffocation and potassium-induced burning, a continuous surgical plane of anesthesia is necessary to prevent extreme suffering in lethal injection."

The study concluded: "[O]ur findings suggest that current lethal injection protocols may not reliably effect death through the mechanisms intended, indicating a failure of design and implementation. If thiopental and potassium chloride fail to cause anesthesia and cardiac arrest, potentially aware inmates could die through pancuronium-induced asphyxiation. Thus, the conventional view of lethal injection leading to an invariably peaceful and painless death is questionable." T.A. Zimmers, J. Sheldon, D.A. Lubarsky, et al., Lethal Injection for Execution: Chemical Asphyxiation?, PLoS Med, Vol. 4, Issue 4, e156 (April 2007)(available at: http://medicine.plosjournals.org (last visited May 7, 2007)).

Until all of the serious problems with Ohio's lethal injection protocol are addressed and resolved after full discovery, any complaints these defendants might make about "delay" are meanspirited and without foundation. Similarly unfounded is defendants' argument that Broom's purpose is "illegitimate" because he is supposedly seeking to benefit from this Court's willingness to permit similarly situated capital inmates to participate in this suit. The Federal Rules of Civil Procedure permit his intervention, as those rule have permitted the intervention of other inmates; this Court is enforcing those rules. There is nothing "illegitimate" about that.

Third, Broom sought intervention promptly after his petition for a writ of certiorari from the denial of habeas relief was denied by the U.S. Supreme Court on February 26, 2007, and only 9 days after his petition for rehearing was denied by the Supreme Court. His motion to intervene was filed before an execution date was set and, as of the date of this reply brief, the Ohio Supreme Court has still not set a date

for Broom's execution. Indeed, on April 27, 2007, Broom asked the Ohio Supreme Court to hold in abeyance any ruling on the State's motion to set an execution date until such time as this Court rules on Broom's motion to intervene. The State did not oppose that request.

Fourth, there is no conceivable prejudice to the State (and certainly not to these named defendants) if Broom is permitted to intervene to challenge under 42 U.S.C. §1983 the constitutionality of the State's lethal injection procedures. In the usual case the State undoubtedly has a legitimate interest in its criminal sentencing judgments being enforced, but that interest is substantially outweighed, even obliterated, by Broom's constitutional right not to be subjected to cruel and unusual punishment in the process of being put to death. The relative weights of these respective interests are not even close. For the State, permitting intervention means a relatively short delay in the grand scheme of a life: once the lethal injection claims are resolved or settled, the human being named Romell Broom that the State executes will perhaps be up to a couple of years older than he is now (i.e., 51 years old on June 4, 2007), but the State will get its execution nonetheless (assuming no separate legal challenge overturns Broom's capital conviction or death sentence and he is not granted executive clemency). Whatever "prejudice" the defendants seek to ascribe to that "delay" is immaterial if non-existent.

Fifth, there are no unusual circumstances that weigh against intervention. All of the facts and circumstances weigh in favor of intervention.

## II. The Statute of Limitations Defense is Not Properly an Issue at this Point in the Case

The Defendants' reliance on the statute of limitations (SOL) as a defense to intervention is unfounded. First, the Sixth Circuit's panel decision in Cooey v. Strickland, entered on March 2, 2007, is not final. Plaintiffs Richard Cooey and Kenneth Biros have each filed petitions for rehearing and rehearing

*en banc*. The legal effect of these filings by Cooey and Biros is to stay the mandate of the Sixth Circuit until, at the earliest, that Court disposes of the petitions. See Fed. App. R. 41(d)(1)("The timely filing of a petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion, unless the court orders otherwise."). The mandate would also typically be stayed during any proceedings by any of the parties seeking certiorari in the U.S. Supreme Court, and particularly in a case such as this one which presents substantial questions of exceptional importance and there is good cause for a stay. Fed. App. R. 41(d)(2). So long as the mandate is stayed, the Sixth Circuit's appellate jurisdiction remains in place and the judgment of the Cooey panel is not yet returned to this court for enforcement.

Because the parties are thus seeking rehearing and rehearing *en banc* of the decision of the Cooey panel, and the mandate as to that panel decision is stayed for at least the duration of that rehearing process, it would be premature and inappropriate for this Court to apply **any** of the Cooey SOL rulings to Broom's case.

Second, the SOL is an affirmative defense. The burden of proof for such an affirmative defense is on the defendants, not on Broom. The proper time for the defendants to raise that defense, should it still be a viable defense when that time arrives, is when they are required to file a responsive pleading to Broom's intervenor complaint. It is not proper to litigate the SOL issue now, in the stage of the case where Broom is seeking intervention. Broom's intervention should not be foreclosed based on affirmative defenses that the defendants might raise in response to Broom's proposed intervenor complaint.

Third, there are factual issues that will need to be developed and addressed in the event the defendants raise a proper SOL defense to Broom's intervenor complaint. For example, Broom may be

entitled to invoke the continuing violation doctrine to avoid any SOL defense that may be raised as to him. The continuing violation doctrine provides that the SOL will not bar a suit so long as the suit was brought within the statutory period as measured against the most recent violation. See, e.g., Draper v. Coeur Rochester, 147 F.3d 1104, 1108 (9th Cir. 1998)(the continuing violation doctrine "will render a complaint timely as to a course of conduct only if the complaint is timely as to the most recent occurrence"); Davis v. Lucent Techs., Inc., 251 F.3d 227, 236 (1st Cir. 2001).

This is clearly a case where defendants' actions and inactions constitute a continuing violation of the inmates' constitutional rights. The challenged three-drug cocktail and the other challenged aspects of the lethal injection protocol are all part of a long-standing and demonstrable policy manifesting the defendants' deliberate indifference to the constitutional rights of inmates like Broom. **The legal violation continues anew every single day that the defendants' deliberate indifference allows the same deficient protocol to remain in place.** The violation will only end when the defendants start to care about the impact of their dangerous protocol by implementing totally new procedures (and such procedures **do** exist) that will not subject inmates to being tortured to death in violation of the Eighth Amendment. Until the defendants change their ways, and reform from their indifference, they will continue to violate Broom's and the other inmates' constitutional rights. Each inmate that comes into the system is subjected to the same unconstitutional protocol and joins the ranks of those whose legal rights are already being violated by defendants every single day the protocol exists.

A clearer case for application of the "continuing violation" doctrine does not exist. See, e.g., Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968)(discussing the government's continuing violation of a company's rights under the Sherman Act); McNamara v. City of

Rittman, 473 F.3d 633, 639-40 (6th Cir. 2007); Trzebuckowski v. City of Cleveland, 319 F.3d 853, 855-58 (6th Cir. 2003); Kuhnle Brothers, Inc. v. County of Geauga, 103 F.3d 516, 522 (6th Cir. 1997)("[a] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment."); McCune v. City of Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988); Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981)("[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.").[1]

There may also be tolling issues applicable to Broom's case. Such issues, too, are often fact intensive. These issue should be permitted to be developed in a deliberative manner, and not given short-shrift because defendants want the SOL issue resolved now on the basis of the motion to intervene. See, e.g., Williams v. Schuller Int'l, Inc., 2002 U.S. App. LEXIS 2071, *9-10 (6th Cir. 2002)("statute-of-limitations issue is simply too fact-intensive to admit of summary disposition"), citing, Huffman v. United States, 82 F.3d 703, 706 (6th Cir. 1996); United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004)("Equitable tolling issues are highly fact-dependent, and . . . the district court is in a better position to develop the facts and assess their legal significance in the first instance . . . .").

---

[1] Baker v. F & F Inv. Co., 489 F.2d 829 (7th Cir. 1973)("the defendants' wrongful conduct continued after the installment contracts were signed; injury to plaintiffs continued to accrue after the installment contracts were signed; and, had defendants at any time ceased their wrongful conduct, further injury to plaintiffs could have been avoided."); Centifanti v. Nix, 865 F.2d 1422, 1432-33 (3d Cir. 1989)(suspended attorney's claim that reinstatement procedures were unconstitutional continued to accrue on each day of the alleged wrong).

## **CONCLUSION**

For all of these reasons, and those set forth in Broom's motion to intervene, and in the interest of justice, Broom's motion to intervene should be granted, and the Court should allow Broom to file the proffered intervenor complaint attached as Exhibit A to Broom's Motion to Intervene (with all exhibits thereto).

Dated: May 30, 2007

                        Respectfully Submitted,

                        /s/ Timothy F. Sweeney
                        Timothy F. Sweeney, Esq. (0040027)
                        LAW OFFICE OF TIMOTHY FARRELL SWEENEY
                        The 820 Building, Suite 430
                        820 West Superior Ave.
                        Cleveland, Ohio 44113-1800
                        (216) 241-5003
                        (216) 241-3138 (fax)
                        Tim@timsweeneylaw.com

                        S. Adele Shank
                        3380 Tremont Road, 2nd Floor
                        Columbus, OH 43221
                        (614) 326-1217
                        (614) 326-1231 (fax)
                        shanklaw@att.net

                        Counsel for Romell Broom

**CERTIFICATE OF SERVICE**

This is to certify that on May 30, 2007, the foregoing REPLY BRIEF IN SUPPORT OF MOTION OF ROMELL BROOM TO INTERVENE AS PLAINTIFF-INTERVENOR was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Timothy F. Sweeney
Timothy F. Sweeney, Esq. (0040027)
LAW OFFICE OF TIMOTHY FARRELL SWEENEY
Counsel for Romell Broom