IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD COOEY, et al.,**

    **Plaintiff,**

    v.                                      Case No. 2:04-cv-1156
                                                  JUDGE GREGORY L. FROST
**ROBERT TAFT, et al.,**                  Magistrate Judge Mark R. Abel

    **Defendants.**

**OPINION AND ORDER**

    Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original plaintiff in a civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio. This matter is before the Court on the emergency motion of Clarence Carter for a preliminary injunction or an order under the All Writs Act staying his execution, scheduled for July 10, 2007. (Doc. # 170.) For the reasons that follow, this Court finds the motion well taken. Thus, it is ORDERED, ADJUDGED, and DECREED that the State of Ohio, and any person acting on its behalf, is hereby STAYED from implementing an order for the execution of Clarence Carter issued by any court of the State of Ohio until further Order from this Court.

    On February 20, 2007, this Court issued an order granting Plaintiff Clarence Carter permission to intervene. (Doc. # 160.) On March 28, 2007, at the State's request, the Supreme Court of Ohio set an execution date for Carter of July 10, 2007. (Doc. # 170, at 51.) Accordingly, Carter filed on April 19, 2007 the instant emergency motion for preliminary injunction, or at the very least for an order under the All Writs Act, to stay his execution. Also before the Court are the Defendants' brief in opposition (Doc. # 183) and Plaintiff's amended

reply memorandum (Doc. # 189).  On April 20, 2007, this Court conducted an informal telephone conference in accordance with S.D. Ohio Civ. R. 65.1(a).  The parties should note that "findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits."  *United States v. Edward Rose & Sons*, 384 F.3d. 258, 261 (6th Cir. 2004) (citing *University of Texas v. Camenisch*, 451 U.S. 390 395 (1981)).

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits."  *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)). The decision of whether to issue a preliminary injunction rests within the discretion of the district court.  *See, e.g., N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir. 1989).  In determining whether to exercise its discretion to grant a preliminary injunction, a district court must balance the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995)).  This Court finds that each factor favors Carter's request for a preliminary injunction, even after recent developments in this case that might, at first glance, suggest that the injunction should not issue.

On December 21, 2006, this Court issued an opinion and order granting Kenneth Biros's emergency motion for a preliminary injunction staying his execution. (Doc. # 151.) The Court incorporates that order by reference and attaches it for convenience. For purposes of the instant order, the most germane point to be taken from the Biros order is the Court's conclusion therein that the law of this case is that this Court should evaluate individually and on a case-by-case basis any motion for a preliminary injunction that comes before it.

Thus, in evaluating Carter's emergency motion for a preliminary injunction, the Court notes first that principals of equity weigh in Carter's favor, insofar as he was diligent in filing his motion to intervene and filing the instant emergency motion for a preliminary injunction. As noted above, this Court issued an order on February 20, 2007 granting Carter's request for permission to intervene in this action. (Doc. # 160.) Pursuant to the reasoning set forth in this Court's March 28, 2005 Opinion and Order (Doc. # 14), the statute of limitations on Carter's § 1983 claim did not begin to run until his execution became imminent (*i.e.*, when the United States Supreme Court declined to review his habeas corpus case or when the time for seeking United States Supreme Court review expired) and when he knew or had reason to know of the facts giving rise to his claim. On April 6, 2006, the Sixth Circuit affirmed the trial court's decision denying Carter's habeas corpus petition, *Carter v. Mitchell*, 443 F.3d 517 (6th Cir. 2006), and on July 25, 2006, the Sixth Circuit rejected Carter's petition for a rehearing and suggestion for a rehearing *en banc*. On January 8, 2007, the United States Supreme Court denied Carter's petition for *certiorari*. Carter filed his motion to intervene in this case the next day.

As Carter points out, when he filed his motion to intervene on January 9, 2007, he did not have an execution date. Further, when this Court granted him permission to intervene on

3

February 20, 2007, he still did not have an execution date. However, on March 28, 2007, the Supreme Court of Ohio, at the State's request and even though provided with notice of Carter's intervention in this case, scheduled Carter's execution by lethal injection for July 10, 2007. (Doc. # 170, at 5.) On April 19, 2007, Carter filed the instant emergency motion for a preliminary injunction or an order under the All Writs Act. Pursuant to this Court's definition of the statute of limitations, which was and is in full force and effect at all times relevant to Carter's endeavor to intervene in this case, Carter proceeded in a timely and diligent manner.

This Court is well aware, of course, that a Sixth Circuit panel has since issued an opinion that would overrule this Court's definition of the statute of limitations for method-of-execution challenges raised under 42 U.S.C. § 1983. That March 2, 2007 opinion states that the appropriate date for commencement of the limitations period for a § 1983 challenge on Eighth Amendment grounds to a state's execution protocol is upon conclusion of direct review of the death sentence in the state court or the expiration of time for seeking such review, and that the limitations period applicable to the instant action, (in connection with which Plaintiff-Intervenor Carter now seeks an order staying his execution), commenced no later than when the challenged protocol became Ohio's exclusive method of execution, *i.e.*, 2001. *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007). Whatever effect that opinion eventually has on this case, the most dramatic of which would compel the dismissal of most if not all of the plaintiffs,[1] the opinion can

---

[1] The Sixth Circuit has still not yet ruled on the request for a rehearing and suggestion for rehearing *en banc*, which the Plaintiff filed on March 13, 2007. That being so, the Sixth Circuit has not yet issued its mandate in this case. *See* Fed. R. App. P. 41(d)(1) ("The timely filing of a . . . petition for rehearing en banc . . . stays the mandate until disposition of the petition or motion, unless the court orders otherwise."). The March 2, 2007 appellate opinion can therefore be of no effect at this time.

4

not control this Court's analysis of whether Carter proceeded in a timely and diligent manner when he filed his motion to intervene and subsequent motion for a preliminary injunction. Given the law that was in effect at all times relevant to Carter's pursuit to intervene in this case–and given that until the appellate opinion is controlling this Court's interpretation of that law remains in effect–the Court concludes that Carter was timely in filing his motion to intervene in this case.

Returning to the four factors that this Court must evaluate and balance, *see McPherson,* 119 F.3d at 459, given the evidence that Jeffrey Hill first produced and which is now part of the record; additional anecdotal evidence that Plaintiff-Intervenor Biros produced regarding the suspension of executions in Florida (Doc. # 149-9) and a finding by the Northern District of California that California's three-drug protocol violates the Eighth Amendment (Doc. # 149-10); and additional, more recent evidence that Carter has produced in the form of a research article published on April 24, 2007 raising questions about the efficacy of the three-drug protocol (Doc. # 187-2), the Court is satisfied that Carter has demonstrated at least as strong a likelihood of success on the merits as Biros before him. That the Sixth Circuit recently issued a decision overruling this Court's definition of the statute of limitations applicable to Cooey's challenge does not undermine the Court's conclusion on this factor.

The notably limited record before this Court reflects a growing body of evidence calling the lethal injection protocol like the one Ohio uses increasingly into question. This Court stated unequivocally in its order granting Hill's request for a preliminary injunction that it can not and will not turn a blind eye to the evidence presented in the cases of *Brown v. Beck* in North Carolina and *Morales v. Hickman* in California appearing to contradict the opinion of Dr. Mark Dershwitz that virtually all persons given the dose of sodium thiopental prescribed under Ohio's

5

lethal-injection protocol would be rendered unconscious and would stop breathing within one minute.  (Doc. # 45, at 6-9.)  This Court reiterated that position when it granted Plaintiff-Intervenor Biros's request for a preliminary injunction, noting additionally that multiple states had, by that point, recently placed executions on hold due to serious concerns about various aspects of their respective lethal injection protocols.  (Doc. # 11, at 7 n.5.)  Carter has provided a research article published on April 24, 2007 questioning, among other things, whether any reliable medical research ever supported the formation of the three-drug protocol first devised by Oklahoma and then essentially copied by every other state seeking to use lethal injection as a method of execution, whether the administration of the first drug, thiopental, is alone fatal or sufficient to anesthetize the inmate for the duration of the execution, and whether the administration of the third drug, potassium chloride, reliably induces cardiac arrest.  (Doc. # 187-2.)

     Defendants continue to take this Court to task for its conclusion in this regard, arguing that evidence from hearings in other cases regarding lethal injection protocols employed by other states is insufficient to establish a strong likelihood of success on the merits and that the Court's conclusion effectively lowers the standard in *McPherson*.  The Court continues to disagree with Defendants' assertion that it has lowered the *McPherson* standard, for it bears reminding that the four factors identified in *McPherson* are "factors to be balanced, not prerequisites that must be met."  *Six Clinics Holding Corp., II v. Cafcomp Systems*, 119 F.3d 393, 400 (6th Cir. 1997). Viewed in this context, Defendants have not cited, and the Court is not aware of, any cases holding that demonstrating a strong likelihood of success on the merits requires the movant to produce a certain quantum or quality of evidence.  Regarding Defendants' argument that

"*McPherson* does not provide for an incrementally better showing than previous litigants" (Doc. # 183, at 8), the Court notes that *McPherson* was not dealing with the decision of whether to stay the movant's execution by means involving an unacceptable and unnecessary risk that the movant could suffer excruciating pain in violation of the Eighth Amendment; this Court is. And that fact, in this Court's view, is entitled to some weight when viewing whether Carter has demonstrated a strong likelihood of success on the merits. Regarding Defendants' attack of this Court's reliance on evidence produced in other cases around the country and anecdotal evidence regarding problems that have occurred during recent executions in Ohio and other states, the Court notes that although such evidence is not ideal, it is nonetheless persuasive regarding the first factor in *McPherson* and is arguably is the best evidence that the plaintiffs in this case could produce, given the fact that this case was stayed before any discovery, expert testimony, or other fact-finding could commence.

This Court is well aware that some "more recent decisions have found no likelihood of success on the merits." (Doc. # 183, at 13.) But those cases involved different circumstances, procedural postures, and evidence than the case before this Court, and rejected "showings" of the likelihood of success on the merits that this Court has never required. For example, in *Patton v. Jones*, 193 F. App'x 785 (10th Cir. 2006), the Court of Appeals for the Tenth Circuit, in concluding that the plaintiff had failed to establish a significant possibility of success on the merits, had the benefit not only of evidence and findings from an evidentiary hearing conducted by the district court, but also of a revision by the State of the execution protocol during the pendency of the plaintiff's appeal to the Tenth Circuit. The Tenth Circuit went on to note, as the district court had, that the Eighth Amendment did not entitle the plaintiff to that which would be

"optimally desirable" in a "surgical setting." *Patton*, 193 F. App'x at 790. Respectfully, this Court's conclusion that Carter has demonstrated a strong likelihood of success on the merits in no way turns on a belief, or amounts to a finding, that the Eighth Amendment entitles Carter to an "optimally desirable" execution.[2]

In addressing whether Carter has established a strong likelihood of success on the merits, this Court would be remiss if it did not mention the Sixth Circuit's March 2, 2007 opinion that would overrule this Court's definition of the statute of limitations for method-of-execution challenges raised under 42 U.S.C. § 1983. *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007). That opinion's rationale could require dismissal of Carter's complaint. But that possibility cannot cut against Carter in his effort to demonstrate a strong likelihood of success on the merits. Crediting an opinion that may or may not result in binding precedent at this time would transform what is at this point a non-binding opinion into the law. Rather, this Court is guided, if not bound by law-of-the-case considerations, by the Sixth Circuit's own decision on March 19, 2007 not to vacate Plaintiff-Intervenor Biros's preliminary injunction despite the March 2, 2007 opinion contrary to this Court's definition of the statute of limitations and directing this Court to dismiss the case. After the Sixth Circuit issued that March 2, 2007

---

[2] Furthermore, this Court is not entirely persuaded that the relevant inquiry is satisfied by looking only, if at all, at prior cases finding little chance of success on the merits. As Judge Martin recently pointed out, "[i]f this was the primary relevant inquiry, as the panel opinions suggest, no challenge to a method of execution would ever go forward, no matter how indifferent a state became to the pain and suffering inflicted by the process, simply because nobody elese has successfully challenged the procedure before." *Alley v. Little*, 452 F.3d 621, 623 (6th Cir. 2006) (Martin, J., dissenting from order denying petition for rehearing *en banc*). It defies logic to outright reject a constitutional challenge on the muddled rationale that such a challenge had not previously prevailed. Under that approach, no statute or practice would ever be–or have been–found unconstitutional. It does not matter if one believes in original intent or a living Constitution to accept this fundamental premise of jurisprudence.

opinion, the State filed a motion asking the Sixth Circuit to vacate Biros's preliminary injunction so that his execution scheduled for March 20, 2007 could proceed. The Sixth Circuit declined, stating that Biros was an intervenor in the case who had joined in the petition for rehearing with suggestion for rehearing *en banc* that was still pending before the Sixth Circuit and that the State was free to renew its motion to vacate following the Sixth Circuit's resolution of that petition. (Doc. # 170-4, at 6.) Guided by the Sixth Circuit's decision in this regard, this Court finds that Carter is entitled to the same–namely, the opportunity to continue litigating his Eighth Amendment challenge to Ohio's lethal injection protocol by way of the pending petition for rehearing with suggestion for rehearing *en banc*.[3]

Returning to the four factors set forth in *McPherson*, the Court concludes that the second factor also weighs in Carter's favor. The evidence that continues to mount calling multiple conclusions by Dr. Dershwitz into question also persuades this Court that there is an unacceptable and unnecessary risk that Carter will be irreparably harmed absent the injunction, *i.e.*, that Carter could suffer unnecessary and excruciating pain while being executed in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment.

Regarding the third factor, the Court is not persuaded that issuance of the preliminary

---

[3] For the same reason–*i.e.*, the Sixth Circuit's March 19, 2007 decision denying the State's motion to vacate Biro's preliminary injunction–this Court is constrained to conclude that it is not bound by the Sixth Circuit's decision in *Workman v. Bredesen*, ___ F.3d. ___, 2007 WL 1311330 (6th Cir. May 7, 2007), reversing the district court's decision granting a preliminary injunction and finding, among other things, an "absence of any meaningful chance of success on the merits . . . ." *Id*. at *13. Workman was not issued as part of this litigation on appeal and cannot logically serve to undo the law of the case that has been developed by the appellate panels involved in this litigation. Moreover, Workman involved distinguishing factors important to its appellate majority, including extensive state procedures and a governor-initiated review of the state protocol. There is no record of such Ohio procedures or review here.

9

injunction will cause substantial harm to the State by comparison. Without diminishing in any way the State's significant interest in enforcing its criminal judgments in a timely fashion, it appears to this Court–even without a fully developed record–that the potential flaws identified in Ohio's lethal injection protocol giving rise to the unacceptable risk of violating the Eighth Amendment's proscription against cruel and unusual punishment are readily fixable. Thus, any delay in carrying out Carter's execution should and can be minimal. Any argument that the granting of an injunction would harm the State's interest in fulfilling the judgment against Plaintiff Carter in a timely manner is somewhat disingenuous, considering that but for the State's interlocutory appeal, many if not all of the underlying issues would in all likelihood have been resolved by now. The fact that the state-obtained stay has prevented such resolution qualifies the weight to be afforded Defendants' asserted harm, because such harm is ultimately self-inflicted. Self-inflicted harm that could result from issuance of preliminary injunctive relief should not necessarily preclude an injunction. *Cf. Pappan Enter. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (holding in trademark infringement case that "a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchiser of the mark"); *Midwest Guar. Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harms way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct").

Contrary to Defendants' argument, this Court is not penalizing them for attempting to vindicate their defenses in the interlocutory appeal. (Doc. # 183, at 16-18.) But their request for the interlocutory appeal and the resulting stay in these proceedings are factors the Court must

weigh. Logically, these factors mitigate any assertion by Defendants of irreparable harm stemming from the issuance of a preliminary injunction.

Finally, this Court is persuaded that the public interest is served only by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.

This Court remains mindful of other cases raising the same or similar challenges in which courts have denied motions for a preliminary injunction. *See, e.g., Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006); *Bieghler v. Donahue*, 163 F. App'x 419 (7th Cir. 2006), *vacated*, 126 S.Ct. 1190 (2006); *Vinson v. Johnson*, 126 S.Ct. 1908, 2006 WL 1109748 (U.S. Apr. 27, 2006); *Alley v. Little*, 181 F. App'x 509 (6th Cir. 2006). In those cases, however, the plaintiffs' undue delay in bringing their § 1983 actions was a factor weighing against them relative to the State's strong interest in enforcing its criminal judgments. For example, in *Smith v. Johnson*, the Fifth Circuit remarked that, "we have made clear that waiting to file such a challenge days before a scheduled execution constitutes unnecessary delay. *Smith*, 440 F.3d at 263 (citations omitted). In this Court's view, there has been no such delay on Carter's part.

For the foregoing reasons, the Court **GRANTS** Plaintiff Carter's motion for an emergency preliminary injunction.[4] (Doc. # 170.) This Court, having considered the matter pursuant to S.D. Ohio Civ. R. 67.1, declines to require a security bond. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (explaining that whether to require a

---

[4] Because this Court finds that Plaintiff Carter is entitled to a preliminary injunction staying his execution, it is not necessary to address Biros's alternative argument urging the Court to issue an order under the All Writs Act staying his execution.

bond is within the discretion of the court).

**Thus, it is ORDERED, ADJUDGED, and DECREED that the State of Ohio, and any person acting on its behalf, is hereby STAYED from implementing an order for the execution of Clarence Carter issued by any court of the State of Ohio until further Order from this Court.**

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE