**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RICHARD COOEY, et al.,**

      **Plaintiff,**

   **v.**                           **Case No. 2:04-cv-1156**
                                        **JUDGE GREGORY L. FROST**
**ROBERT TAFT, et al.,**                **Magistrate Judge Mark R. Abel**

      **Defendants.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court for consideration of the following sets of filings:

(1) a motion to intervene filed by Mark W. Wiles (Doc. # 164) and a memorandum in opposition filed by Defendants (Doc. # 167);

(2) a motion to intervene filed by Kevin Keith (Doc. # 169) and a memorandum in opposition filed by Defendants (Doc. # 182);

(3) a motion to intervene filed by Billy Slagle (Doc. # 180), a memorandum in opposition filed by Defendants (Doc. # 192), a reply memorandum filed by Slagle (Doc. # 195), and a motion for an expedited ruling on the motion to intervene filed by Slagle (Doc. # 202);

(4) a motion to intervene filed by Romell Broom (Doc. # 181), a memorandum in opposition filed by Defendants (Doc. # 191), a reply memorandum filed by Broom (Doc. # 196), and a notice of execution date and motion for an expedited ruling on the motion to intervene filed by Broom (Doc. # 199);

(5) a motion to intervene filed by Jason Getsy (Doc. # 185) and a memorandum in opposition filed by Defendants (Doc. # 193); and

(6)  a motion to intervene filed by Jonathon Monroe (Doc. # 188) and a memorandum in

opposition filed by Defendants (Doc. # 194).

For the following reasons, the Court **DENIES AS MOOT** the motions for expedited rulings (Docs. # 199, 202) and **GRANTS** the motions to intervene (Docs. # 164, 166, 180, 181, 185, 188).

## I.  Discussion

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original plaintiff in the captioned 42 U.S.C. § 1983 civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio.  The six individuals seeking to intervene raise similar claims.  This Court shall briefly summarize the procedural posture of each potential intervenor.

**(1) Mark W. Wiles.**  The filings do not indicate when Wiles was sentenced to death and when (or even if) he sought habeas relief.  Attachments to Wiles' proffered complaint indicate that the Chief Inspector has denied Wiles' grievance, thereby terminating his administrative remedy.  Proceeding *pro se*, Wiles filed his motion to intervene on February 2, 2007. He does not have an execution date.

Defendants oppose Wiles' motion to intervene on all the grounds that they previously raised, unsuccessfully, as well as on the grounds that Wiles' claim is time-barred by the statute of limitations as set forth in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007).  Defendants have not provided this Court with any of the dates relevant to Wiles.

**(2) Kevin Keith.**  Just as they failed to do with Wiles, the filings also inexplicably fail to indicate when Keith was sentenced to death and when (or even if) he sought habeas relief. Attachments to Keith's proffered complaint do indicate that the Chief Inspector has denied

Keith's grievance, thereby terminating his administrative remedy.  Keith filed his motion to intervene on April 7, 2007.  He does not have an execution date.

Defendants oppose Keith's motion to intervene on all the grounds that they previously raised, unsuccessfully, as well as on the grounds that Keith's claim is time-barred by the statute of limitations as set forth in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007).  As noted, however, Defendants have also not provided this Court with any of the dates relevant to Keith.

(3) **Billy Slagle.**  Slagle was sentenced to death in April 1988.  The briefing indicates that he unsuccessfully sought habeas relief.  After the Sixth Circuit affirmed the denial of such relief on August 8, 2006, Slagle filed a *certiorari* petition that the United States Supreme Court denied on June 18, 2007.  Attachments to Slagle's proffered complaint indicate that the Chief Inspector has denied Slagle's grievance, thereby terminating his administrative remedy.  Slagle filed his motion to intervene on April 25, 2007, well before the expiration of his time for filing a petition for rehearing in the United States Supreme Court.  Slagle does not have an execution date, but he has moved for an expedited decision on his motion to intervene.  Today's decision moots the motion to expedite.

Defendants oppose Slagle's motion to intervene on all the grounds that they previously raised, unsuccessfully, as well as on the grounds that Slagle's claim is time-barred by the statute of limitations as set forth in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007).

(4) **Romell Broom.**  Broom was sentenced to death in October 1985.  The briefing indicates that he unsuccessfully sought habeas relief; the United States Supreme Court denied his *certiorari* petition on February 26, 2007 and subsequently denied a petition for rehearing.  Attachments to Broom's proffered complaint indicate that, after notable delay, the Chief

3

Inspector has denied Broom's grievance, thereby terminating his administrative remedy.  Broom filed his motion to intervene on April 25, 2007.

Broom has a scheduled execution date of October 18, 2007 and has moved for an expedited decision on his motion to intervene.  Today's decision moots the motion to expedite.

Defendants oppose Broom's motion to intervene on all the grounds that they previously raised, unsuccessfully, as well as on the grounds that Broom's claim is time-barred by the statute of limitations as set forth in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007).

**(5) Jason Getsy.**  Getsy was sentenced to death in September 1996.  The briefing indicates that his habeas proceedings are still before the Sixth Circuit; he first obtained habeas relief, but the Sixth Circuit reheard the matter *en banc* and has not yet issued a decision.  Getsy has therefore not yet filed a *certiorari* petition in the United States Supreme Court, which means that the time for filing a petition for rehearing in the United States Supreme Court has not yet expired.  Additionally, attachments to Getsy's proffered complaint indicate that the Chief Inspector has denied Getsy's grievance, thereby terminating his administrative remedy.  Getsy filed his motion to intervene on May 1, 2007. He does not have an execution date.

Defendants oppose Getsy's motion to intervene on all the grounds that they previously raised, unsuccessfully, as well as on the grounds that Getsy's claim is time-barred by the statute of limitations as set forth in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007).

**(6) Jonathon Monroe.**  Monroe was sentenced to death in November 2002.  He filed his motion to intervene on May 2, 2007, before the expiration of his time for filing a petition for rehearing in the United States Supreme Court on his habeas case. In fact, the briefing indicates that Monroe filed a petition for a writ of habeas corpus in 2007.  Thus, he falls well before the

deadline this Court has previously recognized.  Additionally, attachments to Monroe's proffered complaint indicate that the Chief Inspector has denied Monroe's grievance, thereby terminating his administrative remedy.  Monroe does not have an execution date.

Without conceding that he is entitled to intervene as a matter of law, Defendants do not oppose Monroe's motion to intervene.  (Doc. # 194, at 2.)

**A.  Standard Involved**

In addressing both intervention as of right and permissive intervention, the Court must first determine whether the application to intervene is timely.  Federal Rule of Civil Procedure 24(a), which targets intervention of right, requires that the motion to intervene be timely.  The rule states:

> Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).  Rule 24(b)(2), which targets permissive intervention, also includes a timeliness component.  That rule provides:

> Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2).

The timeliness component requires the Court to consider:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his

5

> interest in the case; (4) the prejudice to the original parties due to the proposed
> intervenor's failure, after he or she knew or reasonably should have known of his
> interest in the case, to apply promptly for intervention; and (5) the existence of
> unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870

F.2d 343, 345 (6th Cir. 1989)).

### B.  Exhaustion of Administrative Remedies

Also relevant to this action is the Prison Litigation Reform Act ("PLRA"), which

provides in part:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. §1997e(a).  It is well settled that under this statute, the proper exhaustion of available

administrative remedies, while not jurisdictional, is a mandatory pre-condition to the filing of an

action in federal court challenging prison conditions.  *Woodford v. Ngo*, 126 S. Ct. 2378, 2382-

83 (2006).  The Sixth Circuit has held that the PLRA requires inmates to exhaust their

administrative remedies, even where doing so appears futile.  *See, e.g., Hartsfield v. Vidor*, 199

F.3d 305, 308-10 (6th Cir. 1999).

Thus, this Court has required exhaustion in this and related litigation, dating back to the

first pleadings by Richard Cooey and Adremy Dennis.  (Doc. # 20 in Case No. 2:04-cv-532.)

Other plaintiffs, such as John Hicks, had exhausted or attempted to exhaust their administrative

remedies prior to filing in this Court.  (Doc. # 26.)

A notable issue arose with Jeffrey Hill.  There, the Court had reviewed the Chief

Inspector's disposition of Hill's lethal-injection grievance and had to conclude that there was no

administrative grievance process available.  Thus, the Court permitted intervention in the absence of exhaustion.  (Doc. # 35.)  This rationale informed the Court's decision on the motions to intervene of Johnnie Baston and Arthur Tyler.  (Doc. # 54.)

Things had changed by September 20, 2006, when this Court issued an Opinion and Order denying without prejudice Jeffrey Lundgren's emergency motion to intervene.  (Doc. # 73 in Case No. 2:04-cv-1156.)  That decision explained that because the Court had before it new evidence that the Chief Inspector was now addressing the merits of method-of-execution grievances, the Court had to conclude that an administrative remedy was now available.  Therefore, because Lundgren had failed to exhaust administrative remedies–namely, a direct grievance to the Office of the Chief Inspector pursuant to Ohio Administrative Code § 5120-9-31–he had failed to comply with the PLRA and could not intervene.  (Doc. # 73.)  On October 5, 2006, this Court then issued an Opinion and Order denying without prejudice Lundgren's amended emergency motion to intervene, this time because of Lundgren's failure to properly exhaust completely his administrative remedies.  (Doc. # 86.)  Following proper exhaustion, Lundgren successfully intervened.  (Doc. # 92.)

Thereafter, on October 24, 2006, this Court denied without prejudice a motion to intervene filed by Jerome Henderson, finding that he, too, had failed to exhaust his administrative grievance.  (Doc. # 100.)  After proper exhaustion, Henderson also successfully intervened.  (Doc. # 124.)

Following that intervention, a change in the applicable law occurred.  Through the time of Henderson's motion to intervene, the Sixth Circuit had required a prisoner to plead exhaustion.  *See, e.g., Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998) ("A prisoner

should attach to his § 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint."); *see also Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) ("a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.").  After this Court had ruled on Henderson's motion to intervene, however, the United States Supreme Court clarified that prisoners are not required to plead and demonstrate exhaustion in a complaint.  *See Jones v. Bock*, 127 S. Ct. 910, 919 (2007) (reversing Sixth Circuit and holding that a prisoner need not plead exhaustion).

The Supreme Court's holding applied to the next potential intervenor in this litigation, James J. Filiaggi.  Filiaggi sought to intervene despite the fact that he had never filed a grievance and exhausted his administrative remedies.  Although Filiaggi was not required to plead exhaustion, his admissions rendered his motion problematic because granting the motion would have only led to mandated dismissal of his complaint.  This Court therefore reasoned that Filiaggi's seeking intervention in light of a certain dismissal conveyed an intent to delay his execution, not for purposes of receiving consideration of the substantive merits of his claims–because he could not for failure to exhaust–but simply for the sake of delay.  The Court also noted Filiaggi's admitted knowledge of the existence of this case and his delay in filing in concluding that denial without prejudice of Filiaggi's motion to intervene was warranted.

Filiaggi's situation was distinguishable from intervenor Kenneth Biros, whom this Court had found to have fully exhausted his administrative remedies when the Chief Inspector failed, within thirty days of receiving Biros's grievance, to respond or to show good cause, with

8

notice to Biros, for extending the time to respond.

### C.  Analysis

Pursuant to the reasoning set forth in this Court's March 28, 2005 Opinion and Order (Doc. # 14), the statute of limitations on the six intervenor's § 1983 claims did not begin to run until their executions became imminent (i.e., when the United States Supreme Court declined to review their habeas corpus cases or when the time for seeking United States Supreme Court review expired) and when they knew or had reason to know of the facts giving rise to their claims.  Because all of the six potential intervenors fall within the statute of limitations identified by this Court, the Court can turn to the issue of whether the factors for intervention support the motions before the Court.

In determining whether the six applications are timely, the first factor the Court must consider is the point to which the suit has progressed.  *See United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).   It is beyond dispute that this litigation continues to remain in its early stages.  On April 13, 2005, this Court issued an order granting Defendants' request for an interlocutory appeal.  (Doc. # 21.) That appeal has led to a panel decision, the denial of en banc review, and a stay tied to the preparation of a writ of *certiorari*.  Consequently, this litigation has not even reached the discovery stage.  Thus, by the time the six intervenors filed the motion to intervene *sub judice*, this Court had long before stayed the instant litigation, which has not progressed since.  Because this litigation remains in its early stages, intervention at this point will not prejudice the original parties to this litigation.

The second factor this Court must consider is the purpose for which intervention is

9

sought.  This factor also militates in favor of finding that the six intervenors' motions to intervene are timely.  Just as the intervenors before them, all six have an obvious significant interest in the adjudication of this lawsuit.  Each intervenor's interest in seeing a comprehensive disposition of the shared questions of law and fact is obvious from the record and require no speculation.

The third factor for this Court to weigh in determining whether the instant application is timely is the length of time preceding the applications during which the proposed intervenors knew or reasonably should have known of their interest in the case.  This varies from intervenor to intervenor.  Some, such as Wiles and Keith, present a potentially more problematic inquiry in light of the fact that the record does not reflect many of the dates involved in their respective procedural histories.  The record nonetheless reflects some *limited* evidence supporting each intervenor, such as the fact that not all of them readily knew of the 2006 protocol change.  For those who were recently litigating habeas actions (like intervenor-plaintiff Biros before them) and for those who are still litigating habeas action, they had and have no reason to recognize and act upon their significant interests in the outcome of Cooey's lawsuit until their pursuit of habeas corpus relief ended.

The fourth factor this Court must consider in determining whether the instant applications are timely is the prejudice to the original parties due to the proposed intervenors' failure, after they knew or reasonably should have known of their interest in the case, to apply promptly for intervention.   The Court has previously addressed this factor at length in regard to previous intervenors.  This Court continues to find no undue or needless burden that the original parties will suffer if the six intervenors are permitted to join this lawsuit now.  Given the procedural

posture of this stayed litigation, the Court concludes that permitting intervention here will neither unduly delay nor prejudice the adjudication of the rights of the original parties.  Rather, permitting intervention here will facilitate the expeditious resolution of the rights of the original parties.  *See Secretary of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (affirming allowance of permissive intervention on such grounds).

The fifth and final factor for this Court to weigh in assessing the timeliness of the six motions to intervene is the existence of any unusual circumstances militating against or in favor of intervention.  There are no unusual factors weighing against intervention, and the unsettled state of the law as described below perhaps weigh, if at all, in favor of intervention.  To conclude otherwise would be to run the risk that constitutional rights go unprotected for some parties while other receive consideration.

Having found that the motions to intervene are timely, the Court turns to the issue of whether the six proffered complaints and the main action have a question of law or fact in common.  The Court concludes that they do.  At the core of the tendered complaints is the same method-of-execution challenge that the other plaintiffs assert.

Additionally, the six intervenors each have a significant interest in this case that cannot adequately be protected by the other plaintiffs because of the time-sensitive nature of their claims and the independent schedule that each faces.  If there were to be no executions by the specific lethal injection protocol at the heart of this lawsuit until this litigation were resolved, then the Court might accept the argument that the six intervenors' rights, as well as the rights of all other similarly-situated inmates, could adequately be protected by Cooey and the other plaintiffs already in this case.  But it is ridiculous to suggest that Cooey can adequately protect

11

each intervenors' rights when each intervenor might, like Bloom, very well face an execution date before Cooey.  It is this factor that distinguishes such unreported decisions as *Johnston v. Crawford*, Case No. 4:04CV1075, pp. 2-3 (E.D. Missouri 2005), and *Brown v. Beck*, Case No. 5:06-CT-3018, p. 2 (E.D. N.C. 2006).  (Doc. # 110, at 8.)  It is not apparent from these decisions, in which the courts denied motions to intervene in a pending § 1983 suit challenging the lethal injection protocol, the point to which those lawsuits had progressed or whether the proposed intervenors faced imminent execution dates such that the existing plaintiffs could not adequately protect the interests of the proposed intervenors.

All of the foregoing factors support permissive intervention here.  Because the Court decides, as it has with respect to every other motion to intervene that has been filed in this case, that the six intervenors have demonstrated that permissive intervention is warranted, it is unnecessary for the Court to determine whether they are entitled to intervention of right under Fed. R. Civ. P. 24(a)(2).  *See Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 668 (6th Cir. 1985) ("Since we hold that the District Court did not abuse its discretion in allowing the Bank to intervene under Fed. R. Civ. P. 24(b)(2), we need not consider whether Fed. R. Civ. P. 24(a)(2) gave the Bank the right to intervene.").  Thus, all that remains for discussion is whether Defendants have raised any other grounds that defeat the six motions.

### D.  The *Cooey* Panel Opinion

Defendants oppose intervention on grounds previously raised before and previously rejected by this Court.  They also again assert that intervention is an exercise in futility in light of a decision by a panel of the Sixth Circuit that disagreed with this Court's statute of limitations holding and would compel dismissal of almost every plaintiff in this litigation.  This latter

argument again proves similarly unsuccessful, however, because Defendants continue to fail to credit the actual as opposed to the potential status of this litigation and the opinion of the Sixth Circuit.

As it has explained previously, this Court is of course well aware that a Sixth Circuit panel has issued an opinion that would overrule this Court's interpretation of the statute of limitations for method-of-execution challenges raised under § 1983. *See Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007). That March 2, 2007 opinion states that the appropriate date for commencement of the limitations period for a § 1983 challenge on Eighth Amendment grounds to a state's execution protocol is upon conclusion of direct review of the death sentence in the state court or the expiration of time for seeking such review, and that the limitations period applicable to the instant action commences no later than when the challenged protocol became Ohio's exclusive method of execution, *i.e.*, 2001. *Cooey*, 479 F.3d at 422.

The *Cooey* panel decision presents yet another unusual twist in a case that has seen a notable amount of curious developments. That twist is the lack of clarity as to what effect the panel opinion has in this litigation.

Another Sixth Circuit panel referenced the *Cooey* panel decision in the recent case of *Workman v. Bredesen*, ___ F.3d ___, 2007 WL 1311330 (6th Cir. May 7, 2007). The dissent in that case cautioned against applying *Cooey* because "it [wa]s not yet a final judgment owing to the pendency of a petition for rehearing en banc." *Workman*, 2007 WL 1311330, at * n.1 (Cole, J., dissenting). This rationale applied to this Court's not applying *Cooey* to Clarence Carter.

When this Court was addressing intervenor Carter's motion for injunctive relief to stay his scheduled July 2007 execution, the Sixth Circuit had still not yet ruled on a March 13, 2007

13

request for a rehearing and suggestion for rehearing *en banc* of the panel decision.  Accordingly, the appellate court had not yet issued its mandate in the case.  *See* Fed. R. App. P. 41(d)(1) ("The timely filing of a . . . petition for rehearing en banc . . . stays the mandate until disposition of the petition or motion, unless the court orders otherwise.").  Contrary to Defendants' repeated assertions to the contrary, the March 2, 2007 appellate opinion was therefore of no effect in this case at that time.  *See 5* Am. Jur. 2d *Appellate Review* § 776 (2d ed. 2002) ("until the mandate is issued, the lower court order remains in effect, even if vacated on appeal").  This Court therefore proceeded to apply its interpretation of the law that remained and remains in effect until the Sixth Circuit's mandate issues.

The day after this Court discussed the absence of a Cooey mandate and granted Carter a preliminary injunction (Doc. # 197), the Sixth Circuit denied *en banc* consideration (Doc. # 198). The mandate still did not issue, however, because on June 12, 2007 the Sixth Circuit released an Order that read:

> Upon consideration of appellee's motion to stay mandate,
> It is **ORDERED** that the mandate be stayed to allow appellee time to file a petition for a writ of certiorari, and thereafter until the Supreme Court disposes of the case, but shall promptly issue if the petition is not filed within ninety days from the date of final judgment by this court.

(Doc. # 201.)  Thus, the question is whether the March 2, 2007 appellate opinion remains persuasive but non-binding precedent at this time and *in this specific case*.

By staying issuance of the mandate, the Sixth Circuit has told this Court not to enforce *Cooey* in this specific litigation at this time.  Therefore, whatever effect that opinion eventually has on this case, the most dramatic of which would compel the dismissal of most of the plaintiffs, the *Cooey* panel opinion can not control this Court's analysis *in this case* until the

14

mandate issues and *Cooey* becomes controlling precedent.  *See Pizzuto v. Arave*, 280 F.3d 949, 977 (9th Cir. 2002) (Fletcher, J., concurring in part and dissenting in part) (recognizing that "[an] opinion has no precedential value until the mandate issues").

This Court is aware that there is some authority arguably supporting application of the *Cooey* panel decision to various inmates (such as those who file separate § 1983 cases as opposed to intervening here).  For example, there is Ninth Circuit case law recognizing that a panel decision is the law of that Circuit, despite the fact that the appellate court stayed issuance of the mandate in that case pending *certiorari* consideration by the United States Supreme Court. *United States v. Gomez-Lopez*, 62 F.3d 304, 306 (9th Cir. 1995).  There is, however, also an earlier reported Ninth Circuit case explaining that until a mandate issues, an opinion is not yet fixed as settled circuit law.  *United States v. Ruiz*, 935 F.2d 1033, 1037 (9th Cir. 1991).

At least one district judge in this Circuit has applied *Cooey* as controlling precedent.  *See Moore v. Rees*, No. 06-CV-22-KKC, 2007 WL 1035013, at *9 n.5, *20 (E.D. Ky. Mar. 30, 2007).  That case is obviously distinguishable because it was not part of the very litigation in which the mandate was stayed.  When one considers law-of-the-case implications of applying the *Cooey* panel decision *in this case* in the absence of a mandate, adherence to the status quo appears required.

It is admittedly curious to say that *Cooey* currently applies everywhere but in this case. But it would work a curious injustice to deny intervention to most of the six applicants here based on the panel decision when this Court is without the ability to cite the panel decision as authority to dismiss most of those plaintiffs already in this case.

The obvious question is why this Court should not simply apply the rationale of the Sixth

Circuit.  Two judges of the appellate panel issued a rationale disagreeing with this Court, and an insufficient number of judges on the appellate court voted to consider that decision.  Despite the absence of a mandate, it does not take a particularly astute legal scholar to ascertain the probable result of the Sixth Circuit's actions.  But there is no basis to outright ignore the law of the case and credit a decision that is not yet controlling law in this specific litigation and that may or may not become binding law here, based on what the Supreme Court does.  This Court cannot base its decisions on what it is *likely* to become the controlling law in this specific case.  Probabilities are not a cognizable substitution for jurisprudence.  Therefore, in the absence of controlling contrary authority *in this case*, this Court has considered itself, and continues to consider itself, bound by oath to follow what it considers is the law of the case–i.e., this Court's undisturbed prior holding. In the absence of a contrary mandate, it is this Court's prior decision that must govern this litigation.

Of course, it is dicta for this Court to express an opinion on the correctness of the *Cooey* panel decision.  Certainly, once able, this Court will not hesitate to apply the *Cooey* decision here.  Because the Sixth Circuit's stay precludes applying *Cooey* here, however, and because there may be some value in weighing in on that appellate opinion while the parties prepare their certiorari briefing, the Court also cautiously notes that it thinks the *Cooey* panel's statute-of-limitations holding is an incorrect construction of § 1983 as it applies here.  Respectfully, the panel opinion presents an as-yet unimplemented in this case discussion of the law that arguably conflates a distinct § 1983 action with habeas law and impermissibly injects wholly equitable concerns into a strictly law-based statute-of-limitations issue.  The manner in which both occurred often confounds logic.

16

More than one other court has also disagreed with the *Cooey* panel decision.  Although it

constitutes a lengthy quotation, one such judge's cogent analysis warrants reproduction here:

> [T]he *Cooey* majority (and the defendants in this case) made two errors in their
> statute-of-limitations analysis.  First, they based their analysis on the model of a §
> 1983 lawsuit seeking damages for a constitutional violation that took place in the
> past; whereas a method-of-execution lawsuit seeks injunctive relief for an
> allegedly unconstitutional act that has not yet occurred.  Second, the interests they
> identified that might lead a court to conclude that a late-filing plaintiff's suit
> should be time-barred are not the sorts of interests that bear on a
> statute-of-limitations defense; rather, they are equitable interests that should be
> considered along with Jones's motion for a stay of execution.
>
> At the outset, the court notes that *Cooey* remains unsettled law. . . .
>
> As to the legal merits of the majority opinion in *Cooey*, and the
> defendants' statute-of-limitations defense here, this court is of the opinion that
> *Cooey*'s reliance on certain language from *Wallace*, 127 S.Ct. 1091, is misplaced.
> *Cooey* cites statements from *Wallace* that "accrual occurs when the plaintiff has
> complete and present cause of action," and "when the plaintiff can file suit and
> obtain relief."  *Cooey*, 479 F.3d at 416 (quoting *Wallace*, 127 S.Ct. at 1095)
> (internal quotation marks and brackets omitted).  But *Wallace* is in many ways a
> typical § 1983 suit: the plaintiff sued police officers for false arrest, which the
> court analogized for accrual purposes to the common-law tort of false
> imprisonment.  *Wallace*, 127 S.Ct. at 1095.  That is, like most § 1983 suits, the
> plaintiff in *Wallace* sought relief for an unconstitutionally tortious act that had
> already occurred; the question for the court was whether the § 1983 claim accrued
> at the moment of the arrest, when legal process began, or when the arrestee was
> acquitted of the underlying charged offense.  *Id.* at 1095-96.  By contrast, Jones's
> suit presents a somewhat atypical § 1983 claim: Jones is suing to prevent the State
> from committing an allegedly unconstitutionally tortious act in the future.
> Because a suit for injunctive relief to prevent a tortious act from occurring in the
> future is unlike the typical suit that is predicated on a tortious act that has already
> occurred, the court thinks it appropriate to look beyond the language of *Wallace*
> that the majority quotes in *Cooey*.
>
> This is not to say that *Wallace* should be ignored. On the contrary,
> *Wallace* instructs the court that "[a]spects of § 1983 which are not governed by
> reference to state law are governed by federal rules conforming in general to
> common-law tort principles."  *Wallace*, 127 S.Ct. at 1095. And according to the
> Restatement (Second) of Torts, "the statute [of limitations] does not usually begin
> to run until the tort is complete," and a "tort is ordinarily not complete until there
> has been an invasion of a legally protected interest of the plaintiff."  Rest.2d Torts

§ 899 cmt. c.  *See Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir.1984) ("It is generally accepted that a cause of action for a tort accrues when there has been an invasion of the plaintiff's legally protected interest. Ordinarily, this invasion occurs at the time the tortious act is committed." (emphasis added)); 51 Am. Jur.2d Limitation of Actions § 167 ("cause of action in tort accrues when a wrongful act causes a legal injury"); 54 C.J.S. Limitations of Actions § 193 ("A cause of action sounding in tort generally accrues at, and limitations begin to run from, the date on which the act causing the injury is committed . . . .").  In fact, *Wallace* itself states: "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages."  127 S.Ct. at 1097 (quoting 1 C. Corman, Limitation of Actions § 7.4.1, at 526-27 (1991)).

Thus, in a case where the plaintiff seeks an injunction pursuant to 42 U.S.C. § 1983 to prevent an unconstitutionally tortious act from occurring in the future, such a claim cannot be barred by the statute of limitations because the tortious act has not yet occurred and the tort is not yet complete.

In *Cooey*, the majority reasoned that the tortious act could not mark accrual of the claim "because the death-sentenced inmate's claim would not accrue until he was executed, at which time it would also be simultaneously moot."  *Cooey*, 479 F.3d at 418.  But this statement implies, and wrongly assumes, that a plaintiff cannot bring suit before the claim accrues for statute-of-limitations purposes.  Such reasoning is irreconcilable with the broad equitable powers of a federal court under 42 U.S.C. § 1983, which surely include the power to enjoin a defendant from committing an unconstitutional act before such act occurs where such act would cause irreparable harm.  *See Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) ("Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress.  And this Court long ago recognized that federal injunctive relief ... can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights.").  There is simply no reason why, in order for a plaintiff to seek injunctive relief to prevent a future unconstitutional harm from occurring, the statute-of-limitations clock must already be ticking.

Of course, one can always argue that the 'harm' in a case such as this one occurs when the State establishes its execution policy, sentences a capital defendant to death, or when the inmate otherwise becomes aware that his death might be an unconstitutionally painful one.  In fact, at oral arguments, the defendants in this case argued that Jones's knowledge that he was to be executed constituted the 'harm' that caused his claim to accrue.  But such reasoning is problematic for two reasons. First, Jones's lawsuit complains of an Eighth Amendment violation; thus, the 'harm' in Jones's case must be an

18

unconstitutional harm.  Knowledge of a needless risk of a painful death at the
hands of the State does not itself violate the Constitution; only the execution itself
would.  Second, by requiring the courts to identify an event that precedes the
execution as the event by which the claim accrues, the law would create a
hopelessly moving target that is difficult to define non-arbitrarily: Does the claim
accrue when the conviction becomes final?  At the end of habeas review?  When
the execution date is set?  When (and if) the State alters its execution protocol?
There is no rhyme or reason in choosing among these options precisely because
they are little more than stand-ins for the actual tortious event the court would
otherwise look for in a run-of-the-mill § 1983 case.  In sum, because the
execution itself is the event Jones claims would violate his constitutional rights, it
defies logic, and is contrary to the common law of torts, to conclude that the
statute of limitations has already run on a suit to prevent an unconstitutional act
that has not yet occurred.

       Similarly, the *Cooey* majority risks conflating accrual and ripeness.  The
*Cooey* majority cites a Fifth Circuit case, *Neville v. Johnson*, 440 F.3d 221, 222
(5th Cir. 2006) (per curiam), to demonstrate that it is not too early to mount a
method-of-execution challenge once a conviction has become final upon
completion of direct review.  But this merely proves that method-of-execution
claims are ripe for adjudication at such time.  Whether they must be brought
within two years of such time is a different question.  To be sure, once a claim has
accrued it is necessarily ripe; but the converse, that once a claim is ripe it has
necessarily accrued for statute-of-limitations purposes, need not follow.  Where,
as here, the plaintiff challenges the constitutionality of an event that has not yet
occurred, the claim may be ripe for adjudication without having accrued for
statute-of-limitations purposes.

       This conclusion finds support in the historical and policy reasons behind
statutes of limitations.  *See* Rheingold, Solving Statutes of Limitations Problems,
4 Am.Jur. Trials 441, § 2 ("Since there is some leeway in the interpretation of the
statutes and their application to new issues, the policy or purpose behind the
employment of limitations, with special reference to personal injury actions,
merits consideration.").  Traditionally, the purpose of a statute of limitations was
to protect defendants from "stale actions," where evidence has been lost,
memories have faded, witnesses have perished or are difficult to track down, and
the defendants themselves have moved on with their lives in reliance on the fact
that plaintiffs have decided not to bring their claims.  *See* 51 Am.Jur.2d
Limitation of Actions § 15 ("Protecting potential defendants from stale actions;
lost evidence"); 54 C.J.S. Limitations of Actions § 2 ("Statutes of limitations
ordinarily are regarded as statutes of repose whose purpose is to prevent the
litigation of stale claims.").  None of these policy reasons behind a statute of
limitations applies to a case where the plaintiff's injury has yet to occur.  Nothing
in this case is "stale," because the defendants are still planning on carrying out the

19

complained-of act, and quite soon.

Traditionally, then, the farther away in time from the tortious act, the staler the claim and the greater the defendants' interest in a statute of limitations barring it.  But in this case, the defendants urge that the statute of limitations take effect as we move closer in time to the complained-of act.  In light of the historical and policy reasons behind statutes of limitations, the defendants' approach makes little sense.

To be sure, States do have a "significant interest in meting out a sentence of death in a timely fashion."  *Nelson v. Campbell*, 541 U.S. 637, 644, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004).  And plaintiffs' interests in pursuing their claims are severely diminished when they have slept on their rights either inexcusably or with intent to delay.  *Delta Theatres, Inc. v. Paramount Pictures, Inc.*, 398 F.2d 323, 325 (5th Cir.1968) ("No plaintiff should be permitted to sleep on his rights and harass a defendant with . . . unreasonable delay.").  But these are equitable considerations that must be considered by a court that is asked to stay a § 1983 plaintiff's scheduled execution.  *Hill I*, 126 S.Ct. at 2104 ("A court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.' " (quoting *Nelson*, 541 U.S. at 650, 124 S.Ct. 2117)); *see also McQuiddy v. Ware*, 20 Wall. 14, 87 U.S. 14, 19, 22 L.Ed. 311 (1873) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights." (emphases added)); 30A C.J.S. Equity § 115 ("Equity aids the vigilant, not those who slumber on their rights.").  These equitable considerations, moreover, are not driven by the policies underlying a statute-of-limitations defense.  *See Speidel v. Henrici*, 120 U.S. 377, 387, 7 S.Ct. 610, 30 L.Ed. 718 (1887) ("Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights, and shows no excuse for his laches in asserting them." (emphasis added)).  Thus, to the extent the defendants in this case seek to assert the statute-of-limitations defense because Jones was dilatory in bringing his claim or because Jones's lawsuit needlessly threatens to interfere with his scheduled execution, these interests can be vindicated when the court takes up Jones's motion for a stay of execution; indeed, they should not be considered until that time.

In fact, it appears the *Cooey* majority's statute-of-limitations analysis is largely driven by equitable considerations.  In concluding that a method-of-execution claim accrues when a prisoner's conviction becomes final on direct review, the majority reasons that a later accrual date will interfere with the "vital yet delicate balance between state and federal relations," *Cooey*, 479 F.3d at 419, the State's interest in timely executions, *id.*, and Congress's intent, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "to advance the doctrines of comity, finality, and federalism," *id.* at 420 (quoting

*Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435. 436 (2000) (brackets omitted)).  But these considerations, while legitimate, are wholly equitable in nature, and arise independent of the statute of limitations.  They should be taken into consideration, and can be vindicated, when, for example, the court is called upon to enter a stay of execution so as to allow the plaintiff's § 1983 suit to proceed.  These equitable considerations would also come into play in the context of a laches defense, where the court must consider such factors as the plaintiff's delay in bringing suit, whether such delay was excusable, and whether such delay prejudices the defendant.  *See* 30A C.J.S. Equity § 131; 27A Am.Jur.2d Equity § 141; *see also, e.g., Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir.2000) ("The equitable doctrine of laches will bar a claim when three elements are present: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." (internal quotation marks omitted)).

In sum, the *Cooey* majority, and the defendants in this case, misapprehend the statute of limitations as it applies to a § 1983 case such as this one.  First, they err in concluding that the statute of limitations can run on a claim that, rather than seeking relief for an unconstitutional act that has already occurred, seeks injunctive relief to prevent an irreparable constitutional violation from occurring in the future.  Second, although the State has legitimate interests in carrying out timely executions and avoiding litigation where the plaintiff has indulged in inexcusable delay, those interests are not the ones that underlie a statute-of-limitations defense.  Rather, they are equitable interests and in this case can be considered when deciding the plaintiff's motion for a stay of execution.

*Jones v. Allen*, 483 F. Supp. 2d 1142, 1147-151 (M.D. Ala. 2007) (footnotes deleted; emphasis added).  At least one other judge has adopted the *Jones* analysis.  *See Grayson v. Allen*, No. 2:06-cv-1032-WKW, 2007 WL 1491009, at *4 (M.D. Ala. May 21, 2007) (explicitly rejecting *Cooey* statute-of-limitations analysis in favor of *Jones* analysis).

The Court is cognizant of the foregoing critiques of the *Cooey* panel opinion.  Nothing in that panel opinion altered this Court's opinion of what a correct statement of the law should be.  This Court again notes, however, that once the appellate mandate issues, the Court is absolutely bound to follow the then-controlling panel decision.  Until then, this Court must adhere to what it thinks the law of the case is, which means the *Cooey* decision does not defeat intervention here.

21

**II.  Conclusion**

For the foregoing reasons, the Court **DENIES AS MOOT** the motions for expedited rulings (Docs. # 199, 202) and **GRANTS** the motions to intervene (Docs. # 164, 169, 180, 181, 185, 188).  The Clerk shall therefore detach the proffered complaints of each of the six new intervenors and file said pleadings on the docket.

**IT IS SO ORDERED.**

        /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE