IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD COOEY**, et al., | ) | Case Number: 2:04-CV-1156 |
| | ) | |
| Plaintiff, | ) | Judge Gregory L. Frost |
| | ) | |
| | ) | Magistrate Judge Abel |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | **EMERGENCY MOTION OF** |
| | ) | **INTERVENOR-PLAINTIFF ROMELL** |
| | ) | **BROOM FOR A PRELIMINARY** |
| | ) | **INJUNCTION, OR, AT THE VERY** |
| | ) | **LEAST, FOR AN ORDER UNDER THE** |
| **ROBERT TAFT, Governor**, et al., | ) | **ALL WRITS ACT STAYING HIS** |
| | ) | **EXECUTION BY DEFENDANTS AND** |
| | ) | **THE STATE OF OHIO** |
| Defendants. | ) | |
| | ) | **(Death Penalty Case with Execution Date** |
| | ) | **of October 18, 2007)** |

Romell Broom, by and through his undersigned counsel and pursuant to Rule 65(a) of the

Federal Rules of Civil Procedure, hereby moves this Honorable Court for a preliminary injunction

that prevents defendants from executing Broom using the protocol described in Broom's intervenor

complaint before the merits of his pending civil rights complaint are fully adjudicated. Broom did

**<u>not</u>** have an execution date when he sought to intervene in these proceedings on April 25, 2007.  He

does now because, on June 6, 2007, the Ohio Supreme Court, at the State's request and even though

provided with notice of Broom's motion to intervene in this case, scheduled Broom's execution by

lethal injection for October 18, 2007.

Among other reasons supporting his motion for a preliminary injunction, Broom notes that

the Sixth Circuit: (1) on December 1, 2006, granted a stay of execution to plaintiff-intervenor Jerome Henderson, and (2) on March 19, 2007, refused to lift a preliminary injunction that stayed the execution of plaintiff-intervenor Kenneth Biros, thereby preventing the State of Ohio from executing Henderson and Biros so that they could participate in these §1983 proceedings. Also, on May 31, 2007, this Court granted a preliminary injunction to plaintiff-intervenor Clarence Carter, barring his execution that had been scheduled for July 10, 2007. Broom is similarly situated to these three intervenors in all material respects relevant to their respective participation in this §1983 action. Because their executions have all been enjoined, so should his.

At the very least, and certainly in the event this Court declines to grant a preliminary injunction under Rule 65(a) as requested herein, Broom requests that this Court, pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651(a), and the Anti Injunction Act, 28 U.S.C. §2283, issue an order in aid and preservation of its jurisdiction in this §1983 action prohibiting the defendants and the State of Ohio, and their and its agents, from proceeding with Broom's execution by lethal injection that was sought by the State of Ohio, and was scheduled by the Ohio Supreme Court for October 18, 2007, in clear disregard of:

> **(1)** this Court's pre-existing and **prior** jurisdiction over Broom and the other intervenor-plaintiffs and their constitutional challenges to the very lethal injection protocol the State plans to use in Broom's execution, and

> **(2)** this Court's multiple orders recognizing "the growing body of evidence calling Ohio's lethal injection protocol increasingly into question" and the "unacceptable and unnecessary risk that [Ohio inmates executed by lethal injection under the Ohio protocol] could suffer unnecessary and excruciating pain while being executed in violation of [their] Eighth Amendment right not to be subjected to cruel and unusual punishment."

See, e.g., Docket No. 45 (Granting Hill a Preliminary Injunction) at 6, 8-9; Docket No. 92 (Granting Lundgren a Preliminary Injunction) at 9, 11-12; Docket No. 151 (Granting Biros a Preliminary

Injunction) at 7, 8-9. The requested order under the All Writs Act is a more limited one: the order should prohibit the defendants and the State of Ohio, and their and its agents, from proceeding with Broom's execution until such time as discovery in this case has been completed and the record has been sufficiently developed for the Court to address, in a deliberative manner and fully informed by the relevant facts and legal authorities, the merits of Broom's serious Eighth Amendment challenges to the State's current lethal injection protocol as such merits are presented in motions for preliminary and/or permanent injunctions pursuant to whatever reasonable schedule this Court might set.

Because this more limited order is sought under the All Writs Act, and the order is necessary to preserve this Court's jurisdiction over a matter properly before it and to preserve the integrity of these proceedings in the face of the State's efforts to sabotage them by executing as many potential plaintiffs as possible before the subject protocol can be properly tested in this litigation, ***there is no requirement for the Court to evaluate the four factors applicable to traditional injunctions***. See, e.g., Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1100 (11th Cir. 2004)("The requirements for a preliminary injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.").

The reasons in support of this motion are more fully set forth in the attached Memorandum in Support which is fully incorporated herein.

Respectfully Submitted,


/s/ Timothy F. Sweeney
Timothy F. Sweeney, Esq. (0040027)
LAW OFFICE OF TIMOTHY FARRELL SWEENEY
The 820 Building, Suite 430
820 West Superior Ave.
Cleveland, Ohio   44113-1800
(216) 241-5003
(216) 241-3138 (fax)
Tim@timsweeneylaw.com

S. Adele Shank, Esq. (0022148)
LAW OFFICE OF S. ADELE SHANK
3380 Tremont Road, 2nd Floor
Columbus, Ohio   43221-2112

Counsel for Romell Broom

## BROOM'S MEMORANDUM IN SUPPORT

## I.  FACTUAL BACKGROUND

Romell Broom is on death row at the Ohio State Penitentiary pursuant to a judgment of conviction dated October 16, 1985, issued by the Cuyahoga County Court of Common Pleas.

**A. Broom's Habeas Proceedings Were Pending From June 21, 1999 through April 16, 2007**

For all times from June 21, 1999 through April 16, 2007, Broom has been pursuing a writ of habeas corpus under 28 U.S.C. §2254, challenging his conviction and death sentence as violative of the U.S. Constitution in numerous respects.

By order dated August 28, 2002, the U.S. District Court for the Northern District of Ohio denied Broom's habeas petition in its entirety. Broom v. Mitchell, Case No. 99-cv-0030, Memo. of Opinion and Order (N.D. Ohio Aug. 18, 2002).

On March 17, 2006, the Sixth Circuit affirmed. Broom v. Mitchell, 441 F.3d 392 (6th Cir. 2006). A timely petition for rehearing and suggestion for rehearing *en banc* was denied by the Sixth Circuit on August 9, 2006.

On February 26, 2007, the U.S. Supreme Court denied Broom's Petition for a Writ of Certiorari. Broom v. Mitchell, 127 S. Ct. 1376 (2007). An application for rehearing was denied on April 16, 2007. Broom v. Mitchell, 2007 U.S. LEXIS 4330 (April 16, 2007).

**B.  Broom Timely Exhausted Prison Administrative Remedies**

As his execution became imminent, Broom timely presented his grievance to prison officials in which he challenged the State of Ohio's protocol for conducting execution by lethal injection. That protocol was adopted by the defendants on or about **July 10, 2006**, at a time when Broom's petition for rehearing and rehearing *en banc* concerning his habeas petition was still pending in the Sixth Circuit. (Docket No. 207 (Broom's Intervenor Complaint), Exhibit 6).

Broom filed his grievance on March 1, 2007. (Id., Exhibit 1). Broom filed his grievance directly with the DRC Office of the Chief Inspector, in Columbus, Ohio, the exhaustion procedure recognized by this Court in an Order dated September 20, 2006. See Docket No. 73. A copy of Broom's grievance is attached to his Intervenor Complaint (Docket No. 207) as Exhibit 1.

Broom's grievance was designated as CI-03-07-00015 and was received by Chief Inspector Gary R. Croft on March 5, 2007. See Docket No. 207 (Broom's Intervenor Complaint) at Exhibit 2. The Chief Inspector represented to Broom that a ruling on the grievance would be made within 30 days, or by April 4, 2007. (Id.).

Instead of Broom receiving a ruling on his grievance on April 4, 2007, the State of Ohio, on that date, filed a motion with the Ohio Supreme Court asking that Court to set Broom's execution date. See Docket No. 207 (Broom's Intervenor Complaint) at Exhibit 5. The undersigned counsel were not served with a copy of the State's motion, by regular mail or in any form.[1]

On or about April 16, 2007, the DRC Chief Inspector requested more time (without specifying any amount of time) to investigate and review Broom's grievance. See Docket No. 207 (Broom's Intervenor Complaint) at Exhibit 3). Pursuant to OAC 5120-9-31(L), the Chief Inspector may only have more than 30 days to grant or deny the grievance for *good cause shown*. No such showing has been made in this case.

On April 17, 2007, the Chief Inspector issued his decision denying Broom's grievance in its entirety. A copy of the denial is attached as Exhibit 4 to Broom's Intervenor Complaint (Docket No. 207).

_____

[1]Broom's counsel became aware of the existence of the State's motion on Tuesday April 17, 2007, only by virtue of their periodic review of the Ohio Supreme Court's on-line docket.

**C.  Broom Timely Moved to Intervene in this Action**.

After he received the Chief Inspector's denial of the grievance, Broom, on April 25, 2007, promptly moved to intervene in this action. (Docket No. 181).  His motion was thus filed some nine (9) days after the U.S. Supreme Court, on April 16, 2007, denied Broom's application for rehearing as to the denial of his petition for a writ of certiorari in the habeas case.

**D.  Broom Notified the Ohio Supreme Court of His Request to Intervene in this Action**

Having learned that the State had, surreptitiously it appears, sought to secure his execution date, Broom on April 27, 2007, notified the Ohio Supreme Court of his intention to intervene in this action and of his filing in this Court, on April 25, 2007, of his motion to intervene.

In his filing, Broom asked the Ohio Supreme Court to refrain from setting an execution date and, instead, to wait to see if Broom's motion to intervene was granted or not. Broom requested that, in the event the motion to intervene was granted by this Court, the Ohio Supreme Court should not set an execution date until the §1983 lethal injection litigation was resolved by final judgment or settlement. A copy of Broom's  Notice of His Application to Intervene in Federal Court Action and His Request That this Court Hold in Abeyance the State's Motion to Set His Execution Date, as filed in the Ohio Supreme Court on April 27, 2007 (absent exhibits), is attached hereto as Exhibit 1.

**E.  On June 6, 2007, the Ohio Supreme Court Set Broom's Execution for October 18, 2007**

On June 6, 2007, the Ohio Supreme Court granted the State's motion to set an execution date for Broom, with the date being October 18, 2007. (Exhibit 2 hereto).

In setting an execution date despite having first been informed that Broom had sought to intervene as a plaintiff in this long-pending federal action challenging the State's lethal injection protocol under the U.S. Constitution, the Ohio Supreme Court has interfered with this Court's jurisdiction over this important litigation, has frustrated these proceedings, and has disrupted the

orderly resolution of this action. The Ohio Supreme Court's order afforded no respect to this Court's **multiple** prior orders recognizing: **(1)** that intervention in this action by inmates similarly situated to Broom in relevant respects was made in an expeditious and timely manner[2]; **(2)** that such inmates have a significant interest in the adjudication of this lawsuit[3]; **(3)** that these significant interests "cannot adequately be protected by the other plaintiffs because of the time-sensitive nature of [their] claims and the independent schedule [such inmates] face[]"[4]; and **(4)** that intervention "will facilitate the expeditious resolution of the rights of the original parties."[5]

The Ohio Supreme Court's order also failed to give any credence to this Court's **multiple** prior orders recognizing "the growing body of evidence calling Ohio's lethal injection protocol increasingly into question" and the "unacceptable and unnecessary risk that [Ohio inmates executed by lethal injection under the Ohio protocol] could suffer unnecessary and excruciating pain while being executed in violation of [their] Eighth Amendment right not to be subjected to cruel and

---

[2]See, e.g., Docket No. 35 (Hill); Docket No. 54 (Batson); Docket No. 54 (Tyler); Docket No. 92 (Lundgren); Docket No. 124 (Henderson); Docket No. 126 (Biros); Docket No. 137 (Spirko). See also Docket No. 160 (Carter) at 1-2 ("Because the Court decides, as it has with respect to every other motion to intervene that has been filed in this case, that Carter has demonstrated that permissive intervention is warranted, it is unnecessary for the Court to determine whether Carter has demonstrated that he is entitled to intervention of right under Fed. R. Civ. P. 24(a)(2)."); Docket No. 162 (Diar) at 1-2 (same).

[3]See, e.g., Docket No. 35 (Hill) at 2-3; Docket No. 54 (Batson) at 1-2; Docket No. 54 (Tyler) at 1-2; Docket No. 124 (Henderson) at 8-9; Docket No. 126 (Biros) a 3-4; Docket No. 137 (Spirko) at 3-4, 6. See also Docket No. 160 (Carter) at 1-2; Docket No. 162 (Diar) at 1-2.

[4]See, e.g., Docket No. 124 (Henderson) at 10-11; Docket No. 126 (Biros) at 7; Docket No. 137 (Spirko) at 6-7. See also Docket No. 35 (Hill) at 2-3; Docket No. 54 (Batson) at 2; Docket No. 54 (Tyler) at 2; Docket No. 160 (Carter) at 1-2; Docket No. 162 (Diar) at 1-2.

[5]See, e.g., Docket No. 92 (Lundgren) at 5; Docket No. 124 (Henderson) at 9; Docket No. 126 (Biros) at 5; Docket No. 137 (Spirko) at 5. See also Docket No. 35 (Hill) at 2-3; Docket No. 54 (Batson) at 2; Docket No. 54 (Tyler) at 2; Docket No. 160 (Carter) at 1-2; Docket No. 162 (Diar) at 1-2.

unusual punishment."[6]

### F.  This Court Permitted Broom's Intervention on June 25, 2007

By order dated June 25, 2007, this Court granted Broom's motion to intervene in this action (Docket No. 203 (Order)). This action permitting Broom's intervention is fully consistent with the approach this Court has taken with every other previous death row inmate who had sought intervention after exhausting (or having been deemed to have exhausted) his/her administrative remedies.[7]

Pursuant to this Court's order of June 25, 2007, the Clerk filed Broom's intervenor complaint that same day. (Docket No. 207).

## II.  LEGAL ARGUMENT

### A. Broom is Entitled to a Preliminary Injunction under Rule 65(a) of the Federal Rules of Civil Procedure.

Broom is entitled to a preliminary injunction now that prevents defendants from executing Broom, using the protocol described in Broom's intervenor complaint, before the merits of his pending civil rights complaint are fully adjudicated.

In determining whether to exercise its discretion to issue a preliminary injunction under Rule 65 of the Federal Rules, a federal court balances four factors: (1) whether the applicant has demonstrated a strong likelihood of success on the merits; (2) whether the applicant will be

---

[6]See, e.g., Docket No. 45 (Granting Hill a Preliminary Injunction) at 6, 8-9; Docket No. 92 (Granting Lundgren a Preliminary Injunction) at 9, 11-12; Docket No. 151 (Granting Biros a Preliminary Injunction) at 7, 8-9; Docket No. 197 (Granting Carter a Preliminary Injunction) at 5, 7, 9-10. See also Docket No. 124 (Denying Henderson a Preliminary Injunction) at 15; Docket No. 137 (Denying Spirko a Preliminary Injunction) at 13.

[7]See, e.g., Docket No. 35 (Hill); Docket No. 54 (Batson); Docket No. 54 (Tyler); Docket No. 92 (Lundgren); Docket No. 124 (Henderson); Docket No. 126 (Biros); Docket No. 137 (Spirko); Docket No. 160 (Carter); Docket No. 162 (Diar).

irreparably injured absent an injunction; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction. See, e.g., Vittitow v. City of Upper Arlington, 43 F.23 1100, 1108-09 (6th Cir. 1995); McPherson v. Mich. High Sch. Athletic Ass'n, 119 F.3d 453, 459 (6th Cir. 1997) (en banc).

These four factors are to be balanced and are not prerequisites that must be met. Accordingly, the degree of likelihood of success required to support a preliminary injunction may depend on the strength of the other factors. See, e.g., Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994); In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985). Broom easily meets all four factors.

### 1. Broom has a strong likelihood of success on the merits.

The Eighth Amendment proscribes the wanton infliction of pain. In carrying out Broom's execution, the defendants must comply with the Eighth Amendment. They cannot subject him to a procedure that presents a substantial risk that he will be tortured to death. Whether a particular execution procedure will inflict unnecessary pain is fundamentally an inquiry regarding whether the inmate is "subject to an *unnecessary risk* of unconstitutional pain or suffering." Cooper v. Rimmer, 379 F.3d 1029, 1033 (9th Cir. 2006) (emphasis added). Broom has shown the likelihood of that risk here.

Developments across the nation have demonstrated that the risk of wanton pain is a real one when lethal injection is administered using the three-drug cocktail that is used in Ohio. This Court has correctly cited these developments in granting preliminary injunctions to plaintiff-intervenors Jeffery Hill, Kenneth Biros, and Clarence Carter. See, e.g., **Jeffrey Hill** (Docket No. 45 at 6)(recognizing "the mounting evidence calling Ohio's lethal injection protocol, and the same or similar protocols employed by other states, increasingly into question."); **Kenneth Biros** (Docket No. 151 at 7)("given the evidence that Jeffrey Hill first produced and that is now part of the record,

as well as additional, more recent anecdotal evidence that Biros has produced regarding the suspension of executions in Florida (Doc. # 149-9) and a finding by the Northern District of California that California's three-drug protocol violates the Eighth Amendment, (Doc. # 149-10), the Court concludes that Biros at the very least has demonstrated a *stronger* likelihood of success on the merits than some of the plaintiffs who preceded him."); and **<u>Clarence Carter</u>** (Docket No. 197 at 4-5)("given the evidence that Jeffrey Hill first produced and which is now part of the record; additional anecdotal evidence that Plaintiff-Intervenor Biros produced regarding the suspension of executions in Florida (Doc. # 149-9) and a finding by the Northern District of California that California's three-drug protocol violates the Eighth Amendment (Doc. # 149-10); and additional, more recent evidence that Carter has produced in the form of a research article published on April 24, 2007 raising questions about the efficacy of the three-drug protocol (Doc. # 187-2), the Court is satisfied that Carter has demonstrated at least as strong a likelihood of success on the merits as Biros before him.").

Broom is similarly situated to these intervenors in all respects relevant to his participation in this action.  He is also similarly situated to Jerome Henderson, whose execution was stayed by the Sixth Circuit by an order entered on December 1, 2006. Because these similarly situated intervenors were all found to have demonstrated the requisite likelihood of success necessary for the injunctive relief they sought, Broom too should be held to have made the requisite showing. Due process requires that these like cases be treated alike.

Indeed, the evidence that has accumulated concerning the lethal injection protocol since the orders in Hill, Henderson, Biros, and Carter has only served to <u>strengthen</u> Broom's likelihood of success. For example, on May 24, 2007, the State of Ohio botched the execution of Christopher Newton.  It was reported that the prison execution technicians spent some 90-minutes searching for

suitable veins into which to inject Mr. Newton with the three drug cocktail. Then, Newton took some 16 minutes to die from the chemicals, twice as long as the average Ohio lethal injection execution. (<u>See</u> Associated Press, "Execution Took 16 Minutes: Inmate Seen to Convulse, Twitch; Fuel for Debate," *Cincinnati Enquirer*, May 26, 2007, attached hereto as Exhibit 3; Alan Johnson, "Ohio Draws Criticism for Drawn-Out Executions," *Columbus Dispatch*, May 26, 2007, attached hereto as Exhibit 4.).

The problems with Newton's execution came just barely one year after Ohio botched the execution of Joseph Clark. Recall that Clark was executed on May 2, 2006. The process took some 90 minutes before he died, as, there too, the execution technicians struggled with the required intravenous insertions necessary to enable the chemicals to flow into the inmate's bloodstream. (<u>See,</u> <u>e.g.</u>, Docket No. 56, Complaint of Arthur Tyler, ¶¶ 17-18 and Exhibit A). It was because of the Clark fiasco that the State revised its execution protocol last year, supposedly to prevent a repeat of the problems that plagued the Clark execution. Those revised procedures, adopted effective July 10, 2006, are the very procedures that Broom is challenging in his intervenor complaint. (<u>See</u> Docket No. 207, Exhibit 6).

Two things are now clear about Ohio's new procedures: (1) they still don't work; and (2) those responsible for writing the procedures – <u>i.e.</u>, the defendants in this case – can't be counted on to make Ohio's lethal injection process comply with the U.S. Constitution. Think about it: Ohio has had <u>six</u> (6) executions since May 2, 2006 – Joseph Clark, Rocky Barton, Darrell Ferguson, Jeffrey Lundgren, James Filiaggi, and Christopher Newton. Fully one third of those executions – **33%** – have been plagued by glaring errors, <u>i.e.</u>, errors that were so obvious the entire world now knows about them. And, these errors do not even take into account the constitutionally unacceptable probability that some or all of these men were tortured to death by one or more of the three drugs,

yet such men were unable to manifest their horrific pain in any observable way because they were completely paralyzed by the pancuronium bromide specified in the unconstitutional protocol used by these defendants. The very purpose of the pancuronium bromide – a paralytic agent – is to **paralyze** the inmate so that he is no longer capable of speaking, gesturing, or shouting out about the intense pain the defendants know, or should know, the inmate could be experiencing during the execution, thereby making it falsely appear – to witnesses, to the executioners, and to the public – that the inmate's death was a "painless" one even if, in realty, the inmate was suffering the most agonizing pain imaginable. The defendants are more concerned about the **appearance** of a painless death than they are about whether the cocktail they specify tortures these men.

That the paralytic agent may have concealed the real fate of these six men (and that of the other 20 men[8] executed in Ohio via the unconstitutional three-drug cocktail) has been confirmed by several sources, most recently by the study cited by this Court in granting a preliminary injunction to Clarence Carter. See Docket No. 197 at 6, referencing T.A. Zimmers, J. Sheldon, D.A. Lubarsky, et al., Lethal Injection for Execution: Chemical Asphyxiation?, PLoS Med, Vol. 4, Issue 4, e156 (April 2007)(available at: http://medicine.plosjournals.org (last visited June 29, 2007))(A copy of the study is attached hereto as Exhibit 5). See also Morales v. Tilton, 465 F. Supp. 2d 972 (N.D. Cal. 2006).

But Ohio is not the only State where problems continue to plague lethal injection, further demonstrating Broom's likelihood of success. For example, on June 26, 2007, the State of Georgia executed John Hightower, but it took some 40 minutes for the nurse to find a suitable vein. After the

---

[8]Wilford Berry, Jay D. Scott, John Byrd, Alton Coleman, Robert Buell, Richard Fox, David Brewer, Ernest Martin, Lewis Williams, John Glenn Roe, William Wickline, William Zuern, Stephen Vrabel, Scott Mink, Adremy Dennis, William Smith, Herman Ashworth, William Williams, John Hicks, and Glenn Benner.

drugs were finally injected, "[Hightower] said nothing, then after about **15 minutes** blinked rapidly for some time. He yawned as his chest heaved and then became motionless." Lateef Mungin, "Triple Murderer Executed After 40-Minute Search for Vein," *Atlanta Journal Constitution*, June 27, 2007 (copy attached hereto as Exhibit 6).

The defendants would prefer not to focus on any of these other states, arguing that evidence of wanton infliction of pain may not be exported across state lines. They are clearly wrong. It is extremely relevant and probative in evaluating the risk of wanton infliction of pain for the district court to consider the experiences of any and all practitioners of the very same means of lethal injection that is used in Ohio, regardless of where those practitioners may reside. Lethal injection as administered using the three drug cocktail is broken and defective. See, e.g., Morales v. Tilton, 465 F. Supp. 2d at 974 ("Defendants' implementation of lethal injection is broken, but it can be fixed."); Nooner v. Norris, No. 06-00110 (E.D. Ark. June 26, 2006)(granting preliminary injunction and prohibiting State of Arkansas from executing inmate using the state's lethal injection procedure).

The evidence of its defects is found in many places, including in Arkansas, California, Florida, North Carolina, Georgia, Missouri[9] and Maryland.[10]  And in Ohio.

To the extent the merits of Broom's claims concern whether his §1983 claims have been presented in a timely manner, he is substantially likely to prevail here too. This is **not** a case in which Broom had dilly-dallied in asserting his claims challenging the lethal injection protocol. As this

---

[9]Taylor v. Crawford, 2006 U.S. Dist. LEXIS 42949 (W.D. Mo. 2006)("All of these concerns lead the Court to conclude that Missouri's lethal injection procedure subjects condemned inmates to an unnecessary risk that they will be subject to unconstitutional pain and suffering when the lethal injection drugs are administered.").

[10]Evans v. State, 396 Md. 256, 327-50, 914 A.2d 25, 67-81 (2006)(court ordered a halt to executions in Maryland, ruling that procedures for putting prisoners to death were never submitted for the public review required by law).

Court found in permitting Broom's intervention, and as the record fully demonstrates, Broom acted promptly and expeditiously. His is not a "last minute" challenge. The defendants did not even adopt the specific lethal injection protocol Broom has challenged in his intervenor complaint until July **2006**. (Docket No. 207, Intervenor Complaint at ¶30). At that time, Broom was still litigating his habeas petition in the Sixth Circuit. And, even had he filed his request to intervene on the very same day the Sixth Court panel first rejected his habeas appeal, i.e., March 17, 2006, he would today be in **exactly** the same position as he is now with having filed his motion to intervene on April 25, 2007: i.e., he would be waiting to conduct the full discovery necessary to get to a trial on the merits of the claims, a wait that has been necessitated **solely** by the actions of these **defendants** in choosing to launch, on March 30, 2005, an interlocutory appeal from the order of the district court dated March 28, 2005, denying the defendants' motion to dismiss as to Richard Cooey.

When the defendants argue, therefore, that Broom had some obligation to raise his lethal injection claims earlier, or more diligently, than he did, they are clearly mistaken. Broom has pursued his §1983 lethal injection challenge in as diligent and timely a manner as it would ever be possible to do.

Accordingly, this Court should conclude that Broom has a strong likelihood of success on the merits.

## 2. Broom Would Suffer Irreparable Injury Without the Injunction.

Given the factual development that has occurred in other cases concerning the actual administration of the three-drug cocktail, Broom could easily suffer an agonizing and torturous death without anyone knowing. As this Court concluded in its order regarding Jeffrey Hill: "Given the evidence that has begun to emerge calling this and other conclusions by Dr. Dershwitz into question,

the Court is persuaded that there is an unacceptable and unnecessary risk that Plaintiff Hill will be irreparably harmed absent the injunction, i.e., that Plaintiff Hill could suffer unnecessary and excruciating pain while being executed in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment." Docket No. 45 at 9.

### 3.  Issuing an Injunction Would Not Cause Substantial Harm to Others.

No one will be harmed by delaying Broom's execution. Indeed, as already noted, injunctions have been granted to several inmates similarly situated to Broom in relevant respects: Jeffrey Hill, Jerome Henderson, Ken Biros, Clarence Carter. Because these intervenors have been allowed to pursue the lethal injection challenge without fear of being executed before the conclusion of litigation, Romell Broom should be afforded the same right.

### 4.  The Public Interest Would Be Served By Issuing the Injunction.

The public interest is served by enforcing constitutional rights and by a prompt and accurate resolution of these rights. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment in violation of our Constitution. Hope v. Pelzer, 536 U.S. 730, 737 (2002). No one has a valid interest in seeing an unconstitutional execution. The public interest would be served by issuing an injunction to stay Broom's execution so that the issues pertaining to the lethal injection protocol in Ohio can be fully resolved before he is executed.

### 5.  The Statute of Limitations Defense is Not Properly an Issue at this Point in the Case.

Any reliance on the statute of limitations (SOL) as a basis for denying a preliminary injunction is unfounded.

First, as this Court recognized in allowing Broom's intervention, the Sixth Circuit's panel

decision in Cooey v. Strickland, entered on March 2, 2007, is not final. The Sixth Circuit has stayed the mandate in that case pending the filing of a petition for a writ of certiorari in the U.S. Supreme Court. So long as the mandate is stayed, the Sixth Circuit's appellate jurisdiction remains in place and the judgment of the Cooey panel is not yet returned to this Court for enforcement. Because the Sixth Circuit's mandate has thus been stayed, it would be premature and inappropriate for this Court to apply **any** of the Cooey SOL rulings to Broom's case.

Second, the SOL is an affirmative defense. The burden of proof for such an affirmative defense is on the defendants, not on Broom. The proper time for the defendants to raise that defense, should it still be a viable defense when that time arrives, is when they are required to file a responsive pleading to Broom's intervenor complaint. It is not proper to litigate the SOL issue now before it has even been properly raised by defendants as an affirmative defense.

Third, there are factual issues that will need to be developed and addressed in the event the defendants raise a proper SOL defense to Broom's intervenor complaint. For example, Broom may be entitled to invoke the continuing violation doctrine to avoid any SOL defense that may be raised as to him. The continuing violation doctrine provides that the SOL will not bar a suit so long as the suit was brought within the statutory period as measured against the most recent violation. See, e.g., Draper v. Coeur Rochester, 147 F.3d 1104, 1108 (9th Cir. 1998)(the continuing violation doctrine "will render a complaint timely as to a course of conduct only if the complaint is timely as to the most recent occurrence"); Davis v. Lucent Techs., Inc., 251 F.3d 227, 236 (1st Cir. 2001).

This is clearly a case where defendants' actions and inactions constitute a continuing violation of the inmates' constitutional rights. The challenged three-drug cocktail and the other challenged aspects of the lethal injection protocol are all part of a long-standing and demonstrable policy manifesting the defendants' deliberate indifference to the constitutional rights of inmates like

-13-

Broom. **The legal violation continues anew every single day that the defendants' deliberate indifference allows the same deficient protocol to remain in place.** The violation will only end when the defendants start to care about the impact of their dangerous protocol by implementing totally new procedures (and such procedures **do** exist) that will not subject inmates to being tortured to death in violation of the Eighth Amendment. Until the defendants change their ways, and reform from their indifference, they will continue to violate Broom's and the other inmates' constitutional rights. Each inmate that comes into the system is subjected to the same unconstitutional protocol and joins the ranks of those whose legal rights are already being violated by defendants every single day the protocol exists. See, e.g., Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968)(discussing the government's continuing violation of a company's rights under the Sherman Act); McNamara v. City of Rittman, 473 F.3d 633, 639-40 (6th Cir. 2007); Trzebuckowski v. City of Cleveland, 319 F.3d 853, 855-58 (6th Cir. 2003); Kuhnle Brothers, Inc. v. County of Geauga, 103 F.3d 516, 522 (6th Cir. 1997)("[a] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment."); McCune v. City of Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988); Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981)("[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.").

There may also be tolling issues applicable to Broom's case. Such issues, too, are often fact intensive. These issues should be permitted to be developed in a deliberative manner. See, e.g., Williams v. Schuller Int'l, Inc., 2002 U.S. App. LEXIS 2071, *9-10 (6th Cir. 2002)("statute-of-limitations issue is simply too fact-intensive to admit of summary disposition"), citing, Huffman v. United States, 82 F.3d 703, 706 (6th Cir. 1996); United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004)("Equitable tolling issues are highly fact-dependent, and . . . the district court is in a better

position to develop the facts and assess their legal significance in the first instance . . . .").

> **B. At the Very Least, This Court Should Stay Broom's Execution Pursuant to its Clear Authority to Do So Under the All Writs Act and the Anti-Injunction Act. Such a Stay Is Necessary in Aid and Preservation of the Court's Jurisdiction in this §1983 Action and to Give Effect to Its Orders.**

The All Writs Act authorizes "[t]he Supreme Court and all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  Courts have read the language of this statute broadly. The statute has been found to authorize the issuance of writs to protect "not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1099 (11th Cir. 2004). See also Adams v. United States, 317 U.S. 269, 273 (1942). Indeed, unless specifically constrained by an act of Congress, the Act authorizes a court to issue writs any time "the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." Adams v. United States, 317 U.S. at 273.

The Anti-Injunction Act serves as a check on the broad authority recognized by the All Writs Act. 28 U.S.C. § 2283. It prohibits federal courts from utilizing that authority to stay proceedings in state court unless the requirements of one of three exceptions are met. Under the Anti-Injunction Act, an injunction halting a state court proceeding is inappropriate, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

"The All Writs Act and the Anti-Injunction Act are closely related, and where an injunction is justified under one of the exception's to the latter a court is generally empowered to grant the injunction under the former." Burr & Forman v. Blair, 2006 U.S. App. LEXIS 29133, *18-19 (11th

Cir. 2006)(citing <u>Olin Corp. v. Ins. Co. of North America</u>, 807 F. Supp. 1143, 1152 (S.D.N.Y. 1992)). Thus, in assessing the propriety of an injunction entered to stop a state court proceeding, the relevant inquiry is whether the injunction qualifies for one of the exceptions to the Anti-Injunction Act.

Among the circumstances in which federal courts may apply the All Writs Act and the Anti-Injunction Act to enjoin a state court proceeding, or some aspect of a state court proceeding, is when an injunction is necessary: (1) to preserve the federal court's jurisdiction, (2) "to protect the integrity or enforceability of existing judgments or orders," and/or (3) to avoid disruption with the orderly resolution of litigation pending before the federal court. <u>See, e.g.</u>, <u>Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281, 295 (1970); <u>Hill v. McDonough</u>, 464 F.3d 1256, 1258-59 (11th Cir. 2006); <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1025 (9th Cir. 1998); <u>Brother Records, Inc. v. Jardine</u>, 432 F.3d 939, 944-45 (9th Cir. 2005); <u>Winkler v. Eli Lilly & Co.</u>, 101 F.3d 1196, 1202 (7th Cir. 1996); <u>In re Lease Oil Antitrust</u>, 48 F. Supp. 2d 699, 704 (S.D. Tex. 1998).

A writ under the All Writs Act may be directed toward not only the immediate parties to a proceeding (such as the defendants in this case), but to "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." <u>United States v. New York Tel. Co.</u>, 434 U.S. 159, 174 (1977). <u>See also</u> <u>Klay v. United Healthgroup, Inc.</u>, 376 F.3d 1092, 1100 (11th Cir. 2004).

Thus, under the All Writs Act as constrained by the Anti-Injunction Act, the federal court may issue such orders as are necessary to enjoin state actors (such as the defendants in this case), who are proceeding under the authority of state court orders, from taking action "which, left

unchecked, would have . . . the practical effect of diminishing the [federal] court's power to bring the [federal] litigation to a natural conclusion." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1102 (11th Cir. 2004). See also Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1261, 1263 (11th Cir. 2005)(Tjoflat, J., dissenting from the denial of rehearing en banc).

Finally, "the requirements for a traditional injunction do not apply to injunctions under the All Writs Act because the historical scope of a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." Klay v. United Healthgroup, Inc., 376 F.3d at 1100-01 (citing numerous cases). See also United States v. New York Tel. Co., 434 U.S. at 174; De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 219 (1945).

At the very least, and even if it denies Broom's motion for a preliminary injunction under Rule 65(a), this Court should issue a limited injunction under the All Writs Act and the Anti-Injunction Act. Such injunction should prohibit the defendants and the State of Ohio, and their and its agents, from proceeding with Broom's execution until such time as discovery in this case has been completed and the record has been sufficiently developed for the Court to address, in a deliberative manner and fully informed by the relevant facts and legal authorities, the merits of Broom's serious Eighth Amendment challenges to the State's current lethal injection protocol. The limited injunction sought under the All Writs Act is warranted by this Court's absolute right to: (1) preserve its jurisdiction, (2) manage this litigation in a prudent and thoughtful way, (3) avoid disruption with the orderly resolution of this litigation, (4) protect the integrity of its orders (including the order permitting Broom to intervene in these proceedings because he has done so in a timely manner and has a substantial stake in them), and (5) ensure the proper administration of justice in this case.

As already established, and as this Court has already found, Broom acted diligently in

-17-

presenting his claims. Important issues of federal constitutional law are involved in this case. This Court has already recognized that those issues are hardly frivolous and, indeed, are substantial and troubling. There is simply no legitimate reason for the parties properly before this Court (**such as Broom**), who have presented their federal constitutional claims in a timely and expeditious manner (**such as Broom**), to have their claims decided on a rushed, fast-track schedule that is dictated **not by this Court** but by the State's insistence on proceeding with executions under the very same lethal injection procedures this Court has found to be so troubling.

In setting an execution date for Broom in the face of this litigation and with notice of Broom's motion to intervene, the Ohio Supreme Court has interfered with this Court's jurisdiction over this litigation, has disrupted its orderly resolution, and has rendered largely ineffective this Court's orders.

If the All Writs Act confers **any** power on Article III judges empowered by the U.S. Constitution to say what the law is on issues of federal constitutional law,[11] it certainly gives such judges the power to prevent a party properly before the court from being executed pursuant to a death warrant issued **after** the federal court took jurisdiction to adjudicate constitutional challenges to the method that will be used to execute him and **after** that federal court has already determined, in multiple orders, that those constitutional challenges present issues on which death row inmates have demonstrated they are likely to succeed. At the very least, the Act gives Article III judges the power to prevent such an execution until the federal court has taken as much time as it needs, in the exercise of its jurisdiction, to fairly and properly deliberate the issues before the court in the interest

---

[11]<u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 177-78 (1803)("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases must of necessity expound and interpret that rule. . . . This is the very essence of judicial duty.").

of justice.

### III.  CONCLUSION

For all of these reasons, and in the interest of justice, Romell Broom respectfully requests that his motion be GRANTED and that this Court grant Broom a preliminary injunction prohibiting the defendants from executing him until this action is finally resolved. At the very least, and certainly in the event a preliminary injunction is denied, the Court should issue a limited injunction under the All Writs Act and the Anti-Injunction Act prohibiting the defendants and the State of Ohio, and their and its agents, from proceeding with Broom's execution until such time as discovery in this case has been completed and the record has been sufficiently developed for the Court to address, in a deliberative manner and fully informed by the relevant facts and legal authorities, the merits of Broom's serious Eighth Amendment challenges to the State's current lethal injection protocol as such merits are presented in motions for preliminary and/or permanent injunctions pursuant to whatever reasonable schedule this Court might set.

Dated: June 29, 2007

Respectfully Submitted,

/s/ Timothy F. Sweeney
Timothy F. Sweeney, Esq. (0040027)
LAW OFFICE OF TIMOTHY FARRELL SWEENEY
The 820 Building, Suite 430
820 West Superior Ave.
Cleveland, Ohio   44113-1800
(216) 241-5003
(216) 241-3138 (fax)
Tim@timsweeneylaw.com

S. Adele Shank, Esq. (0022148)
LAW OFFICE OF S. ADELE SHANK
3380 Tremont Road, 2nd Floor
Columbus, Ohio   43221-2112

Counsel for Romell Broom

-19-

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on June 29, 2007, the foregoing EMERGENCY MOTION OF INTERVENOR-PLAINTIFF ROMELL BROOM FOR A PRELIMINARY INJUNCTION, OR, AT THE VERY LEAST, FOR AN ORDER UNDER THE ALL WRITS ACT STAYING HIS EXECUTION BY DEFENDANTS AND THE STATE OF OHIO, with all exhibits, was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Timothy F. Sweeney
Timothy F. Sweeney, Esq. (0040027)
LAW OFFICE OF TIMOTHY FARRELL SWEENEY