IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD COOEY, et al.,**

    **Plaintiff,**

    v.                                  Case No. 2:04-cv-1156
                                         JUDGE GREGORY L. FROST
**ROBERT TAFT, et al.,**             Magistrate Judge Mark R. Abel

    **Defendants.**

## OPINION AND ORDER

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original plaintiff in a civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio.  This matter is before the Court on the emergency motion of Romell Broom for a preliminary injunction or an order under the All Writs Act staying his execution, scheduled for October 18, 2007.  (Doc. # 212.)  For the reasons that follow, this Court finds the motion well taken.  Thus, it is ORDERED, ADJUDGED, and DECREED that the State of Ohio and any person acting on its behalf are hereby **STAYED** from implementing an order for the execution of Romell Broom issued by any court of the State of Ohio until further Order from this Court.

On June 25, 2007, this Court issued an order granting Plaintiff Romell Broom permission to intervene.  (Doc. # 203.)  On June 6, 2007, at the State's request, the Supreme Court of Ohio set an execution date for Broom of October 18, 2007.  (Doc. # 212-3, at 2.)  Accordingly, Broom filed on June 29, 2007 the instant emergency motion for preliminary injunction, or at the very least for an order under the All Writs Act, to stay his execution.  Also before the Court is the Defendants' memorandum in opposition.  (Doc. # 215.)

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)). The decision of whether to issue a preliminary injunction rests within the discretion of the district court. *See, e.g., N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir. 1989). In determining whether to exercise its discretion to grant a preliminary injunction, a district court must balance the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995)). This Court finds that each factor favors Broom's request for a preliminary injunction, even after recent developments in this case that might, at first blush, suggest that the injunction should not issue.

On December 21, 2006, this Court issued an opinion and order granting Kenneth Biros's emergency motion for a preliminary injunction staying his execution. (Doc. # 151.) The Court incorporates that order by reference and attaches it for convenience. For purposes of the instant order, the most germane point to be taken from the Biros order is the Court's conclusion therein that the law of this case is that this Court should evaluate individually and on a case-by-case basis any motion for a preliminary injunction that comes before it.

Thus, in evaluating Broom's emergency motion for a preliminary injunction, the Court notes first that principles of equity weigh in Broom's favor, insofar as he was diligent in filing his motion to intervene and filing the instant emergency motion for a preliminary injunction. As noted above, this Court issued an order on June 25, 2007 granting Broom's request for permission to intervene in this action. (Doc. # 203.) Pursuant to the reasoning set forth in this Court's March 28, 2005 Opinion and Order (Doc. # 14), the statute of limitations on Broom's § 1983 claim did not begin to run until his execution became imminent (*i.e.*, when the United States Supreme Court declined to review his habeas corpus case or when the time for seeking United States Supreme Court review expired) and when he knew or had reason to know of the facts giving rise to his claim. On March 17, 2006, the Sixth Circuit affirmed the district court's decision denying Broom's habeas corpus petition, *Broom v. Mitchell*, 441 F.3d 392 (6th Cir. 2006), and on August 9, 2006, the Sixth Circuit rejected Broom's petition for a rehearing and suggestion for a rehearing *en banc*. On February 26, 2007, the United States Supreme Court denied Broom's petition for *certiorari*. Broom filed his motion to intervene in this case on April 25, 2007.

As Broom points out, when he filed his motion to intervene on April 25, 2007, he did not have an execution date. However, on June 6, 2007, the Ohio Supreme Court, at the State's request and even though provided with notice of Broom's motion to intervene in this case (Doc. # 212-2), scheduled Broom's execution by lethal injection for October 18, 2007. (Doc. # 212-3, at 1.) Broom filed the instant emergency motion for a preliminary injunction or an order under the All Writs Act, on June 29, 2007. Pursuant to this Court's construction of the statute of limitations, which remains in full force and effect despite the decision by the Sixth Circuit on

3

March 2, 2007 overruling this Court's construction of the statute of limitations for method-of-execution challenges raised under 42 U.S.C. § 1983, Broom proceeded in a timely and diligent manner.

On March 2, 2007, the Sixth Circuit issued a decision holding that the appropriate date for commencement of the limitations period for a § 1983 challenge on Eighth Amendment grounds to a state's execution protocol is upon conclusion of direct review of the death sentence in the state court or the expiration of time for seeking such review, and that the limitations period applicable to the instant action, (in connection with which Plaintiff-Intervenor Broom now seeks an order staying his execution), commenced no later than when the challenged protocol became Ohio's exclusive method of execution, *i.e.*, 2001. *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007). Defendants insist in their memorandum in opposition that the decision compels a finding that Broom engaged in undue delay in bringing his Eighth Amendment challenge, thereby diminishing his right to the equitable remedy of a preliminary injunction staying his execution. (Doc. # 215, at 3-8.) Whatever effect that decision eventually has on this case, the most dramatic of which would compel its dismissal, it does not inform this Court's analysis of whether Broom proceeded in a timely and diligent manner when he filed his motion to intervene and subsequent motion for a preliminary injunction. Given the law that was in effect at all times relevant to Broom's pursuit to intervene in this case, by virtue of the fact that no mandate has issued on the Sixth Circuit's March 2, 2007 decision, this Court must conclude that Broom was timely in filing his motion to intervene in this case.

Returning to the four factors that this Court must evaluate and balance, *see McPherson*, 119 F.3d at 459, given the evidence that Jeffrey Hill first produced and that is now part of the

4

record; additional anecdotal evidence that Plaintiff-Intervenor Biros produced regarding the suspension of executions in Florida (Doc. # 149-9) and a finding by the Northern District of California that California's three-drug protocol violates the Eighth Amendment (Doc. # 149-10); and additional, more recent evidence that Broom has produced in the form of a research article published on April 24, 2007 raising questions about the efficacy of the three-drug protocol (Doc. # 212-6), the Court is satisfied that Broom has demonstrated at least as strong a likelihood of success on the merits as Biros before him. That the Sixth Circuit recently issued a decision overruling this Court's construction of the statute of limitations applicable to Cooey's challenge does not undermine the Court's conclusion on this factor.

The limited record before this Court reflects a growing body of evidence calling the lethal injection protocol like the one Ohio uses increasingly into question. This Court stated unequivocally in its order granting Hill's request for a preliminary injunction that it can not and will not turn a blind eye to the evidence presented in the cases of *Brown v. Beck* in North Carolina and *Morales v. Hickman* in California appearing to contradict the opinion of Dr. Mark Dershwitz that virtually all persons given the dose of sodium thiopental prescribed under Ohio's lethal-injection protocol would be rendered unconscious and would stop breathing within one minute. (Doc. # 45, at 6-9.) This Court reiterated that position when it granted Plaintiff-Intervenor Biros's request for a preliminary injunction, noting additionally that multiple states had, by that point, recently placed executions on hold due to serious concerns about various aspects of their respective lethal injection protocols. (Doc. # 11, at 7 n.5.) Broom has provided a research article published on April 24, 2007 questioning, among other things, whether any reliable medical research ever supported the formation of the three-drug protocol first devised by

5

Oklahoma and then essentially copied by every other state seeking to use lethal injection as a method of execution, whether the administration of the first drug, thiopental, is alone fatal or sufficient to anesthetize the inmate for the duration of the execution, and whether the administration of the third drug, potassium chloride, reliably induces cardiac arrest. (Doc. # 212-6.)

Of course, in determining whether Broom has established a strong likelihood of success on the merits, this Court would be remiss if it did not discuss the Sixth Circuit's aforementioned March 2, 2007 decision overruling this Court's construction of the statute of limitations for method-of-execution challenges raised under 42 U.S.C. § 1983. *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007). Defendants argue in their memorandum in opposition that the Sixth Circuit's decision compels this Court to deny Broom's motion for a preliminary injunction. (Doc. # 215, at 8-9.) Ultimately that decision could require dismissal of this case[1] and that possibility would normally cut against Broom in his effort to demonstrate a strong likelihood of success on the merits. However, this Court is guided, if not bound, by the Sixth Circuit's own decision on March 19, 2007 not to vacate Plaintiff-Intervenor Biros's preliminary injunction in the wake of its March 2, 2007 decision overruling this Court's definition of the statute of limitations and directing this Court to dismiss the case. After the Sixth Circuit issued its March 2, 2007 decision directing the Court to dismiss this case, the State filed a motion asking the Sixth Circuit to vacate Biros's preliminary injunction so that his execution scheduled for March 20, 2007 could proceed. The Sixth Circuit declined, stating that Biros was an intervenor in the case

---

[1] On June 1, 2007, the Sixth Circuit issued an order denying the petition for rehearing and suggestion for rehearing *en banc*. (Doc. # 198.) On June 12, 2007, the Sixth Circuit issued an order staying its mandate to allow the appellee to file a petition for *certiorari* and continuing until the United States Supreme Court disposes of this case. (Doc. # 201.) That being so, the Sixth Circuit has not yet issued its mandate in this case.

6

who had joined in the petition for rehearing with suggestion for rehearing *en banc* that was still pending before the Sixth Circuit and that the State was free to renew its motion to vacate following the Sixth Circuit's resolution of that petition.  (Doc. # 170-4, at 6.)

Guided by the Sixth Circuit's decision in this regard, this Court found on May 31, 2007 that Plaintiff-Intervenor Carter was entitled to the same–namely, the opportunity to continue litigating his Eighth Amendment challenge to Ohio's lethal injection protocol by way of the pending petition for rehearing with suggestion for rehearing *en banc*.[2]  (Doc. # 197.)  The very next day, however, the Sixth Circuit issued its decision denying the petition for rehearing and suggestion for rehearing *en banc*.  (Doc. # 198.)  Although that decision would appear to bolster Defendants' argument that Broom cannot demonstrate a substantial likelihood of success on the merits, two events subsequent to the Sixth Circuit's decision–actually, one event and one non-event–still compel a finding that Broom is entitled the opportunity to continue litigating his Eighth Amendment challenge to Ohio's lethal injection protocol.  First, On June 12, 2007, the Sixth Circuit issued an order staying its mandate to allow the appellee to file a petition for *certiorari* and continuing until the United States Supreme Court disposes of the case.  (Doc. # 201.)  That the Sixth Circuit has not yet issued its mandate in this case and will not do so until such time as the United States Supreme Court disposes of this case conveys to this Court that the status quo reigns.  *See* Doc. # 203 (discussing lack of mandate and law of the case).  Further, to the extent that any argument could be made that the Sixth Circuit's June 1, 2007 decision

---

[2] For the same reason–*i.e.*, the Sixth Circuit's March 19, 2007 decision denying the State's motion to vacate Biro's preliminary injunction–this Court is constrained to conclude that it is not bound by the Sixth Circuit's decision in *Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007), reversing the district court's decision granting a preliminary injunction and finding, among other things, an "absence of any meaningful chance of success on the merits . . . ."  *Id.* at 910.

denying the petition for rehearing and suggestion for rehearing en banc undermined this Court's rationale for having granted Carter's motion for a preliminary injunction staying his execution, as well as any subsequent motions for a preliminary injunction, it is curious that Defendants never appealed this Court's order granting Carter's stay.

Returning to the four factors set forth in *McPherson*, the Court concludes that the second factor also weighs in Broom's favor. The evidence that continues to mount calling multiple conclusions by Dr. Dershwitz into question also persuades this Court that there is an unacceptable and unnecessary risk that Broom will be irreparably harmed absent the injunction–in other words, that Broom could suffer unnecessary and excruciating pain while being executed in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment.

Regarding the third factor, the Court is not persuaded that issuance of the preliminary injunction will cause substantial harm to the State by comparison. Without diminishing in any way the State's significant interest in enforcing its criminal judgments in a timely fashion, it appears to this Court–even without a fully developed record–that the potential flaws identified in Ohio's lethal injection protocol giving rise to the unacceptable risk of violating the Eighth Amendment's proscription against cruel and unusual punishment are readily fixable. Thus, any delay in carrying out Broom's execution should and can be minimal. Any argument that the granting of an injunction would harm the State's interest in fulfilling the judgment against Broom in a timely manner is somewhat disingenuous, considering that but for the State's interlocutory appeal, many if not all of the underlying issues would in all likelihood have been resolved by now. The fact that the state-obtained stay has prevented such resolution qualifies the

weight to be afforded Defendants' asserted harm, because such harm is ultimately self-inflicted. Self-inflicted harm that could result from issuance of preliminary injunctive relief should not necessarily preclude an injunction. *Cf. Pappan Enter. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (holding in trademark infringement case that "a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchiser of the mark"); *Midwest Guar. Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harms way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct").

In that regard, this Court hastens to reiterate that it is not penalizing Defendants for attempting to vindicate their defenses in the interlocutory appeal. But their request for the interlocutory appeal and the resulting stay in these proceedings are factors that must be weighed and, logically, they mitigate any assertion by Defendants of substantial harm stemming from the issuance of a preliminary injunction.

Finally, this Court is persuaded that the public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.

Defendants continue to emphasize, and this Court is mindful, that numerous other courts have denied motions for a preliminary injunction in cases raising the same or similar challenges. In the most recent cases cited by Defendants, however, the plaintiffs' undue delay in bringing their § 1983 actions was a factor weighing against them relative to the States' strong interest in

9

enforcing their criminal judgments. (Doc. # 215, at 5-6.) In *Nooner v. Davis*, 491 F.3d 804, 808-10 (8th Cir. 2007), and *Jones v. Allen*, 485 F.3d 635, 640 (11th Cir.), *cert. denied*, 127 S.Ct. 2160 (2007), the Eighth Circuit and Eleventh Circuit respectively found undue delay on the part of the applicants for bringing their Eighth Amendment method-of-execution challenges only after the conclusion or near-conclusion of collateral review. Given this Court's view about when Eighth Amendment challenges to the constitutionality of Ohio's lethal injection protocol are timely filed, and the fact that this Court's view in that regard continues to be the law in this case, this Court can only conclude that there has been no such delay on Broom's part.

Broom's motion for an emergency preliminary injunction is therefore **GRANTED**.[3] (Doc. # 212.) This Court declines to require a security bond. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (explaining that whether to require a bond is within the discretion of the court).

**Thus, it is ORDERED, ADJUDGED, and DECREED that the State of Ohio and any person acting on its behalf are hereby STAYED from implementing an order for the execution of Romell Broom issued by any court of the State of Ohio until further Order from this Court.**

**IT IS SO ORDERED**.

        /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[3] Because this Court finds that Broom is entitled to a preliminary injunction staying his execution, it is not necessary to address Broom's alternative argument urging the Court to issue an order under the All Writs Act staying his execution.