# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RICHARD COOEY, et al.,**

      **Plaintiff,**

   v.                                      **Case No. 2:04-cv-1156**
                                             **JUDGE GREGORY L. FROST**
**ROBERT TAFT, et al.,**                 **Magistrate Judge Mark R. Abel**

      **Defendants.**

## OPINION AND ORDER

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original plaintiff in a civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio. This matter is before the Court on the emergency motion of Kenneth Biros for a preliminary injunction or an order under the All Writs Act staying his execution, scheduled for January 23, 2007 (Doc. # 144). For the reasons that follow, this Court finds the motion well taken. Thus, it is **ORDERED**, **ADJUDGED**, and **DECREED** that the State of Ohio, and any person acting on its behalf, is hereby **STAYED** from implementing an order for the execution of Kenneth Biros issued by any court of the State of Ohio until further Order from this Court.

On November 9, 2006, this Court issued an order granting Plaintiff Kenneth Biros permission to intervene. (Doc. # 126.) On November 30, 2006, at the State's request, the Supreme Court of Ohio set an execution date for Biros of January 23, 2007. (Doc. # 126, at 1.) Accordingly, Biros filed the instant Emergency Motion for Preliminary Injunction on December 5, 2006. Also before the Court are the Defendants' brief in opposition (Doc. # 148) and Plaintiff's reply memorandum (Doc. # 149). On December 11, 2006, this Court conducted an

informal telephone conference in accordance with S.D. Ohio Civ. R. 65.1. The motion is therefore now ripe for disposition.[1]

It is well settled that "[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)). The decision of whether to issue a preliminary injunction rests within the discretion of the district court. *See, e.g., N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir. 1989). In determining whether to exercise its discretion to grant a preliminary injunction, a district court must balance the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995)). This Court finds that each factor favors Biros's request for a preliminary injunction.

On October 17, 2006, this Court issued an opinion and order granting Jeffrey Lundgren's motion to intervene and motion for a preliminary injunction staying his execution. (Doc. # 92.) The Court incorporates that order by reference and attaches it for convenience. Defendants

---

[1] The parties should note that "findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits." *United States v. Edward Rose & Sons*, 384 F.3d. 258, 261 (6th Cir. 2004) (citing *University of Texas v. Camenisch*, 451 U.S. 390 395 (1981)).

appealed this Court's decision to the Sixth Circuit Court of Appeals. Following a denial by the *En Banc* Court of Defendants' request for an *en banc* hearing, the appeal was assigned under Internal Operating Rule 22 of the appellate rules of the Sixth Circuit to a panel consisting of Judges Merritt, Daughtrey, and Clay–the panel that ruled on Lundgren's habeas corpus appeal. That panel issued an order on October 23, 2006 transferring the appeal to a panel consisting of Judges Surheinrich, Siler, and Gilman–the panel assigned to case No. 05-4057, *Cooey v. Taft*. In so doing, the former panel reasoned that "[i]t would be grossly unfair for different panels of this Court to reach opposite conclusions on the issue of the constitutionality of Ohio's method of lethal injection so that some capital defendants are put to death by lethal injection while others similarly situated are spared." (Doc. # 107, at 2.)

Thereafter, on October 23, 2006, the "*Cooey* panel" issued a one-page, summary order vacating Lundgren's stay of execution. (Doc. # 123.) That order informed this Court that it had erred in granting Lundgren a preliminary injunction. Unfortunately, as this Court has previously lamented, the appellate order simply did not tell the Court *how* it had erred. Judge Gilman dissented, stating that he would have upheld the stay of execution issued by this Court because he found no abuse of discretion on this Court's part in its evaluation of the factors governing the grant of Lundgren's emergency motion for a preliminary injunction.

Construing the Sixth Circuit's *Lundgren* order as the law of this case, this Court on November 9, 2006 denied Plaintiff-Intervenor Jerome Henderson's motion for a preliminary injunction staying his execution (Doc. # 124), and on November 22, 2006 denied Plaintiff-Intervenor John Spirko's motion for a preliminary injunction staying his execution (Doc. # 137). The Court incorporates those orders by reference and attaches them for convenience. This Court

stated unmistakably in both orders that although it was of the view that both plaintiffs were entitled to preliminary injunctions, the law of this case appeared to preclude this Court from granting their motions for preliminary injunctions.

A subsequent development punctured this law-of-the-case interpretation. On December 4, 2006, a panel of the Sixth Circuit consisting of Judges Norris, Batchelder, and Clay–the panel that previously ruled on Henderson's habeas corpus appeal and Rule 60(b) appeal–issued a summary order granting Henderson's motion for an emergency stay of execution, sparing Henderson from his execution that was scheduled for December 5, 2006.[2] (Doc. # 142.) Judge Batchelder dissented, stating in relevant part that she could not "reconcile the majority's decision to grant this stay with our prior decision to vacate the district court's grant of a stay to Jeffrey Lundgren less than six weeks ago." (Doc. # 142, at 1.)

Faced with two different orders by two different panels reaching two different conclusions, this Court is left with the task of determining what the law of this case is. Because neither order provides any reasoning for its outcome, this Court can only conclude that the law of the case is that this Court should evaluate individually and on a case-by-case basis each

---

[2] The *Henderson* majority's order did not address the original *Lundgren* panel's concerns over consistency that had prompted transfer to the "*Cooey* panel." It appears that despite the existence of the *Cooey* panel, the diverse initial panel assignments might be because the Sixth Circuit considers each plaintiff's § 1983 claims to be "incidental and collateral matters" to the plaintiff's death penalty cases. *See* 6th Cir. I.O.P. 22(a)(1) ("The [death penalty] panel shall be assigned the case and all matters pertaining to the motion to stay, application for certificate of appealability, the merits, second or successive petitions, remands from the Supreme Court of the United States, and all incidental and collateral matters, including any separate proceedings questioning the conviction or sentence.").

motion for a preliminary injunction that comes before it.[3]  In other words, there is apparently no substantive law of the case as to *all* intervening plaintiffs here because there is no apparent consistency to the appellate decisions that have arisen from this litigation.[4]

---

[3]  In this regard, the Court distinguishes the order that it issued on December 6, 2006 denying Plaintiff Spirko's motion for reconsideration of the Court's order denying his motion for a preliminary injunction.  (Doc. # 145.)  Spirko had argued that the Sixth Circuit's decision in *Henderson* should control over the Sixth Circuit's decision in *Lundgren*.  The Court rejected Spirko's motion for reconsideration because granting it would have required the Court to find that it had erred in previously denying his motion for a preliminary injunction.  Given the Sixth Circuit's lack of clarity (as detailed in the Court's prior Opinion and Order), the Court could not reach that conclusion.  And having concluded that the law of this case is simply that the Court must evaluate each motion for a preliminary injunction on its own merits and on a case-by-case basis, the Court still cannot say that it erred as a matter of law at the time that it denied Spirko's motion for a preliminary injunction.

**It is the hope of this Court that, absent an intervening, dispositve decision from the *Cooey* panel on the interlocutory appeal that was argued on December 7, 2006, whatever panel entertains the likely appeal of the instant decision will *explain its rationale* in affirming or reversing this Court.**  Absent Spirko's recent appeal (Doc. # 150), such an expressed rationale *might* have afforded this Court cause to *sua sponte* revisit the interlocutory decision denying Spirko reconsideration and to order additional briefing on the matter.  It *would* afford the lower courts of this Circuit the necessary guidance that has thus far proved curiously elusive.

[4]  This Court notes that the *Lundgren* decision was unreported, which means that it was not binding on the *Henderson* panel pursuant to 6th Cir. Rule 206(c).  An unpublished decision can, however, present the controlling law of the case.  *Kidd v. Commissioner of Social Security Administration*, 7 Fed. Appx. 483 (6th Cir. 2001) (citing pre-December 2006 6th Cir. Rule 28(g) in explaining that although "unpublished authority is without precedential value . . . '[c]itation of unpublished decisions in briefs and oral arguments in [the court of appeals] and in the district courts within this Circuit is disfavored . . . except for the purpose of establishing . . . the law of the case' ").  Apart from Judge Batchelder, there is no indication that anyone on either panel regarded or intended the *Lundgren* decision to be controlling except as to Lundgren.  This non-binding approach is notable, given that "[g]enerally, a decision of a court of appeals in one stage of the case constitutes the law of the case for subsequent appeals in the same case" and that "[o]ne panel of an appellate court will not reconsider questions that another panel has previously decided in the same case."  18 James W. Moore, *Moore's Federal Practice* §134.22[2][c], at 134-54.5 (3d ed. 2006).  The factual similarities between Lundgren and Henderson–both parties to different appeals in the same case presenting the same legal issue–would suggest that the *Lundgren* decision falls within this law-of-the-case approach, but the *Henderson* decision makes

Thus, in evaluating Biros's emergency motion for a preliminary injunction, the Court notes first that principals of equity weigh in Biros's favor, insofar as he was more than diligent in filing his motion to intervene and filing the instant emergency motion for a preliminary injunction. As noted above, this Court issued an order on November 9, 2006 granting Biros's request for permission to intervene in this action. (Doc. # 126.) Pursuant to the reasoning set forth in this Court's March 28, 2005 Opinion and Order (Doc. # 14), the statute of limitations on Biros's § 1983 claim did not begin to run until his execution became imminent (*i.e.*, when the United States Supreme Court declined to review his habeas corpus case or when the time for seeking United States Supreme Court review expired) and when he knew or had reason to know of the facts giving rise to his claim.

It appears from the record that after the district court originally granted Biros's petition for a writ of habeas corpus (Doc. # 110, at 3), the Sixth Circuit reversed that decision on September 9, 2005 and denied habeas relief. *Biros v. Bagley*, 422 F.3d 379 (6th Cir. 2005). According to Defendants, the Sixth Circuit denied Biros's petition for a rehearing en banc on January 23, 2006, after which the United States Supreme Court denied his certiorari petition on October 2, 2006. (Doc. # 110, at 3.) Biros filed his motion to intervene on October 18, 2006, before the expiration of his time for filing a petition for rehearing in the United States Supreme Court.

As Biros points out, when he filed his motion to intervene on October 18, 2006, he did not have an execution date. Further, when this Court granted him permission to intervene on November 9, 2006, he still did not have an execution date. However, on November 30, 2006,

---

clear that it somehow does not.

"the Ohio Supreme Court, at the State's request an even though provided with notice of Biros's intervention in this case, scheduled Biros's execution by lethal injection for January 23, 2007." (Doc. # 144, at 1.) Biros filed the instant emergency motion for a preliminary injunction, or an order under the All Writs Act, staying his execution on December 5, 2006.

Returning to the four factors that this Court must evaluate and balance, *see McPherson*, 119 F.3d at 459, and given the evidence that Jeffrey Hill first produced and that is now part of the record, as well as additional, more recent anecdotal evidence that Biros has produced regarding the suspension of executions in Florida (Doc. # 149-9) and a finding by the Northern District of California that California's three-drug protocol violates the Eighth Amendment, (Doc. # 149-10), the Court concludes that Biros at the very least has demonstrated a *stronger* likelihood of success on the merits than some of the plaintiffs who preceded him. This supports an injunction.

The limited record before this Court now includes a growing body of evidence calling Ohio's lethal injection protocol increasingly into question.[5] This Court stated unequivocally in its order granting Hill's request for a preliminary injunction that it can not and will not turn a blind eye to the evidence presented in the cases of *Brown v. Beck* in North Carolina and *Morales v. Hickman* in California appearing to contradict the opinion of Dr. Mark Dershwitz that virtually all persons given the dose of sodium thiopental prescribed under Ohio's lethal-injection protocol would be rendered unconscious and would stop breathing within one minute. (Doc. # 45, at 6-9.)

Defendants take this Court to task for its conclusion in this regard, arguing that evidence

---

[5] The Court takes judicial notice that multiple states have recently placed executions on hold due to serious concerns over their lethal injection protocols.

from hearings in other cases is insufficient to establish a strong likelihood of success on the merits and that the Court's conclusion effectively lowers the standard in *McPherson*. The Court disagrees with Defendants' assertion that it has lowered the *McPherson* standard and reminds Defendants that the four factors identified in *McPherson* are "factors to be balanced, not prerequisites that must be met." *Six Clinics Holding Corp., II v. Cafcomp Systems*, 119 F.3d 393, 400 (6th Cir. 1997). Viewed in this context, Defendants have not cited, and the Court is not aware of, any cases holding that demonstrating a strong likelihood of success on the merits requires the movant to produce a certain quantum or quality of evidence.

Regarding Defendants' argument that "*McPherson* does not provide for an incrementally better showing than previous litigants," (Doc. # 148, at 8), the Court notes that *McPherson* was not dealing with the decision of whether to stay the movant's execution by means involving an unacceptable and unnecessary risk that the movant could suffer excruciating pain in violation of the Eighth Amendment. But this Court is. And that fact, in this Court's view, is entitled to some weight when determining whether Biros has demonstrated a strong likelihood of success on the merits.

Regarding Defendants' attack on this Court's reliance on evidence produced in other cases around the country and anecdotal evidence regarding problems that have occurred during recent executions in Ohio and other states, the Court notes that although such evidence is not ideal, it is nonetheless persuasive regarding the first factor in *McPherson* and is arguably the best evidence that the plaintiffs in this case could produce, given the fact that this case was stayed before any discovery or other fact-finding could commence.

The evidence that has begun to emerge calling multiple conclusions by Dr. Dershwitz

into question also persuades this Court that there is an unacceptable and unnecessary risk that Biros will be irreparably harmed absent the injunction, *i.e.*, that Biros could suffer unnecessary and excruciating pain while being executed in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment.

The Court is not persuaded that issuance of the preliminary injunction will cause substantial harm to the State by comparison. Without diminishing in any way the State's significant interest in enforcing its criminal judgments in a timely fashion, it appears to this Court–even without a fully developed record–that the potential flaws identified in Ohio's lethal injection protocol giving rise to the unacceptable risk of violating the Eighth Amendment's proscription against cruel and unusual punishment are readily fixable. Thus, any delay in carrying out Biros's execution should and can be minimal.

Any argument that the granting of an injunction would harm the State's interest in fulfilling the judgment against Plaintiff Biros in a timely manner is somewhat disingenuous, considering that but for the State's interlocutory appeal, many if not all of the underlying issues would in all likelihood have been resolved by now. The fact that the state-obtained stay has prevented such resolution qualifies the weight to be afforded Defendants' asserted harm, because such harm is ultimately self-inflicted. Self-inflicted harm that could result from issuance of preliminary injunctive relief should not necessarily preclude an injunction. *Cf. Pappan Enter. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (holding in trademark infringement case that "a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchiser of the mark"); *Midwest Guar. Bank v. Guaranty Bank*, 270 F.

Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harms way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct").

To be clear: This Court is not penalizing Defendants for attempting to vindicate their defenses in the interlocutory appeal, despite Defendants' assertion to the contrary. (Doc. # 148, at 12-15.) But their request for the interlocutory appeal and the resulting consequent stay in these proceedings are factors that *must* be weighed, and, logically, they mitigate any assertion by Defendants of irreparable harm stemming from the issuance of a preliminary injunction. To conclude otherwise is to ignore the realities of this litigation and the parties' actions.

Finally, this Court is persuaded that the public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.

This Court is mindful of the many cases raising the same or similar challenges in which courts have denied motions for a preliminary injunction. *See, e.g., Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006); *Bieghler v. Donahue*, No. 06-1300, 2006 WL 229027 (7th Cir. Jan. 26, 2006), *vacated*, 126 S.Ct. 1190 (2006); *Vinson v. Johnson*, 126 S.Ct. 1908, 2006 WL 1109748 (U.S. Apr. 27, 2006); *Alley v. Little*, 181 Fed. Appx. 509, 2006 WL 1313365 (6th Cir. May 12, 2006). In those cases, however, the plaintiff's undue delay in bringing his § 1983 action was a factor weighing against him relative to the State's strong interest in enforcing its criminal judgments. For example, in *Smith v. Johnson*, the Fifth Circuit remarked that "we have made clear that waiting to file such a challenge days before a scheduled execution constitutes

unnecessary delay. *Smith*, 440 F.3d at 263 (citations omitted). In this Court's view, there has been no such delay on Biros's part.

For the foregoing reasons, Plaintiff Biros's motion for an emergency preliminary injunction is **GRANTED**.[6] This Court, having considered the matter pursuant to S.D. Ohio Civ. R. 67.1, declines to require a security bond. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (explaining that whether to require a bond is within the discretion of the court).

**Thus, it is ORDERED, ADJUDGED, and DECREED that the State of Ohio, and any person acting on its behalf, is hereby STAYED from implementing an order for the execution of Kenneth Biros issued by any court of the State of Ohio until further Order from this Court.**

**IT IS SO ORDERED.**

        /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[6] Because this Court finds that Biros is entitled to a preliminary injunction staying his execution, the Court need not and does not address Biros's alternative, moot argument urging the Court to issue an order under the All Writs Act staying his execution.

11