**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RICHARD COOEY, et al.,**

      **Plaintiff,**

    **v.**                          **Case No. 2:04-cv-1156**
                                            **JUDGE GREGORY L. FROST**
**TED STRICKLAND, et al.,**           **Magistrate Judge Mark R. Abel**

      **Defendants.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court for consideration of Defendants' Motion to Dismiss (Doc. # 282), Plaintiff Jerome Henderson's memorandum in opposition (Doc. # 313), and Defendants' reply memorandum (Doc. # 329).  For the reasons that follow, this Court finds the motion not well taken.

Henderson asserts claims under 42 U.S.C. § 1983 challenging multiple facets of the lethal injection protocol by which the State of Ohio intends to execute him.  Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that the Sixth Circuit's decision in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007), requires dismissal of the § 1983 claims asserted here.  Previously, this Court issued an Opinion and Order in this litigation that discussed at length the Sixth Circuit's construction in *Cooey* of the statute of limitations for such § 1983 claims.  (Doc. # 344.)  The Court adopts and incorporates herein the entirety of that decision and attaches it to the instant decision for ease of reference.

As this Court noted in that prior decision, *Cooey* teaches that § 1983 claims of the sort asserted in this case begin to accrue upon conclusion of direct review in the state courts and when a plaintiff knows or has reason to know about the act providing the basis of his or her

injury.  *Id.* at 422.  Even in light of recent changes to the lethal injection protocol and the United

States Supreme Court's issuance of *Baze v. Rees*, 128 S. Ct. 1520 (2008)–the latter of which pre-

dated issuance of the *Cooey* mandate–the court of appeals issued *Cooey* as binding authority.

This authority reasons that a plaintiff knew or had reason to know about the act providing the

basis of his or her injury when Ohio made lethal injection the exclusive method of execution in

December 2001.  *Cooey*, 479 F.3d at 422.  Consequently, review of the briefing and the record

indicates that the following dates are relevant to the statute of limitations issue:

    (1) Date of Henderson's conviction and sentence: August 5, 1985.

    (2) Date the United States Supreme Court denied *certiorari*: March 6, 1989.

    (3) Date the Sixth Circuit has held inmates like Henderson should have been aware of

their § 1983 lethal injection protocol claims: December 2001, at the latest.

    This Court concludes that the rationale of *Cooey* applies to Henderson's § 1983 claims.

The statute of limitations on most of the plaintiffs' claims expired, at the latest, in December

2003.  The Court does not conclude, however, that the statute of limitations on Henderson's

claims has expired.  Henderson raised no arguments to save his claims that the Court did not

previously consider and reject in its attached and incorporated Opinion and Order, *except* his

argument that because there were various time periods during which he was not under a valid

sentence of death, his § 1983 claim did not begin to accrue until June 9, 2006, when the Sixth

Circuit most recently reinstated his death sentence.  That argument saves Henderson's claims.

    To the dates set forth above, Henderson adds the following dates.  On August 4, 1999,

the district court granted habeas relief and conditionally ordered the State of Ohio to give

Henderson a new penalty hearing.  Henderson argues that he was not under a valid sentence of

death and did not have a ripe method-of-execution claim until the Sixth Circuit reversed that decision and effectively reinstated Henderson's death sentence on August 28, 2001.  Henderson further points out that on July 10, 2003, the district court granted Henderson's Fed. R. Civ. P. 60(b) motion for relief from judgment and again conditionally ordered the State of Ohio to give Henderson a new penalty hearing.  Henderson argues as he did above that he was not under a valid sentence of death and did not have a ripe method-of-execution claim until the Sixth Circuit reversed that decision and effectively reinstated Henderson's death sentence on June 9, 2006. Reasoning that his method-of-execution claim did not begin to accrue until June 9, 2006, when the Sixth Circuit most recently reinstated his death sentence, Henderson argues that his August 21, 2006 motion to intervene in the instant action was well within the two-year statute of limitations.

As this Court noted above, *Cooey* teaches that § 1983 claims of the sort asserted in this case begin to accrue when a plaintiff knows or has reason to know about the act providing the basis of his or her injury.  *Cooey*, 479 F.3d at 422.  The Sixth Circuit concluded under that rationale that "the . . .  most appropriate accrual date" for method-of-execution challenges is "upon conclusion of direct review in the state court or the expiration of time for seeking such review."  *Id.*  The Sixth Circuit also signaled that, for prisoners who completed their direct review before Ohio first implemented lethal injection in 1993 or made lethal injection its exclusive method of execution in December 2001, it is necessary to adjust the accrual date, or triggering event, because such prisoners "obviously could not have discovered the 'injury' until one of those two dates."  *Id.* at 422.  Notwithstanding the need to adjust the accrual date as set forth above, the starting point for a determination of when a method-of-execution claim accrues

remains upon conclusion of direct review.

In concluding as much, the Sixth Circuit rejected other possible accrual dates. Specifically, the Sixth Circuit rejected "[s]etting an accrual date at the point when the actual harm is inflicted, *i.e.*, at the point of execution, . . . because the death-sentenced inmate's claim would not accrue until he was executed, at which time it would also be simultaneously moot." *Id*. at 418. The Sixth Circuit also appears to have rejected "the point when the death penalty is ordered, upon judgment of conviction and sentence[,]" in favor of the conclusion of direct review. *Id*. The Sixth Circuit explained its reasoning for that determination as follows:

> [Conclusion of direct review by the state] is also an attractive choice because it marks the point at which the state has rendered its criminal judgment final and, absent collateral civil proceedings, the point at which the state sets the execution date. Furthermore, the death-sentenced inmate can file suit and obtain relief.

*Id*. at 419. This reasoning signals that it is necessary for a prisoner to be under a valid sentence of death in order to have a viable or ripe method-of-execution challenge. That only stands to reason, because a prisoner *not* under sentence of death obviously would *not* be on notice to file a § 1983 method-of-execution claim (and in fact would lack standing to do so).

Under the Sixth Circuit's reasoning, Henderson is correct that his method-of-execution claim effectively vanished each time his death sentence was invalidated. Under the express reasoning set forth by the Sixth Circuit for choosing completion of direct review as the accrual date, the statute of limitations on Henderson's method-of-execution claim did not expire in December 2003 like that of the other plaintiffs whose statutes of limitations began to run in December 2001. In December 2003, the criminal judgment sentencing Henderson to death was not "final." The State could not have executed him or even set an execution date. Henderson could not have filed suit or obtained relief from the judgment sentencing him to death because he

4

was not under a valid sentence of death.

As to prisoners whose convictions became final on direct review prior to when Ohio made lethal injection its exclusive method of execution, the statute of limitations on their method-of-execution challenges began to run, at the latest, in December 2001 when Ohio made lethal injection its exclusive method of execution because that is when those prisoners knew or could have known of the facts giving rise to their potential injury.  At that time, December 2001, Henderson was under a valid death sentence because, three months earlier, on August 28, 2001, the Sixth Circuit reinstated the death sentence that the district court had reversed on August 4, 1999.  Under ordinary circumstances, therefore, Henderson would have had until December 2003 to file his § 1983 method-of-execution challenge, just like every other prisoner who had completed direct review in the state courts prior to the date that Ohio made lethal injection its exclusive method of execution.

But on July 10, 2003, four months prior to the expiration of the statute of limitations on Henderson's § 1983 method-of-execution claim, the district court granted him relief and again conditionally ordered the State of Ohio to give Henderson a new penalty hearing.  At that moment, Henderson's § 1983 method-of-execution claim vanished.  Only when the Sixth Circuit reversed the district court's decision and effectively reinstated Henderson's death sentence on June 9, 2006, was Henderson put on notice of the facts giving rise to his § 1983 method-of-execution claim.

The Court recognizes that during the back-and-forth pendency of his habeas corpus proceedings, the facts giving rise to his § 1983 claim--facts concerning Ohio's lethal injection protocol of which he could and should have been aware in December 2001--were constant and

that technically, nothing about the back-and-forth nature of Henderson's obtaining habeas corpus relief changed or affected *those* facts.  However, the Sixth Circuit's reasoning for choosing completion of direct review as the triggering event signals that *it is necessary for a prisoner to be under a valid sentence of death* in order to have a viable or ripe method-of-execution challenge.

Henderson most recently found himself under a valid sentence of death on June 9, 2006. He filed a motion to intervene in this action on August 21, 2008, which this Court dismissed without prejudice because it did not appear from the face of the complaint that Henderson had exhausted his administrative remedies.  (Doc. # 100.)  He filed a second motion to intervene on October 25, 2006 (Doc. # 104), well within the two-year statute of limitations that began to run on June 9, 2006.

Defendants bear the burden of demonstrating that the statutory period ran before Henderson filed his claim.  *Cooey*, 479 F.3d at 416 (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).  In light of the foregoing, this Court cannot conclude that Henderson's § 1983 claims are time-barred.

Thus, the Court **DENIES** Defendants' Motion to Dismiss.  (Doc. # 282.)

**IT IS SO ORDERED**.

                     /s/ Gregory L. Frost
                   GREGORY L. FROST
                   UNITED STATES DISTRICT JUDGE