# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RICHARD COOEY, et al.,**

    **Plaintiff,**

    v.                                   Case No. 2:04-cv-1156
                                          JUDGE GREGORY L. FROST

**TED STRICKLAND, et al.,**         Magistrate Judge Mark R. Abel

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of the following sets of filings:

(1) a motion to intervene filed by Nathaniel E. Jackson (Doc. # 368), a memorandum in opposition filed by Defendants (Doc. # 411), and a reply memorandum filed by Jackson (Doc. # 416);

(2) a motion to intervene filed by Robert W. Bethel (Doc. # 377) and a memorandum in response filed by Defendants (Doc. # 414);

(3) a motion to intervene filed by Phillip L. Elmore (Doc. # 381) and a memorandum in response filed by Defendants (Doc. # 415); and

(4) a motion to intervene filed by Donald Ketterer (Doc. # 419) and a memorandum in response filed by Defendants (Doc. # 429).

For the following reasons, the Court **GRANTS** the motions to intervene. (Docs. # 368, 377, 381, 419.)

## I. Background

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, was the original plaintiff in the captioned 42 U.S.C. § 1983 civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio. The four individuals seeking to intervene raise similar claims to the remaining plaintiffs in this litigation. As this Court has done with past intervenors, the Court shall briefly summarize the procedural posture of each potential intervenor.[1]

**(1) Nathaniel E. Jackson.** The Ohio Supreme Court upheld Jackon's conviction and sentence of death on January 4, 2006. The United States Supreme Court then denied his petition for writ of certiorari on June 5, 2006. Two years later, Jackson attempted to intervene in another 42 U.S.C. § 1983 case on Ohio's lethal injection protocol, *Reynolds v. Strickland*, Case No. 2:08-cv-442. This Court dismissed that June 5, 2008 motion to intervene in an August 28, 2008 Opinion and Order. (Doc. # 100 in 2:08-cv-442.) Jackson subsequently filed his motion to intervene *sub judice* on September 8, 2008. Defendants oppose Jackson's intervention on the grounds that his claim is barred by the applicable statute of limitations.

**(2) Robert W. Bethel.** The Ohio Supreme Court affirmed Bethel's conviction and

---

[1] Because the parties present the same issues raised in regard to previous intervenors, much of today's Opinion and Order often reproduces verbatim the discussion set forth in the Court's June 25, 2007 Opinion and Order. (Doc. # 203.) For ease of potential appellate review, the Court has once again elected to repeat that analysis here rather than present the discussion by incorporation.

Additionally, the Court notes that, unlike in prior opinions, it has not discussed each intervenor's exhaustion of administrative remedies in today's opinion. The United States Supreme Court has held that prisoners are not required to plead and demonstrate exhaustion of administrative remedies in a complaint, and no party asserts that there is any failure to exhaust here. *See Jones v. Bock*, 127 S. Ct. 910, 919 (2007) (reversing Sixth Circuit and holding that a prisoner need not plead exhaustion).

sentence on direct review on October 4, 2006. Bethel filed his motion to intervene on September 17, 2008, prior to the expiration of the applicable two-year statute of limitations. He does not have an execution date.

In their response, Defendants state that they do not oppose Bethel's motion to intervene. (Doc. # 414, at 2.) Defendants decline to concede, however, that Bethel is entitled to intervene as a matter of law or that he is entitled to relief.

**(3) Phillip L. Elmore.** Following the December 13, 2006 affirmance of his conviction and sentence by the Ohio Supreme Court, the United States Supreme Court denied Elmore's petition for certiorari on June 18, 2007. Elmore is currently seeking habeas relief before another judicial officer in this District, but that litigation is stayed based on additional proceedings in state court. Elmore filed his motion to intervene on September 22, 2008, well within the applicable statute of limitations. He does not have an execution date.

Defendants state in their response that they do not oppose Elmore's motion to intervene. (Doc. # 415, at 2.) As with Bethel, Defendants decline to concede that Elmore is entitled to intervene as a matter of law or that he is entitled to relief.

**(4) Donald Ketterer.** After the Ohio Supreme Court affirmed Ketterer's conviction and sentence of death on October 25, 2006, the United States Supreme Court denied certiorari on May 14, 2007. Ketterer then filed his motion to intervene on October 23, 2008, which is within the statute of limitations. He also does not have an execution date.

In their response, Defendants state that they do not oppose Ketterer's motion to intervene. (Doc. # 429, at 2-3.) Defendants assert that they decline to concede that Ketterer is entitled to intervene as a matter of law or that he is entitled to relief.

## II. Discussion

### A. Standard Involved

In addressing both intervention as of right and permissive intervention, the Court must first determine whether the application to intervene is timely. Federal Rule of Civil Procedure 24(a), which targets intervention of right, requires that the motion to intervene be timely. The rule states:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that the disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Similarly, Rule 24(b), which targets permissive intervention, also includes a timeliness component. That rule provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). The rule also provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The timeliness component requires the Court to consider:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) (both construing analogous former Rule 24)).

B. Analysis

The Sixth Circuit has held that the appropriate date for commencement of the limitations period for a § 1983 challenge on Eighth Amendment grounds to a state's execution protocol is upon conclusion of direct review of the death sentence in the state court or the expiration of time for seeking such review and when a plaintiff knows or has reason to know about the act providing the basis of his or her injury (recognizing that lethal injection became Ohio's exclusive method of execution in 2001). *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007). Thus, as Defendants concede, Bethel, Elmore, and Ketterer all fall within the statute of limitations identified by the Sixth Circuit.

This leaves Jackson, who, as noted, previously had sought to intervene in a similar case before the undersigned judicial officer. Defendants argue that this Court cannot grant intervention here because Jackson's claim is barred by the two-year statute of limitations that began to run from the United States Supreme Court's June 5, 2006 denial of his petition for writ of certiorari. They note that rather than filing his own § 1983 action, Jackson sought to intervene in the *Reynolds* case on the last day of his limitations period, and that his latest motion to intervene is an attempt to salvage his failed attempt to enter into a lethal injection protocol lawsuit. Thus, Defendants conclude, "absent a reasonable explanation by Jackson for his apparently deliberate delay, the Court should not excuse on equitable grounds his failure to file within the limitations period." (Doc. # 411, at 4.)

Jackson in turn replies with a reasonable explanation for why his current motion to intervene is not time-barred: he did not have to file his own separate lawsuit to preserve his claim. To support this proposition, Jackson directs this Court to Ohio's savings statute, which

provides:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant

Ohio Rev. Code § 2305.19(A). This statute provides Jackson the refuge he seeks because of the nature of his prior dismissal.

In its Opinion and Order dismissing Jackson's motion to intervene in *Reynolds*, this Court explained that the dismissal of Reynold's complaint meant that "there is no case in which to intervene, which means that the motion by various inmates who seek to join Reynolds in this litigation are moot." (Doc. # 100, at 6 in 2:08-cv-442.) That decision also stated that "[t]he Court expresses no opinion on whether any individual who sought to intervene would be entitled to any form of tolling on any subsequently filed actions." (*Id.*) The dismissal of Jackson's first motion to intervene therefore constitutes an attempt to commence an action that failed otherwise than upon the merits so as to permit Jackson to commence the new action presented by his second motion to intervene.[2] Sixth Circuit precedent supports this conclusion. *See Harris v. United States*, 422 F.3d 322, 331-32 (6th Cir. 2005); *see also Lett v. Sahenk*, 174 F. App'x 921, 922 (6th Cir. 2006); *Johnson v. University Hosp. of Cleveland*, 46 F. App'x 238, 243-44 (6th

---

[2] The Court notes that both of Jackson's proffered complaints target the same defendants. The Sixth Circuit has explained that the state savings statute can apply only to claims against defendants who were named in the prior action. *Griffin v. City of Columbus*, 10 F. App'x 271, 273 (6th Cir. 2001).

Cir. 2002). The statute of limitations thus does not preclude Jackson's intervention here.[3]

Having determined that all of the four potential intervenors are within the statute of limitations, the Court can now turn to the issue of whether the factors for intervention support the motions before the Court.

In determining whether the four latest applications are timely, the first factor the Court must consider is the point to which the suit has progressed. *See United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). It is beyond dispute that this litigation continues to remain in its early stages. On April 13, 2005, this Court issued an order granting Defendants' request for an interlocutory appeal. (Doc. # 21.) That appeal led to a panel decision, the denial of en banc review, and a stay tied to the preparation of a writ of *certiorari*. Following remand, this litigation has not even reached the discovery stage while the parties have briefed who is and who is not a plaintiff in this action. Because this litigation remains in its early stages, intervention at this point will not prejudice the original parties to this litigation.

The second factor this Court must consider is the purpose for which intervention is sought. This factor also militates in favor of finding that the four intervenors' motions to intervene are timely. Just as the intervenors before them, all four have an obvious significant interest in the adjudication of this lawsuit. Each intervenor's interest in seeing a comprehensive disposition of the shared questions of law and fact is obvious from the record and requires no speculation.

---

[3] Because application of Ohio's savings statute proves dispositive here, the Court need not and does not opine on Jackson's argument that he is entitled to equitable tolling of the statute of limitations.

The third factor for this Court to weigh in determining whether the pending applications are timely is the length of time preceding the applications during which the proposed intervenors knew or reasonably should have known of their interest in the case. The Court recognizes that three of the four motion to intervene are unopposed and that all four movants fall within the statute of limitations or the extended period for filing a claim. Moreover, all four movants were placed under a sentence of death well after this litigation had commenced.

The fourth factor this Court must consider in determining whether the instant applications are timely is the prejudice to the original parties due to the proposed intervenors' failure, after they knew or reasonably should have known of their interest in the case, to apply promptly for intervention. This Court has previously addressed this factor at length in regard to previous intervenors. The Court continues to find no undue or needless burden that the original parties will suffer if the four intervenors are permitted to join this lawsuit now. Given the early procedural posture of this litigation–the preliminary pretrial conference has yet to be held due to various appeals and issues presented by intervenors–the Court concludes that permitting intervention here will neither unduly delay nor prejudice the adjudication of the rights of the remaining original parties. Rather, permitting intervention here will facilitate the expeditious resolution of the rights of the parties. *See Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (affirming allowance of permissive intervention on such grounds).

The fifth and final factor for this Court to weigh in assessing the timeliness of the four motions to intervene is the existence of any unusual circumstances militating against or in favor of intervention. There are no unusual factors weighing against intervention, while the unsettled state of the law weighs, if at all, in favor of intervention. To conclude otherwise would be to run

8

the risk that constitutional rights go unprotected for some parties while others receive consideration.

Having found that the motions to intervene are timely, the Court turns to the issue of whether the four proffered complaints and the main action have a question of law or fact in common. The Court concludes that they do. At the core of the tendered complaints is the same method-of-execution challenge that the other numerous plaintiffs assert.

Additionally, the four intervenors each have a significant interest in this case that cannot adequately be protected by the other plaintiffs because of the time-sensitive nature of their claims and the independent schedule that each faces. If there were to be no executions by the specific lethal injection protocol at the heart of this lawsuit until this litigation were resolved, then the Court might accept an argument that the four intervenors' rights, as well as the rights of all other similarly-situated inmates, could adequately be protected by those plaintiffs already in this case. But it is ridiculous to suggest that the existing plaintiffs can adequately protect each intervenors' rights when each intervenor might well face an execution date before this matter reaches its end. It is this factor that distinguishes such unreported decisions as *Johnston v. Crawford*, Case No. 4:04CV1075, pp. 2-3 (E.D. Missouri 2005), and *Brown v. Beck*, Case No. 5:06-CT-3018, p. 2 (E.D. N.C. 2006). (Doc. # 110, at 8.) It is not apparent from these decisions, in which the courts denied motions to intervene in a pending § 1983 suit challenging the lethal injection protocol, the point to which those lawsuits had progressed or whether the proposed intervenors faced imminent execution dates such that the existing plaintiffs could not adequately protect the interests of the proposed intervenors.

All of the foregoing factors support permissive intervention here. Because the Court

decides, as it has with respect to every other motion to intervene that has been filed in this case, that the four intervenors have demonstrated that permissive intervention is warranted, it is unnecessary for the Court to determine whether they are entitled to intervention of right under Fed. R. Civ. P. 24(a)(2).[4] *See Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 668 (6th Cir. 1985) ("Since we hold that the District Court did not abuse its discretion in allowing the Bank to intervene under Fed. R. Civ. P. 24(b)(2), we need not consider whether Fed. R. Civ. P. 24(a)(2) gave the Bank the right to intervene.").

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** the motions to intervene. (Docs. # 368, 377, 381, 419.) The Clerk shall therefore detach the proffered complaints and attachments of each of the four new intervenors and file said pleadings on the docket.

**IT IS SO ORDERED.**

      /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[4] In three of the four responses to the intervenors' motions, Defendants state that they "in no way concede that [the intervenor] is entitled to intervene as a matter or [*sic*] law, or that he is entitled to any relief by the Court." (Doc. # 414, at 2; Doc. # 415, at 2; Doc. # 429, at 3.) Given that Defendants indicate that they also do not oppose the motions to intervene, it is not wholly clear whether, regardless of any scrivener's errors, Defendant intend to indicate that they oppose only intervention of right (*i.e.*, as a matter *of* law) while not opposing permissive intervention.