IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

RICHARD COOEY, *et al.*,

Plaintiff-Intervenors,                                    Case No. 2:04-cv-1156

v.                                                                     Judge Frost

TED STRICKLAND, Governor, *et al.*              Magistrate Judge Abel

Defendants.

**DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT
WITH REQUEST FOR EXPEDITED BRIEFING SCHEDULE**

Defendants move for summary judgment.  Fed. R. Civ. Pro. 56(c).  Ohio has unilaterally altered Ohio's constitutionally sound lethal injection procedures in a manner that renders moot all of the claims before the Court.  Defendants request an expedited briefing schedule.  A memorandum in support follows.

**Respectfully submitted,**

**RICHARD CORDRAY**
Ohio Attorney General

s/ *Charles L. Wille*
CHARLES L. WILLE* (0056444)
Principal Assistant Attorney General
*Lead Counsel*

s/ *J. Eric Holloway*
J. ERIC HOLLOWAY (0063857)
Assistant Attorney General
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)
Email: charles.wille@ohioattorneygeneral.gov
Eric.Holloway@OhioAttorneyGeneral.gov

Counsel for Defendants

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

I.   **Introduction and Statement of the Case and Facts**

   A.   **Summary of the Motion**

By way of this civil rights action, various offenders condemned to death seek to change how Ohio implements its lethal injections procedures to execute condemned offenders in Ohio. Ohio recently has decided unilaterally to alter its constitutionally sound procedures in a manner that renders moot all of the claims before the Court.

First, Ohio no longer will use a three drug protocol. Instead, Ohio will use a lethal injection procedure that uses one chemical, thiopental sodium, in an amount sufficient to cause death, which even Plaintiff's own medical expert has posited can be accomplished. That chemical will be injected via an intravenous connection to the condemned offender. Neither pancuronium bromide nor potassium chloride will be used as part of the lethal injection process.

Second, Ohio will implement a lethal injection procedure that includes a back-up procedure, to be used if a suitable IV site cannot be attained or maintained. The back-up procedure will involve injecting a combination of two chemicals into the condemned offender through an intramuscular injection. The two chemicals to be used include midazolam and hydromorphone.

Lastly, some of the plaintiffs contend that they have a right to the presence of counsel during the execution process. As established in prior filings with the Court, and as reasserted below, this claim has no basis in law, and it does not support the continued injunctive relief in this matter.

   B.   **Cooey's Lawsuit.**

On September 3, 2009, defendants filed their first motion for summary judgment. (Doc. 534.) In it, they set forth their depiction of the inception of this action through the 42 U.S.C. § 1983

-1-

action filed by Richard Cooey. Defendants reincorporate by reference as if fully rewritten all portions of Section II.A of that motion as if fully rewritten here. (*See* Doc. 534, p. 7.)

### C. The Intervention of Biros and Other Prisoners and this Court's Previous Preliminary Injunction Proceedings.

On September 3, 2009, defendants filed their first motion for summary judgment. (Doc. 534.) In it, they set forth their depiction of the intervention of all other plaintiffs to this action. Defendants reincorporate by reference as if fully rewritten all portions of Section II.B of that motion as if fully rewritten here. (*See* Defendants' MSJ, Doc. 534, p. 7-8.)

However, defendants note certain events that occurred after the filing of their first motion for summary judgment. Namely, on September 17, 2009, following the postponement of the execution of Romell Broom, the Court issued an order (Document 553) granting plaintiffs' motion to reopen discovery and to amend the schedule to provide for the filing of amended dispositive motions. In the meantime, the United States Court of Appeals for the Sixth Circuit stayed the execution of Lawrence Reynolds, another capitally-sentenced prisoner who has challenged his execution by Ohio's "three-drug" protocol, and whose complaint had been dismissed by this Court as time barred. *See Reynolds v. Strickland*, 2009 WL 3166083 (6th Cir. Oct. 5, 2009).

On October 19, 2009, after it became apparent that further factual development could be necessary as a result of the postponement of Broom's execution, and in light of the possibility that defendants could alter their execution procedures in light of the postponement of Broom's execution, the Court issued an order (Document 590) again staying the December 8, 2009 execution of Kenneth Biros, and rescheduling the trial date. However, in its order, the Court recognized the possibility that the stay of Biros' execution could be vacated, in the event changes in defendants' execution procedures rendered Biros' constitutional challenges to the "three-drug protocol" moot.

### D. The Changes to Ohio's Execution Procedures

On October 23, 2009, defendants notified the Court of their consideration of possible changes to defendants' procedures for the execution of condemned prisoners. Effective on November 30, 2009, Terry Collins, the Director of the Ohio Department of Rehabilitation and Correction, has directed changes in the procedures used to carry out the execution of condemned prisoners. The changes include the discontinuation of the use of pancuronium bromide and potassium chloride in the execution process. The altered execution procedures provide, as alternative methods, the intravenous administration of five (5) grams of thiopental sodium; and the intramuscular administration of ten (10) milligrams ("mg") of midazolam and forty (40) mg of hydromorphone. The alternative procedures are described in detail in the attached affidavit of Director Collins. (Ex. A, Collins Affidavit.) The altered procedures will be available for use in the execution of Plaintiff Kenneth Biros, should his execution proceed on December 8, 2009.

## II. Defendants are entitled to judgment as a matter of law.

### A. The Court has jurisdiction to address the merits of this case.

In light of an interlocutory appeal, (Notice, Doc. 596), filed in regards to the Court's Order issued on October 19, 2009, (Doc. 590), it is appropriate to confirm this Court's continuing jurisdiction in this matter. Although the filing of a timely notice of appeal in the district court normally divests that court of further jurisdiction, an appeal from an interlocutory order granting or denying preliminary injunctive relief does not strip the district court of jurisdiction to proceed with the action on the merits. *Ex parte National Enameling & Stamping Co.*, 201 U.S. 156, 162, 26 S. Ct. 404, 50 L. Ed. 707 (1906); *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) (district court may proceed with action on the merits where order denying preliminary injunction appealed). Hence, this Court may address the instant motion that goes to the merits of plaintiffs' claims.

### B. Defendants have negated all of Plaintiffs' claims.

In the instant case, the plaintiffs allege that their executions by lethal injection will subject them to cruel and unusual punishment and deprive them of due process in violation of their rights under the Eighth and Fourteenth Amendments. Some of the plaintiffs also allege that Ohio's execution procedures deprive them of the "unfettered right" to have their counsel present during their executions, and of a statutorily created "property interest" in a totally painless execution. Defendants respectfully submit that they are entitled to judgment as a matter of law. First, the recent changes to Ohio's execution procedures render moot plaintiffs' claims that defendants' use of a so-called "three-drug protocol" to execute them will subject them to a substantial risk of severe pain. Defendants' new procedures call for either the intravenous administration of a single, massive dose of thiopental sodium -- a method actually proposed by plaintiffs -- or the intramuscular administration of two other anesthetic drugs. In any case, defendants represent that to execute plaintiffs, there will be no use of pancuronium bromide and potassium chloride -- which is the core of plaintiffs' constitutional challenges. Second, for reasons previously explained by defendants, and reiterated here, the claim that plaintiffs are entitled to counsel throughout the execution process and the claim based upon the "property interest" theory, as a matter of law, do not state cognizable grounds for relief. Accordingly, as fully explained *infra*, the instant motion for summary judgment should be granted.

### C. Plaintiffs' challenges to defendants' previous "three-drug protocol" are moot.

Summary judgment is proper only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A district court may properly grant a motion for summary judgment based on the grounds of lack of standing or mootness. *See Ailor v. City of Maynardville*, 368 F. 3d 587 (6th Cir. 2004). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in

the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Voluntary cessation of allegedly illegal conduct will render a case moot if it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *City of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979), citing *United States v. W.T. Grant, Co.*, 345 U.S. 629, 633 (1953) and *DeFunis v. Odegaard*, 416 U.S. 312 (1974) (internal quotation marks omitted).

It is readily apparent here that the recent changes to defendants' execution procedures have rendered moot plaintiffs' constitutional challenges to the "three-drug protocol" previously used by defendants to execute condemned prisoners. The issues presented by plaintiffs' complaints stem from the alleged risk of severe pain which could be caused by the use of pancuronium bromide and potassium chloride, the second and third drugs in the so-called "three-drug protocol," in the event that the first drug, thiopental sodium, is not properly administered. In view of the new procedures' elimination of the second and third drugs, the issues presented in plaintiffs' suits are no longer actionable. Indeed, defendants' intent to administer a five (5) gram does of thiopental sodium, and to eliminate the second and third drugs, corresponds to the relief actually requested by the plaintiffs.

Moreover, there is *no* possibility here that the allegedly unconstitutional conduct will reoccur, or that there is any lingering effects of previous allegedly unconstitutional conduct. There is absolutely no reason to believe that defendants will reinstate the previous "three-drug protocol" if the plaintiffs' suits were dismissed. And, more importantly, if defendants execute plaintiffs using the revised procedures, defendants cannot "go back to their old ways" and execute plaintiffs using the prior procedures. *See DeFunis v. Odegaar*, *supra*, 416 U.S. at 320 (student's challenge to admissions policy was moot because student was admitted during the litigation and would be permitted to graduate regardless of the outcome of the suit).

Finally, the gist of plaintiffs' claims is the risk of *future* harm, e.g., the severe pain they would suffer during their executions in the event of a failure to administer effectively the first drug in the "three-drug protocol." As stated, pancuronium bromide and potassium chloride no longer will be used in Ohio's lethal injection process. Thus, there is no issue here of remedying the effects of prior allegedly unconstitutional acts. In sum, plaintiffs' constitutional challenges to defendants' previous "three-drug protocol" are moot.

> **D.  The claims that plaintiffs have been deprived of rights to "unfettered" presence of counsel during their execution and to a "property interest" in painless execution on their face fail to state legal grounds for relief**.

Plaintiffs Bethel, Elmore, Jackson, and Ketterer allege that Ohio's procedures deny them "the unfettered right" to have counsel present to witness their executions and to represent their interests. The above plaintiffs further aver that Ohio's procedures violate their rights under the governing Ohio statutes to an execution without a risk of unnecessary pain, and that this is tantamount to a "property interest," the deprivation of which violates their Fourteenth Amendment due process rights. In support of the latter claim, plaintiffs rely on the decision of an Ohio trial judge construing the statutes in question to confer such rights upon condemned inmates. As explained below, plaintiffs' novel claims are insufficient as a matter of law to sustain any relief.

It has been the law for over a hundred years that a condemned prisoner has no rights under the Due Process Clause regarding the number and character of those who may witness his execution, and that the state's control over such matters "are regulations which the legislature, in its wisdom, and for the public good, can legally prescribe." *Holden v. Minnesota*, 137 U.S. 483 (1890). Here, these plaintiffs merely attempt to reassert a theory of recovery which has long been decided against their claim, which alone justifies the dismissal of this claim.

Also, the Supreme Court of the United States has held that the Eighth Amendment, "which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions,"

-6-

serves as the primary source of substantive protection to convicted prisoners. *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  Here, these plaintiffs are attempting to obtain relief regarding the conditions surrounding their punishment by relying upon due process-based theories.  The Eighth Amendment provides their forum for relief, if they have any, but *Holden, supra,* already holds they do not.

Furthermore, these plaintiffs are attempting to obviate the most basic elements of a civil rights claim raised under 42 U.S.C. § 1983.  To present a claim under 42 U.S.C. § 1983, a plaintiff must allege and prove that (1) a defendant acted under color of state law and (2) the defendant's act violated plaintiff's rights protected by federal law, either the federal constitution or the laws of the United States.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  "The plain language of section 1983, interpreted and underscored by the Supreme Court in *Maine v. Thiboutot*, 448 U.S. 1, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980), solely supports causes of action based upon violations, under the color of state law, of federal statutory law or constitutional rights.  Section 1983 does not provide a cause of action for violations of state statutes." *Been v. Universal Health System*, 371 F.3d 165, 174 (3rd Cir. 2004).  Thus, to the extent these plaintiffs challenge Ohio's lethal injection procedures based upon Ohio's statutes, their claims must fail as raised under 42 U.S.C. § 1983.

Even more reasons support the denial of the instant claim.  Viewed in light of the above clearly established law, plaintiffs' claims are insufficient as a matter of law to sustain relief.  No decision of the Supreme Court of the United States or a circuit court of appeals has ever held, to the defendants' knowledge, that a condemned inmate has an "unfettered right" to have his counsel witness his execution.  Moreover, plaintiffs aver no facts from which it may be reasonably found that defendants have unreasonably restricted their access to counsel, up to and including the moment of execution.  It is indisputable that plaintiffs may choose to have counsel witness their

executions. As noted previously, Ohio's procedures provide for lines of communication between the execution chamber and responsible government officials. Plaintiffs aver no facts from which it could be reasonably found that defendants would restrict counsel's access to those permitted lines of communication in the event that communication between the inmate and his counsel were necessary for the purpose of counsel's representation in an on-going proceeding with respect to which the prisoner enjoyed a constitutional right to counsel's assistance. Simply put, when the last appellate effort is exhausted, any established right to counsel terminates. Plaintiffs submitted no basis upon which to conclude that this right persists after appellate efforts are exhausted.

With respect to plaintiffs' remaining claim, plaintiffs' substantive rights regarding the punishment they receive from the state are those guaranteed by the Eighth Amendment. *Whitley v. Albers, supra.* To the extent that they seek relief under Section 1983 based on the decision of a state trial judge that Ohio's procedures violate Ohio law, plaintiffs as a matter of law have not alleged a claim upon which relief may be granted. *Been v. Universal Health System, supra.*

### III. Conclusion and Request for Relief

Defendants ask the Court to set an expedited briefing schedule. They ask that any opposition be filed no later than November 20, 2009. They ask that any Reply be due November 24, 2009.

For the reasons set forth above, defendants have shown that they are entitled as a matter of law to final judgment in their favor. Accordingly, defendants respectfully request that the Court grant the instant motion for summary judgment.

**Respectfully submitted,**

**RICHARD CORDRAY**
**Ohio Attorney General**

*s/ Charles L. Wille*
CHARLES L. WILLE* (0056444)
Principal Assistant Attorney General
*Lead Counsel*

*s/ J. Eric Holloway*
J. ERIC HOLLOWAY (0063857)
Assistant Attorney General

Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)
Email: charles.wille@ohioattorneygeneral.gov
Eric.Holloway@OhioAttorneyGeneral.gov
Counsel for Defendants

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been forwarded to counsel for plaintiffs on this 13th day of November, 2009, via the court's electronic filing system. A copy of this filing will be served on all parties and counsel for parties through the Court's ECF system.

*s/ Charles L. Wille*
**CHARLES L. WILLE (0056444)**
**Principal Assistant Attorney General**