IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

RICHARD COOEY, et al.,

Plaintiff-Intervenors,

v.

TED STRICKLAND, Governor, et al.

Defendants.

Case No. 2:04cv1156

Judge Frost

Magistrate Judge Abel

---

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO BIROS' MOTION TO AMEND COMPLAINT**

---

Respectfully submitted,

RICHARD CORDRAY
Ohio Attorney General

CHARLES L. WILLE* (0056444)
Principal Assistant Attorney General
   *Lead Counsel
Criminal Justice Section, Capital Crimes Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)
Email: charles.wille@ohioattorneygeneral.gov

COUNSEL FOR DEFENDANTS

I.      **Statement of the Case and Facts**

A.      **Cooey's Lawsuit.**

In a § 1983 complaint filed on June 10, 2004, inmate Richard Cooey alleged that the defendants would violate his Eighth Amendment rights by implementing a lethal injection protocol that could cause him to endure cruel and unusual punishment during the course of his otherwise lawful execution.  On January 4, 2005, the defendants moved to dismiss the complaint, arguing, among other things, that Cooey's suit was barred by the two-year statute of limitations for suits under § 1983.   On March 28, 2005, this Court denied the defendants' motion but granted them permission to pursue an interlocutory appeal.   On March 2, 2007, the Sixth Circuit issued an opinion reversing this Court's decision and ordered that Cooey's complaint be dismissed as time-barred.  The Sixth Circuit subsequently denied Cooey's petition for rehearing *en banc*, but stayed the mandate, pending the filing and disposition of a petition for a writ of certiorari.  On April 21, 2008, the Supreme Court of the United States denied Cooey's petition. *See Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007), cert. denied, __ U.S. __, 128 S. Ct. 2047 (2008).  Cooey then filed a second complaint under § 1983 in which he again alleged that his execution by lethal injection would violate his constitutional rights.  The Court dismissed the complaint upon defendants' motion and that decision was upheld by the Sixth Circuit.  *See Cooey v. Strickland*, 544 F.3d 588 (6th Cir. 2008).  On October 14, 2008, Cooey was executed by lethal injection.

B.      **The Intervention of Biros and Other Prisoners and this Court's Previous Preliminary Injunction Proceedings.**

Subsequent to the filing of Cooey's suit, the Court granted motions by Plaintiff Kenneth Biros and other condemned prisoners to intervene in the instant case.  *See* Complaints of Plaintiff Intervenors (Documents 125, 127, 209, 228, 229, 231, 431, 432, 433 and 434).  On December

21, 2006, the Court issued an order (Document 151) preliminarily enjoining Biros' execution. On March 23 through March 27, 2009, the Court convened an evidentiary hearing concerning the continuation of the preliminary injunction previously issued on Biros' behalf. *See* Minute Entries (Documents 465, 466, 467, 468 and 469). On April 21, 2009, the Court issued an opinion and order in which it vacated the preliminary injunction. In so holding, the Court found that Biros failed to show a substantial likelihood that he would prevail on his claim that his execution by lethal injection would violate the Eighth Amendment. However, the Court left open the possibility that Biros could substantiate his claim. *See* Opinion and Order Vacating Injunction (Document 471).

On June 1, 2009, consistent with the scheduling order issued by the Court, defendants filed answers to the complaints of Biros and the other prisoners. *See* Defendants' Answers (Documents 492, 493, 494, 495, 496, 497, 498, 499, 500 and 501). On June 23, 2009, the Court issued a preliminary scheduling order setting forth dates for the conduct of discovery, the filing of motions and trial on the merits. *See* Order (Document 512). On September 17, 2009, following the postponement of the execution of Romell Broom, the Court issued an order (Document 553) granting plaintiffs' motion to reopen discovery and to amend the schedule to provide for the filing of amended dispositive motions. In the meantime, the United States Court of Appeals for the Sixth Circuit stayed the execution of Lawrence Reynolds, another capitally-sentenced prisoner who has challenged his execution by Ohio's "three-drug" protocol, and whose complaint had been dismissed by this Court as time barred. *See Reynolds v. Strickland*, 2009 WL 3166083 (6th Cir. Oct. 5, 2009). On October 19, 2009, after it became apparent that further factual development could be necessary as a result the postponement of Broom's execution, and in light of the possibility that defendants could alter their execution procedures in light of the

postponement of Broom's execution, the Court issued an order (Document 590) again staying the December 8, 2009 execution of Kenneth Biros, and rescheduling the trial date.  However, in its order, the Court recognized the possibility that the stay of Biros' execution could be vacated, in the event changes in defendants' execution procedures rendered Biros' constitutional challenges to the "three-drug protocol" moot.

C.     The Changes to Ohio's Execution Procedures and Subsequent Developments

On October 23, 2009, defendants notified the Court of their consideration of possible changes to defendants' procedures for the execution of condemned prisoners.  On November 13, 2009, defendants notified the Court and plaintiffs of changes to defendants' execution procedures, effective November 30, 2009, instituted by Terry Collins, the Director of the Ohio Department of Rehabilitation and Correction.  The changes include the discontinuation of the use of pancuronium bromide and potassium chloride in the execution process.  The altered execution procedures provide, as alternative methods, the intravenous administration of 5 grams of thiopental sodium; and the intramuscular administration of 10 milligrams ("mg") of midazolam and 40 mg of hydromorphone.  Also on November 13, 2009, defendants filed with the district court a motion for summary dismissal of the complaints of Biros and the other plaintiffs on the ground of mootness.  (Document 601.)  Defendants also requested an expedited briefing schedule.  (Id.)  The Court immediately denied the request for expedited briefing.  (Doc. 602.)  Defendants then argued before the Sixth Circuit, in conjunction with defendants' motion to vacate the stay, that Biros' suit was rendered moot by the changes in the State's execution procedures.

On November 18, 2009, the Sixth Circuit ordered counsel for Biros to file a memorandum in reply to defendants' arguments that the suit was moot.  On November 20, 2009, Biros' attorney filed a memorandum in reply.  On November 25, 2009, the Sixth Circuit issued an opinion and

order vacating the stay issued by this Court.  The Sixth Circuit held that the stay was issued based on

grounds that were rendered moot by the changes in execution procedures instituted by defendants,

but that Biros was not precluded from filing a new suit to set forth any constitutional challenges he

may have to the changed procedures.  *See Biros v. Strickland*, __ F.3d __ (6th Cir. 2009), 2009 U.S.

App. LEXIS  25805.  On November 30, 2009, defendants provided to this Court and counsel for

Biros and the other plaintiffs a copy of defendants' revised written directive on execution

procedures.  (*See* Notice, Document 607.)

On December 3, 2009, Biros filed with this Court a motion for leave to file an amended

complaint.

**II.      Biros' motion for leave to amend should be denied, because his amended claims fail
          to state grounds upon which relief can be granted.**

"Although district courts 'should freely give leave [to a party to amend its pleadings]

when justice so requires,' Fed. R. Civ. P. 15(a)(2), district courts can exercise their discretion to

deny a motion for leave to amend based on "undue delay, bad faith or dilatory motive . . . [or]

*futility* of amendment."     *Pedreira v. Kentucky Baptist Homes for Children*, 579 F.3d 722, 729

(6th Cir. 2009), quoting *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (quoting

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added). A district court may deny leave to

amend a complaint, based on futility, where it is clear that the amended complaint cannot

withstand a motion to dismiss for failure to state claims upon which relief may be granted.

*Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006), citing *Yuhasz v. Brush Wellman, Inc*., 341

F.3d 559, 569 (6th Cir. 2003) (citing *Foman v. Davis*, *supra*).

In a motion to dismiss, well-pleaded allegations to the complaint are taken as true and are

construed in the light most favorable to the nonmoving party.  *Westlake v. Lucas*, 537 F.2d 857,

858 (6th Cir. 1976).   However, the Court does not have to assume allegations exist which the

Plaintiff has not presented.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Further, the Court does

not have to accept as true conclusions of law or unwarranted inferences of fact.  *Kugler v.*

*Helfant*, 421 U.S. 117, 125-25 n.5 (1976); *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th

Cir. 1971).  A plaintiff must do more than recite elements of a cause of action, or provide labels

and conclusions, to sustain a complaint in the face of a motion to dismiss.  The Supreme Court of

the United States has clarified the dismissal standard in two companion cases, *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1948-50

(2009).   The Sixth Circuit has explained and applied the *Twombly-Iqbal* standard as follows:

> Plaintiff argues that the district court erred in granting defendants' motion
> to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  We
> review *de novo* the district court's grant of defendants' Rule 12(b)(6) motion.
> *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008). In
> *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929
> (2007), the Supreme Court explained that "a plaintiff's obligation to provide the
> 'grounds' of his 'entitle[ment] to relief' requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of action will
> not do[.] Factual allegations must be enough to raise a right to relief above the
> speculative level . . . ." *Id.* at 555 (internal citations omitted). The Supreme Court
> recently clarified in *Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1948-50, 173
> L. Ed. 2d 868 (2009) that:
>
>> The pleading standard Rule 8 announces does not require "detailed
>> factual allegations," but it demands more than an unadorned, the-
>> defendant-unlawfully-harmed-me accusation. [*Twombly*, 550 U.S.
>> at 555] (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct.
>> 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and
>> conclusions" or "a formulaic recitation of the elements of a cause
>> of action will not do." [*Twombly*,]550 U.S., at 555. Nor does a
>> complaint suffice if it tenders "naked assertion[s]" devoid of
>> "further factual enhancement." *Id.*, at 557.
>>
>> **To survive a motion to dismiss, a complaint must
>> contain sufficient factual matter, accepted as true, to "state a
>> claim to relief that is plausible on its face." *Id.*, at 570. A claim
>> has facial plausibility when the plaintiff pleads factual content
>> that allows the court to draw the reasonable inference that the
>> defendant is liable for the misconduct alleged. *Id.*, at 556. The
>> plausibility     standard    is    not    akin    to    a    "probability**

> requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" – "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Howard v. City of Girard*, 2009 U.S. App. LEXIS 20895, p. 4-6 (6th Cir., Sept. 21, 2009), quoting *Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1948-50, 173 L. Ed. 2d 868 (2009) (emphasis added).

In his amended complaint, Biros essentially alleges four grounds for maintaining that the procedures the State intends to use to execute him will violate his constitutional rights: (1) he will be subject to severe pain should members of defendants' execution team make repeated attempts to establish IV access to administer the 5 gram dose of thiopental sodium intended to bring about his death; (2) the defendants' proposed alternate method of intramuscular injection of hydromorphone and midazolam is constitutionally prohibited because it was developed in a

"hurried and rushed" manner, is "untested," amounts to impermissible "human experimentation," and could result in unforeseen complications which could produce a "disturbing and offensive spectacle;"  (3) the proposed methods will deprive him of a state-created "liberty interest" in a quick and painless death;  and (4) the failure to allow him the opportunity to consult with counsel during the execution will deprive him of his constitutional right to the assistance of counsel under the Sixth and Fourteenth Amendments.   As explained below, under the applicable legal standard governing a motion to dismiss, as interpreted by the Supreme Court of the United States and the Sixth Circuit, the amended claims offered by Biros fail to state actionable grounds for relief, and, hence, his motion to for leave to amend should denied as futile.

> A.      **The alleged possibility that repeated attempts could be made to access Biros' veins does not state a cognizable ground for relief under the Eighth Amendment.**

Ohio's written directive for the conduct of executions, effective November 30, 2009, provides that a condemned prisoner may be executed by the intravenous administration of five grams of thiopental sodium.  The IV sites for the administration of the thiopental sodium shall be obtained by members of the execution team "with at least one year of experience as a certified medical assistant, phlebotomist, EMT, paramedic or military corpsman."  The qualified team members "shall make such number of attempts to establish IV sites as may be reasonable under the circumstances and shall take the amount of time necessary when pursuing this objective."  However, "[i]f, due to the passage of time, the team members question the feasibility of establishing two or even one site, the team will consult with the Warden.  The Warden, upon consultation with the Director and others as necessary, will make the decision whether or how long to undertake or continue efforts to establish an IV site.  The Director shall also consult with legal counsel, the office of the Governor or any others as necessary to discuss the issue and

alternatives.   If, after consultation, the Director and the Warden decide to proceed with an alternate method of execution, further attempts to establish an IV site may be discontinued." See Written Policy Directive 01-COM-11, Effective November 30, 2009 (Document 607), pages 7, 9.

Biros alleges in his amended complaint that defendants' procedures for obtaining IV access, as described above, pose a "substantial risk" that he will suffer unconstitutional pain and suffering.  He essentially claims that owing to the lack of adequate training and preparation, the members of the execution team tasked with this duty could make repeated, unsuccessful attempts to access his veins that will result in "severe" physical and psychological pain.  *See* Proposed Amended Complaint (Document 608), pages 12-16. Biros' allegations on their face fail to allege an actionable violation of the Eighth Amendment.

First, Biros avers no specific facts from which it may be found that Ohio employs insufficiently trained and qualified persons to obtain IV access.  The qualifications and training required by Ohio's written directive are consistent with the qualifications and training required by Kentucky, which have been found constitutionally sufficient by the Supreme Court of the United States.  *See Baze v. Rees*, 553 U.S. 35, 128 S. Ct. 1520, 1533 (2008) (citing with approval Kentucky's requirement that members of the IV team must have at least one year of professional experience as a certified medical assistant, phlebotomist, EMT, paramedic, or military corpsman).   It is significant that the Supreme Court found this requirement constitutionally sufficient in the context of Kentucky's "three-drug protocol," in which the improper administration of the first due to improper or ineffective IV access could result undeniably in the suffering of severe pain due to the administration of the second and third drugs.  In Ohio, the latter risk has been totally eliminated, because Ohio no longer administers the second and third

-8-

drugs.  Biros avers that severe pain could still result in the event that the IV sites "infiltrate" and the drug accumulates in the tissues.  But the Supreme Court in *Baze* found that the signs of such infiltration are obvious and could be detected even by lay observers.  *See Baze v. Rees*, 128 S. Ct. at 1534 (citing the testimony of three of the State's medical experts that identifying signs of infiltration would be "very obvious," even to the average person).

Broom reprises his earlier allegations that the State is constitutionally required to use doctors to administer the thiopental sodium and to monitor whether it has effectively anesthetized the prisoner.  That later concern is no longer at issue, as the second and third drugs are no longer used, and there is no evidence that administration of the thiopental sodium itself is painful.  Biros suggests that defendants are constitutionally required to employ "back up" means to administer the thiopental sodium intravenously, but the "Supreme Court approved" protocol of Kentucky provides for no such "back up" procedures.  Biros points to the difficulties in obtaining IV access during the executions of Romell Broom and Joseph Clark as evidence that the members of Ohio's executions team are ill trained.  However, this does not follow as a matter of logic or history.  As noted below, experienced and well-trained persons can and do encounter difficulties in obtaining IV sites.  Moreover, in over thirty executions, Ohio has encountered difficulties three times, and only on one occasion has it been necessary to postpone the execution.

Second, in any event, even if Ohio's procedures present the possibility that repeated attempts at IV access could occur, the resulting pain as a matter of law does not rise to the level of a violation of the Eighth Amendment.   Virtually all challenges to lethal injection under the Eighth Amendment by necessity include an allegation that the pain inflicted is both severe and wanton or gratuitous, as the core of the Eighth Amendment is the protection against "inhuman

and barbarous" punishment.  *Baze v. Rees*, 128 S. Ct. at 1530.   Obtaining access to the prisoner's veins and the relatively minor pain this entails are necessary components of the use of lethal injection as a method of execution.  Indeed, the problem of obtaining access to the veins of some prisoners has been long recognized as an inherent but *acceptable* risk in the use of lethal injection as a method of execution.  In *Heckler v. Chaney*, 470 U.S. 821 (1985), the Supreme Court considered a suit by several death- row prisoners,  brought in 1981, in which the prisoners sought regulation by the Food and Drug Administration to ensure that the States only use "safe and effective drugs" for their execution.  According to an amicus brief filed in their support, the prisoners claimed that "the technique of intravenous injection is fraught with dangers;" that it "is extremely difficult, if not impossible, to give lethal injections to persons with certain common physical conditions and abnormalities;" that "even people without abnormalities experience some constriction of the veins in anticipation of intravenous injections;" and it "is expected that prisoners facing execution will manifest similar reactions, magnifying the difficulty of achieving effective venipuncture." *Heckler v. Chaney*, 1983 U.S. Briefs 1878 (September 29, 1984).

Despite these inherent drawbacks, execution by lethal injection has universally been adopted by the states as the preferred method for executing condemned prisoners.  *See Baze v. Rees*, 128 S. Ct. at 1526-1527 (Noting that a total of 36 States have now adopted lethal injection as the exclusive or primary means of implementing the death penalty, making it by far the most prevalent method of execution in the United States);  *Gomez v. United States District Court*, 503 U.S. 653, 658 at n. 9 (1992) ("Notably, a memorandum prepared by California corrections officials correctly observes that 'lethal injection is considered to be more humane than other methods of execution (e. g., hanging, firing squad, lethal gas, or electrocution).'") (Stevens, J., Dissenting); *Chaney v. Heckler*, 718 F.3d 1174, 1197 (D.C. Circuit 1983) ("Moreover, it is not a

-10-

matter of pain versus no pain, but rather pain of one sort substituted for pain of another -- and in all likelihood substitution of a lesser pain, since that is the principal purpose of the lethal injection statutes.") (Scalia, Circuit Judge, Dissenting).

Moreover, there is ample authority that the pain associated with obtaining access to a prisoner's veins, to execute the prisoner by lethal injection, does not constitute the wanton infliction of severe pain or torture that is prohibited by the Eighth Amendment. *See Baze v. Rees*, 128 S. Ct. at 1534 (noting trial court's finding that one hour to establish both the primary and backup IVs was a length of time "not excessive but rather necessary").  "On the rare occasion when there is difficulty in locating a vein, more than a single needle insertion may be necessary. This is hardly the cruel and unusual punishment contemplated by the Eighth Amendment." *State v. Webb*, 252 Conn. 128, 143, 750 A.2d 448 (2000), quoting *Hill v. Lockhart*, 791 F. Supp. 1388, 1394 (E. D. Ark. 1992).  "[T]he critical Eighth Amendment concern is whether the prisoner has, in fact, been rendered unconscious  by the first drug, not whether there are 'irregular IV placements,' 'surgical incisions,' 'multiple needle punctures' or even 'subcutaneous  IV insertion,' errors alleged by Schwab to have occurred in actual executions."  *Schwab v. State*, 995 So. 2d 922, 927-928 (Fla. 2008).  "[Petitioner] now argues, however, that possible complications in the intravenous injection procedure might cause additional pain to the condemned prisoner. We conclude that that possibility, should it arise, does not make the means of inflicting death inherently cruel. Rather, it could be characterized as a possible discomfort or suffering necessary to a method of extinguishing life humanely."  *Ex Parte Granviel*, 561 S. W. 2d 503, 510 (Tex. 1978).

In sum, the alleged possibility that repeated attempts could be made to access Biros' veins does not state a cognizable ground for relief under the Eighth Amendment.

**B.**      **Biros alleges no facts upon which it may be found that the defendants' adoption of the alternate method of intramuscular injection of hydromorphone and midazolam will result in severe pain or suffering that will violate the   Eight Amendment   or otherwise   violate Biros' constitutional rights.**

Biros essentially argues the defendants' proposed alternate method of intramuscular injection of hydromorphone and midazolam is constitutionally prohibited because it was developed in a "hurried and rushed" manner, is "untested," amounts to impermissible "human experimentation," and could result in unforeseen complications which could produce a "disturbing and offensive spectacle."   *See* Proposed Complaint (Document 608), pages 3, 12, 16, and 19.  As explained below, Biros' arguments are a classic example of averments that "do not permit the court to infer more than the mere possibility of misconduct," and that do not show "that the pleader is entitled to relief."   *Howard v. City of Girard*, *supra*;   *Ashcroft v. Iqbal*, *supra*.

First, Biros avers no facts from which it may be inferred that defendants' changes to the State's execution procedures were undertaken without sufficient time to render careful and considered judgments.  As noted by defendants in their filing of October 23, 2009 (Document 594), defendants undertook a careful, comprehensive review of a wide range of possible changes to the State's procedures, following the postponement of the execution of Romell Broom.  In addition, throughout this extensive litigation, defendants have employed  Dr. Mark Dershwitz, an expert who has extensive knowledge in the medical and scientific fields relevant to the use of lethal injection as a method of execution.  In the course of the litigation, Dr. Dershwitz has offered expert scientific and medical opinions regarding potential issues that could be raised in the course of any legal challenge to Ohio's revised procedures.  A copy of an affidavit which details his expert opinions is attached.

Second, the proposed alternate method of intramuscular injection can not be deemed

unconstitutional or impermissibly experimental" because it has not been utilized previously.  As

the court observed in *Ex Parte Granviel*, *supra*:

> The fact that [lethal injection] is new and innovative would not, however, make it
> cruel and unusual. What is cruel and unusual "is not fastened to the obsolete but
> may acquire meaning as public opinion becomes enlightened by a humane
> justice" and "must draw its meaning from the evolving standards of decency that
> mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 78 S. Ct.
> 590, 2 L. Ed. 2d 630 (1958). *See also Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct.
> 285, 290, 50 L. Ed. 2d 251, 258-259 (1976).
>
>> "When . . . the means adopted (to administer the death) are chosen
>> with . . . intent and are devised for the purpose of reaching the end
>> proposed as swiftly and painlessly as possible . . . they are not
>> forbidden by the constitution, although they should be discoveries
>> of recent science, and never should have been heard of before . . .
>> the word "unusual' . . . cannot be taken so broadly as to prohibit
>> every humane improvement not previously known . . . ." *In re
>> Storti*, 178 Mass. 549, 60 N.E. 210, 211, 52 L.R.A. 520 (1901).
>
> In 9 ST. MARY'S LAW JOURNAL, Statute Note, "Capital Punishment Texas
> Statutes Amended to Provide for Execution by Intravenous Injection of a Lethal
> Substance," 359 (1977), an excellent note on the 1977 amendment to Article
> 43.14, supra, it is stated at p. 363:
>
>> "Although intravenous injection of a lethal substance has never
>> been authorized as a means of execution in the United States, it
>> does not appear that this method will be deemed violative of the
>> eighth amendment merely because it is new and unusual. Previous
>> changes in the mode of execution have been evaluated by an
>> "evolving standard of decency' in light of public opinion and social
>> progress. So long as the manner of execution is not deemed
>> inhumane and barbarous, the fact that it has never been used before
>> does not make it "unusual' as forbidden by the Constitution."

*In re Granviel*, 561 S.W. 2d at 509-510.

Third, Biros' allegations of unforeseen complications are wholly speculative.  Biros avers

no medical or scientific basis for his allegations that there is a substantial risk that the alternate

drugs administered in the dosages required will have the effects or complications he describes.

-13-

Biros' sole reference to medical or scientific opinion is to an article co-authored by defendants' expert.  As stated in his affidavit, in Dr. Dershwitz' opinion, intramuscular administration of the alternate drugs as required by Ohio's written directive will result in suppression of breathing and ultimately death.  Although the peak pharmacological effect will occur in about twenty to thirty minutes, it is likely that the prisoner will have stopped breathing prior to that point.  After about five minutes of no oxygen delivery, irreversible heart and brain damage will result, and death will occur a few minutes later.  Dr. Dershwitz has carefully studied the relative advantages and disadvantages of both alternative methods used in Ohio's revised protocol.  Although he does not explicitly address the possible complications averred by Biros, Dr. Dershwitz states that both hyrdromorphone and midazolam are administered by the intramuscular route in clinical situations in which intramuscular injection is appropriate.  He opines  that intramuscular injection will result in a degree of pain similar to that experienced following the intramuscular injection of an antibiotic or a vacine.

In sum, Biros alleges no facts upon which it may be found that the defendants' adoption of the alternate method of intramuscular injection of hydromorphone and midazolam will result in a degree of pain or suffering that violates the Eighth Amendment or otherwise violate his constitutional rights.

**C.      Biros' remaining claims fail to state actionable grounds for relief.**

It has been the law for over a hundred years that a condemned prisoner has no rights under the Due Process Clause regarding the number and character of those who may witness his execution, and that the state's control over such matters "are regulations which the legislature, in its wisdom, and for the public good, can legally prescribe."   *Holden v. Minnesota*, 137 U.S. 483 (1890).   Moreover, "The plain language of section 1983, interpreted and underscored by the

Supreme Court in *Maine v. Thiboutot*, 448 U.S. 1, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980), solely supports causes of action based upon violations, under the color of state law, of federal statutory law or constitutional rights. Section 1983 does not provide a cause of action for violations of state statutes." *Been v. Universal Health System*, 371 F.3d 165, 174 (3rd Cir. 2004). Finally, the Supreme Court of the United States has held that the Eighth Amendment, "which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions," serves as the primary source of substantive protection to convicted prisoners. *Whitley v. Albers*, 475 U.S. 312, 327 (1986).

Viewed in light of the above clearly established law, Biros' remaining claims are insufficient as a matter of law to sustain relief. No decision of the Supreme Court of the United States or a circuit court of appeals has ever held, to the defendants' knowledge, that a condemned inmate has an "unfettered right" to have his counsel witness his execution. As Ohio's procedures provide for lines of communication between the execution chamber and responsible government officials. Biros avers no facts from which it could be reasonably found that defendants would restrict counsel's access to those lines of communication in the event that communication between the inmate and his counsel was necessary for the purpose of counsel's representation  in an on-going proceeding with respect to which the prisoner enjoyed a constitutional  right to counsel's assistance. With respect to Biros' remaining claim, Biros' substantive rights regarding the punishment he receives from the state are those guaranteed by the Eighth Amendment. *Whitley v. Albers*, *supra*. To the extent that he seeks relief under Section 1983 based on the decision of a state trial judge that Ohio's procedures violate Ohio law, Biros as a matter of law has not alleged a claim upon which relief may be granted. *Been v. Universal Health System, supra*.

-15-

**III.     Conclusion and Request for Relief**

For all the foregoing reasons, defendants have shown that Biros' amended complaint on its face fails to set forth actionable grounds for relief.   Accordingly, defendants respectfully request that the Court deny Biros' motion to amend his complaint.

Respectfully submitted,

**RICHARD CORDRAY**
**Ohio Attorney General**


s/ *Charles L. Wille*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**CHARLES L. WILLE\* (0056444)**
**Principal Assistant Attorney General**
  \**Lead Counsel*
Criminal Justice Section, Capital Crimes Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)
Email: charles.wille@ohioattorneygeneral.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to counsel for plaintiffs

on this 3rd day of December, 2009, via the court's electronic filing system.


s/ *Charles L. Wille*

**CHARLES L. WILLE (0056444)**
**Principal Assistant Attorney General**