# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RICHARD COOEY,**

    **Plaintiff,**

**DARRYL DURR,**

                                          **Case No. 2:04-cv-1156**
    **Intervenor Plaintiff,**         **JUDGE GREGORY L. FROST**
                                          **Magistrate Judge Mark R. Abel**

    **v.**

**TED STRICKLAND, et al.,**

    **Defendants.**

## OPINION AND ORDER

Richard Cooey, a state prisoner sentenced to death by the State of Ohio, is the original plaintiff in a civil rights action pending before this Court that challenges multiple facets of the lethal injection protocol used by the State of Ohio. This matter is before the Court upon the motion of Intervenor Plaintiff Darryl Durr for the appointment of an expert pursuant to *Harbison v. Bell*, 129 S.Ct. 1481 (2009). (Doc. # 713.) Also before the Court is Defendants' memorandum in opposition. (Doc. # 715.) For the following reasons, the Court finds Durr's motion not persuasive in regard to *Harbison*, but grants the requested funds on alternative grounds.

Durr asks the Court to appoint Dr. Mark Heath for the purpose of examining Durr's medical records and rendering an opinion on the effect that Durr's claimed allergy to general anesthetic might have on the administration of the lethal injection drugs by which the State intends to execute him. Citing *Cooey v. Strickland*, 589 F.3d 210 (6th Cir. 2009), Durr asserts that the Sixth Circuit has held–and this Court has recognized–that an inmate under sentence of

death seeking to challenge whether the State may administer its lethal injection protocol consistent with the Eighth Amendment's proscription against cruel and unusual punishment and seeking to obtain an injunction staying his execution on the basis of such a challenge, must advance "particularized arguments that would remove him from the broad scope of the Sixth Circuit's wholesale rejection of [previous] generalized arguments." (Doc. # 713, at 6 (quoting Doc. # 22, at 6).) Durr asserts that he may be able to do just that, but only with the assistance of Dr. Heath. Durr explains that he has asked Dr. Heath to render an opinion regarding whether or to what extent Durr's claimed allergy to general anesthetic might affect the administration of lethal injection drugs but that Dr. Heath needs to examine Durr's medical records in order to render any opinion. Durr asserts that he is indigent and unable to pay for Dr. Heath's services without an order by this Court appointing Dr. Heath.

Durr asserts that the Supreme Court's decision of *Harbison v. Bell*, 129 S.Ct. 1481 (2009) authorizes this Court to allow funds pursuant to 18 U.S.C. § 3599(f) for expert services that are reasonably necessary for counsel's representation of an indigent capital defendant. Durr reasons that Dr. Heath's services are reasonably necessary "in order to determine the effect that the lethal injection drugs will have on him and weigh the resulting risks of using those drugs on [Durr] given his medical history." (Doc. # 713, at 8.)

Defendants oppose Durr's motion in its entirety, arguing that Durr's reliance on *Harbison v. Bell* "is erroneous completely." (Doc. # 715, at 2.) Defendants assert that *Harbison* extends to authorize appointment of federally appointed counsel only to represent a capital prisoner in subsequent state clemency proceedings, not to represent such prisoners in civil actions against state officials or any proceedings unrelated to vacating the death sentence or

2

challenging the prisoner's competency.

The issue before the Court is whether 18 U.S.C. § 3599, as interpreted by the Supreme Court in *Harbison v. Bell*, authorizes the Court to appoint Dr. Heath to assist Durr in not only raising an Eighth Amendment challenge to the means by which the State intends to execute Durr but also obtaining a preliminary injunction staying his execution, scheduled for April 20, 2010. Section 3599(a)(2), 18 United States Code, entitles indigent capital defendants pursuing habeas corpus relief to the appointment of one or more attorneys, as well as the furnishing of other services. Section 3599(e) provides:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

18 U.S.C. § 3599(e). In *Harbison v. Bell*, the Supreme Court held that "§ 3599(e) authorizes federally appointed counsel represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Harbison*, 129 S.Ct. at 1491. The Supreme Court explained that "[u]nder a straightforward reading of the statute, subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Harbison*, 129 S.Ct. at 1486.

Concerning the furnishing of expert or other investigative services, 18 U.S.C. § 3599(f) provides in relevant part:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with

3

issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefore under subsection (g).

18 U.S.C. § 3599(f). Few cases exist defining what "reasonably necessary" means within the context of this statute.[1] "However, on the whole, the rulings appear very case-specific and the analyses fact-intensive." *Bradford v. Johnson*, 162 F.Supp.2d 578, 580 (N.D. Tex. 2001). It is within the district court's discretion to find that a petitioner has not demonstrated that funds are "reasonably necessary," and to deny a request for funding as a result, where the petitioner's request is based on "mere suspicion and surmise." *Patrick v. Johnson*, 48 F.Supp.2d 645, 647 (N.D. Tex. 1999); *see also Bell v. True*, 366 F.Supp.2d 403, 408 (W.D. Va. 2005) (denying request for funds where services would be duplicative and amount to a fishing expedition); *Delong v. Thompson*, 790 F.Supp. 594, 616-17 (E.D. Va. 1991) (denying request for funds where proposed investigation constituted a "fishing expedition"). In *Alley v. Bell*, 307 F.3d 380, 399 n.7 (6th Cir. 2002), the Court of Appeals for the Sixth Circuit affirmed the denial of a motion for funds for brain and genetic tests aimed at gathering additional evidence of mental impairment that counsel had failed to investigate because the petitioner had failed to demonstrate how the tests were relevant to the only inquiry before the district court–namely, whether the state courts had reasonably applied federal law in holding that trial counsel had not provided ineffective assistance. On the other hand, a district court should grant a request for funds as reasonably necessary when "a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance." *Foust v. Houk*, No. 1:06 CV 2625, 2008 WL 162786, at *4 (N.D. Ohio Jan. 15,

---

[1] Pursuant to the "USA PATRIOT Improvement and Reauthorization Act," the provisions of 21 U.S.C. § 848(q)(9) were replaced with identical provisions now set forth in 18 U.S.C. § 3599(f).

2008) (citations and internal quotation marks omitted).

The Court is more than satisfied that the funds that Durr seeks to retain Dr. Heath's services are "reasonably necessary" under any definition of that phrase. The precise question that the Court must answer, however, is whether *Harbison* should be read to entitle Durr to federally appointed expert services for the purpose of pursuing an Eighth Amendment challenge to the method by which the State intends to execute Durr. The Court is constrained to answer that question in the negative. Defendants correctly point out that the provisions of the statute at the heart of the Supreme Court's *Harbison* decision are available only to indigent capital defendants seeking to vacate or set aside a death sentence, challenge competency to be executed, or pursue executive clemency. As the Court noted above, 18 U.S.C. § 3599(a)(2) entitles an indigent capital defendant to the appointment of one or more attorneys and the furnishing of other services "[i]n any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence . . . ." The section that the Supreme Court examined in *Harbison*–18 U.S.C. § 3599(e)–defines the scope of federally appointed counsel's duties and the comprehensive list of available proceedings envisioned, set forth in its entirety above, does <u>not</u> include civil actions against state officials.

The Court is not insensitive to the constraints established by the Sixth Circuit, essentially requiring Durr to set forth individualized arguments unique to him establishing a strong likelihood that the method by which the State intends to execute him will violate his right under the Eighth Amendment not to be subjected to cruel and unusual punishment. This Court also recognizes the uphill battle that Durr faces in attempting to establish that he <u>might</u> well have such an individualized argument–namely, a claimed allergy to general anesthetic that may

interfere with the administration of the drugs by which the State intends to execute its death sentence against Durr.

Consequently, although the Court rejects the mechanism upon which Durr relies to obtain the funds he seeks, this Court turns to an alternative mechanism to grant the requested relief to Durr. General Order 05-1 established an Expense Reimbursement Fund for reimbursement of expenses incurred in cases in which counsel represents litigants who are proceeding *in forma pauperis*. Rather than denying Durr's motion outright and not advising counsel of this appropriate mechanism by which the funds can be obtained, this Court in its discretion approves the requested expenditure of funds pursuant to the authority recognized in General Order No. 05-1. Accepting the estimate proffered by Durr via the email communication of Dr. Heath and counsel for Durr, the Court caps the funding at five hours at the rate of $350.00 per hour for review of the medical records, preparation of a report, and any related testimony.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE