# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RICHARD COOEY, et al.,**

    Plaintiffs,

v.

**TED STRICKLAND, et al.,**

    Defendants.

Case No. 2:04-cv-1156
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Intervenor Plaintiff Darryl Durr's Motion for a Temporary Restraining Order or Preliminary Injunction (Doc. # 724), Defendants' memorandum in opposition (Doc. # 728), and Durr's reply memorandum (Doc. # 730). For the reasons that follow, this Court finds the motion not well taken.

### I. Background

Darryl Durr is an inmate on Ohio's death row who is set to be executed on April 20, 2010. On April 5, 2010, Durr filed a motion with this Court requesting the appointment of Dr. Mark Heath as an expert to review Durr's medical records and render an opinion on what effect, if any, Durr's asserted allergy to general anesthetic might have on the administration of the lethal injection drugs the State could use in his execution. (Doc. # 713.) In an April 7, 2010 Opinion and Order, this Court rejected the flawed basis for granting the request that Durr asserted in his motion–he relied on 18 U.S.C. § 3599 and *Harbison v. Bell*, 129 S.Ct. 1481 (2009)–but the Court then proceeded to approve the requested expenditure of funds for Heath pursuant to the authority

recognized in General Order No. 05-1.[1]  (Doc. # 721.)

On April 15, 2010, Durr filed a motion for injunctive relief to stay his execution.  (Doc. # 724.)  That same day, this Court then held a S. D. Ohio Civ. R. 65.1(a) informal preliminary conference by telephone, during which the parties agreed upon a briefing schedule related to the motion.  Durr's counsel indicated that Durr did not seek a hearing, the presentation of additional evidence beyond that sealed evidence filed in connection his motion, or oral argument.  The parties subsequently completed briefing on Durr's motion, which is ripe for disposition.[2]

## II.  Discussion

**A.  Standard Involved**

In considering whether injunctive relief staying Durr's execution is warranted, this Court must consider (1) whether Durr has demonstrated a strong likelihood of success on the merits; (2) whether Durr will suffer irreparable injury in the absence of equitable relief; (3) whether a stay would cause substantial harm to others; and (4) whether the public interest is best served by granting a stay.  *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009) (citing *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *Ne. Ohio Coal. for Homeless & Serv. Employees*

---

[1] Contrary to Defendants' characterization in their memorandum in opposition of this Court's action, the Court did not appoint Heath as an expert but simply directed Durr to the funding for reimbursement of Durr's own expert.

[2] The Court recognizes that time is of the essence and that a prompt decision by this Court is necessary in order to afford Durr time to pursue appellate review.  Accordingly, as in previous lethal injection orders, this Court again notes explicitly that a full account of the background facts and protocol details is contained within the record in this litigation and need not be set forth at length here.  The Court also directs the parties to the facts and the reasoning set forth in its prior decisions, which the Court incorporates by reference here.  *See, e.g.*, Doc. # 22 in 2:10-cv-27; Doc. # 39 in 2:10-cv-27; Doc. # 621 in 2:04-cv-1156.

*Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). As the Sixth Circuit has explained, " '[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.' " *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

**B. Analysis**

Durr incorrectly asserts in his briefing that this Court has denied *all* requests to stay executions filed in the captioned case and related lethal injection litigation. Guided by controlling precedent such as *Cooey (Biros) v. Strickland*, 589 F.3d 210 (6th Cir. 2009), however, this Court indeed denied such a recent motion for a temporary restraining order in a February 1, 2010 Opinion and Order, which the Court incorporates herein by reference. (Doc. # 22 in 2:10-cv-27.) The court of appeals subsequently affirmed that decision in a February 3, 2010 Order. (Doc. # 28 in 2:10-cv-27.) This Court again denied a motion seeking similar injunctive relief in February 24, 2010 Opinion and Order (Doc. # 39 in 2:10-cv-27), also incorporated herein by reference, and the Sixth Circuit similarly affirmed that decision in a March 5, 2010 Order (Doc. # 44 in 2:10-cv-27). In an effort to distinguish his situation from those inmates whose arguments for a stay failed, Durr asserts that he may be able to present particularized facts and arguments that remove him from the Sixth Circuit's rejection of those generalized arguments that have proven unsuccessful.

The crux of Durr's argument is that he may have an allergy to general anesthesia that could complicate his execution. In his briefing, Durr asserts (without a supporting affidavit or declaration) that "[a]fter the [attempted Rommell] Broom execution, counsel for Mr. Durr inquired of their client as to whether there were any intravenous issues that might cause a

3

problem in his upcoming execution. It was then that counsel learned that Mr. Durr was allergic to 'general anesthesia.' " (Doc. # 724, at 5.) This apparently led to Durr's request for Heath to examine his medical records and opine on what effect, if any, the purported allergy could have on his execution under either Plan A or Plan B of Ohio's execution protocol.

The date on which Durr's *counsel* first learned of the alleged allergy is of course irrelevant. What matters for purposes of considering injunctive relief is when *Durr* learned of the purported allergy and when he could and should have asserted the allergy as part of his case and as the basis for a stay of execution. Review of the medical records submitted with the briefing yields scant evidence of the important dates, but Durr's own fairly unsupported narrative as set forth in his briefing indicates that he had purportedly been informed of the alleged allergy in at least 2007, if not in June 2004. The June 2004 medical records related to Durr's dental surgery fail to present evidence that he had been informed of his alleged allergy; the 2007 records indicate recognition of the possible allergy. Such a timeline informs the request for a stay because Durr has waited too long to inquire into the allergy.

Durr asks this Court for "additional time to support his arguments concerning his allergy to general anesthesia and possible effects the lethal injection drugs may have on his execution." (Doc. # 724.) This belated request points to a serious flaw in his argument that he is entitled to a stay. Durr has failed to present sufficient evidence of an allergy that is likely to affect the execution process, which means that he has failed to demonstrate a likelihood of success on the merits. Instead, Durr presents this Court with an unproven allergy that might have an unknown effect on his execution and asks for time to fill in details that may or may not rise to the level of demonstrating a likelihood of success. Speculation is not evidence, however, and Durr has failed

4

both to pursue his potential grounds for particularization in a timely fashion and to make a sufficient showing warranting a stay.

The Court does not reach this decision lightly. This Court recognizes that, as Durr states in his reply memorandum, "he has offered as much evidence as he has at the moment." (Doc. # 730, at 2.) But cognizant of the law involved, this Court has long examined each stay request for the requisite facts supporting injunctive relief and the Sixth Circuit has repeatedly required such facts at the time the request is made. This proves problematic for Durr. For example, he argues that "[t]here is nothing in the November 30, 2009 execution protocol to deal with the circumstances of this case." (Doc. # 730, at 1.) There is nothing in the record before this Court, however, that demonstrates that whatever circumstances he presents constitute any irregular issues suggesting a *likely* problematic execution that would *likely* prove unconstitutional. Time and time again in his briefing Durr phrases generalized concerns of what *may* or *might* happen, targeting hypothetical crises, but he fails to provide specificity and probability–as well as evidence supporting his conjecture. It is not enough, as Durr does, to raise unsupported questions as to the protocol's sufficiency in relation to a general allergy. Durr must also provide a likelihood that he will prevail on the answers. This he has not done.

Defendants in contrast have attempted to provide this Court with a medical evaluation of Durr's apparent allergy and its possible effect on his execution. In an email opinion apparently sworn to over the telephone, Dr. Mark Dershwitz opines:

> From a medical standpoint, the phrase "allergy to general anesthetics" is meaningless and impossible because the class of general anesthetics contains numerous medications that are diverse both chemically and pharmacologically. In any event, it is extremely unlikely that even if a prisoner were to experience an allergic reaction to thiopental sodium, that reaction would cause any pain or discomfort whatsoever.

> After the thiopental causes unconsciousness, there can be no suffering. Furthermore, the rapidity of onset of the effect of thiopental to cause unconsciousness is *faster* than the rapidity of onset of the worst type of allergic reaction, anaphylaxis. Untreated anaphylaxis is commonly fatal by causing very low blood pressure and impaired breathing. Such effects are irrelevant in the context of an execution because they would occur after the inmate loses consciousness and because the intent is to bring about a rapid death.
>
> It is my understanding that Dr. Heath has expressed a concern about a possible allergic reaction to hydromorphone, a drug used in Ohio's "back up" procedure. It is my understanding that Mr. Durr's medical records indicate that he has been prescribed hydromorphone for pain relief in the past, and there is no indication that he experienced an allergic reaction.

(Doc. # 728-1, at 3.) Durr attempts to dismiss at least a portion of this opinion as "a very 'medical' response" and asserts that "[u]nfortunately, in the real world, not everything is as black and white as we would like it to be." (Doc. # 730, at 3.) Medical opinions must inform today's inquiry, however, and although additional or more complete information is always preferable, the law provides a test for injunctive relief that does not rest merely on what is possible but demands credit be afforded to what is likely. Moreover, it is insufficient to present excerpts of a response by Heath to Dershwitz merely in the briefing as Durr does in his reply memorandum. Such unsupported rebuttal does not rise to the level of sworn evidence.

Durr has not demonstrated a likelihood of success on the merits. He has failed to present any sufficiently distinguishing arguments, facts, or law warranting a different result here than in those instances in which this Court and the Sixth Circuit have denied injunctive relief to stay a scheduled execution. The Sixth Circuit has explained that in regard to the issue of whether injunctive relief should stay an execution date, "the absence of any meaningful chance of success on the merits suffices to resolve this matter." *Workman*, 486 F.3d at 911. Because this Court

6

has concluded that the first factor weighs against injunctive relief, the Court need not and does not discuss the remaining factors.

## III.  Conclusion

The Court **DENIES** Durr's motion for injunctive relief.  (Doc. # 724.)

**IT IS SO ORDERED.**

                                            /s/   Gregory L. Frost
                                          GREGORY L. FROST
                                          UNITED STATES DISTRICT JUDGE