# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**RICHARD COOEY, et al.,**

    **Plaintiffs,**        **Case No. 2:04-cv-1156**
                  **JUDGE GREGORY L. FROST**
   **v.**             **Magistrate Judge Mark R. Abel**

**TED STRICKLAND, et al.,**

    **Defendants.**

## OPINION AND ORDER

   This matter is before the Court for consideration of a motion to dismiss (Doc. # 652) filed by Defendants, a memorandum in opposition (Doc. # 667) filed by Plaintiff, Jerome Henderson, and a reply memorandum (Doc. # 686) filed by Defendants.  For the reasons that follow, this Court finds the motion well taken in part.

## I.  Background

   Plaintiff is one of numerous Ohio death-row inmates who are challenging the State's execution protocol and practices in this 42 U.S.C. § 1983 action.  Following Ohio's adoption of a new protocol and in consultation with the parties involved in this litigation, the Court permitted the filing of amended complaints.  Plaintiff filed his amended complaint on January 8, 2010.  (Doc. # 641.)  Defendants subsequently filed a motion to dismiss that pleading.[1]  (Doc. # 652.)  The parties have completed briefing on the motion, which is ripe for disposition.

---

   [1]  The moving defendants are Ted Strickland, Terry Collins, Phillip Kerns, and anonymous execution team members.  (Doc. # 641.)

## II.  Discussion

### A.  Standard Involved

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether the party asserting a claim has set forth a claim upon which the Court may grant relief.  This Court must construe the pleading in favor of the party asserting a claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Moreover, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.

To be considered plausible, a claim must be more than merely conceivable.  *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

2

### B.  Analysis

#### 1.  Claim One

Plaintiff asserts in Claim One that Ohio's lethal injection protocol and practices violates the ban on cruel and unusual punishment set forth in the Eighth Amendment.  Defendants argue that dismissal of Claim One is warranted because controlling precedent has foreclosed such a claim for relief.  Plaintiff disputes that the Sixth Circuit has addressed the merits of the claim as conclusively as Defendants argue.

During an in-court hearing and in a written decision, this Court has previously opined that "the Sixth Circuit has conclusively foreclosed nearly all of these challenges absent a distinguishable or particularized showing by an inmate."  *Reynolds (Brown) v. Strickland*, No. 2:10-cv-27, 2010 WL 518150, at *2 (S.D. Ohio Feb. 1, 2010) (citing Doc. # 639 in Case No. 2:04-cv-1156, 12/9/09 Hrg. Tr.).  Subsequent appellate precedent only serves to bolster that conclusion.  The end result is an unusual outcome in which this Court must hold that Plaintiff has failed to plead factual content that allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged.  This Court uses the word "unusual" because the Sixth Circuit initially resolved the issue by conclusively addressing the ultimate merits of claims even though the case was before them in only the preliminary context of the appeal of a denial of a motion for a temporary restraining order.  The court of appeals has since proceeded to adhere to the conclusive nature of its holding and has twice upheld this Court's determination that the issues in this litigation have already received an appellate answer.

It does not matter whether this Court agrees with today's mandated disposition of the claims before it or whether the Court recognizes the arguably atypical manner in which the

appellate resolution of the claims occurred. This Court again expresses no opinion on the correctness of the court of appeals's reasoning. *See Reynolds v. Strickland*, No. 2:10-cv-27, 2010 WL 518150, at *2 (S.D. Ohio Feb. 1, 2010) ("It does not matter . . . whether this Court agrees with all, part, or none of that decision."). What matter is that a string of appellate decisions have presented this Court with binding precedent that proves dispositive.

The essential starting point in the appellate disposition of Plaintiff's claims began with this Court's December 7, 2009 denial of a temporary restraining order for inmate Kenneth Biros in *Cooey v. Strickland*, No. 2:04-cv-1156, 2009 WL 4842393 (S.D. Ohio Dec. 7, 2009). That decision unfortunately turned in large part of the fact that Biros was unable to present evidence in support of his challenge to the newest version of Ohio's lethal injection protocol. Biros appealed, and on the same day on which this Court had filed its opinion, the Sixth Circuit issued an opinion affirming this Court. *Cooey (Biros) v. Strickland*, 589 F.3d 210 (6th Cir. 2009).

There is substantial debate between the parties over the effect of the court of appeals' opinion in *Biros*, but there is little left to dispute. Plaintiff emphasizes that the *Biros* matter was before the Sixth Circuit as an interlocutory appeal involving the denial of a temporary restraining order. Therefore, Plaintiff argues, this Court should not treat *Biros* as conclusive of his claims. This argument overlooks two things: what the court of appeals said in *Biros* and what it has said since.

In *Biros*, the Sixth Circuit addressed the same issues constituting Plaintiff's claims:

> Biros raises questions regarding the appropriateness of Ohio's protocol and indicates specific elements of that protocol that he alleges present a demonstrated risk of severe pain sufficient to rise to the level of cruel and unusual punishment. Biros does not challenge the use of the one-drug IV injection if properly administered, and indeed his medical expert praises Ohio's decision to abandon the three-drug injection. His allegations regarding the unconstitutionality of Ohio's

4

primary procedure-IV injection of thiopental sodium-therefore solely address the risk of improper administration of the drug. These challenged elements of the protocol can be fairly summarized as: (a) the undue risk of improper implementation of Ohio's protocol, leading to severe pain; (b) the employment of untrained and insufficiently competent medical personnel; (c) the lack of supervision of the execution process by a licensed physician; (d) the lack of a prescribed limit to the time allowed the execution team to search for accessible veins for IV administration; and (e) the lack of an explicit ban on the use of cut-down procedures for accessing veins as an alternative method to the preferred peripheral IV access. His challenge to Ohio's new back-up procedure is more substantive but less detailed: (a) the untested nature of the intramuscular procedure; (b) the slow-acting and unpredictable effect of that procedure; and (c) the existence of a more humane alternative to intramuscular injection.

*Cooey (Biros)*, 589 F.3d at 223. After summarizing the claims in this manner–which essentially summarizes Plaintiff's pleading *sub judice*–the court of appeals stated that "[t]he majority of the claims regarding the one-drug IV injection are foreclosed by [*Baze v. Rees*, 553 U.S. 35 (2008),] and its progeny." *Id.*

This statement is not qualified. The court of appeals did not say that Biros was unlikely to prevail on these claims because of *Baze* and related cases, a statement that would track the injunctive-relief context Plaintiff advocates. Rather, the Sixth Circuit specifically said that the case law *foreclosed* the claims, a dispositive recognition of a preclusive effect that meant that Biros and plaintiffs asserting the same claims simply could not succeed on those claims. In other words, a plaintiff asserting such foreclosed claims is asserting claims that are not plausible because a court can only grant relief on claims that are not foreclosed.

The court of appeals proceeded to address the substance of the foreclosed claims, using language that indicates far more than a preliminary assessment. For example, the Sixth Circuit noted that "[i]n *Baze*, the [Supreme] Court held that Eighth Amendment challenges to lethal injection protocols on the grounds that the protocol could be improperly administered are

insufficient to demonstrate a violation." *Cooey (Biros)*, 589 F.3d at 223. The court of appeals therefore concluded that, "[c]onsequently, Biros's general claim that the possibility of maladministration of the IV could lead to severe pain is without merit." *Id.* at 224. This holding encompasses the ultimate merits of a "general" claim of the sort Plaintiff asserts today and holds that the claim lacks any degree of merit. It is therefore not plausible and not a claim upon which this Court or any other district court in this Circuit could grant relief.

This Court has to credit the words the Sixth Circuit used. The Biros panel certainly knows the law and knew how to phrase its conclusions when they pertained to the injunctive relief standard. In the next line following the sweeping rejection of a general claim set forth above, for example, the court of appeals held that "[t]o demonstrate a likelihood of success on this ground, therefore, Biros must distinguish his maladministration claims from those rejected in *Baze*." *Id.* The appellate court emphasized this need for an individualized showing in a subsequent footnote. *Id.* at n.3. General maladministration claims are foreclosed, then, but specific or particularized maladministration claims remain possible. The Sixth Circuit conclusively disposed of the former while putting plaintiffs on notice that only the latter remain as a viable claim for relief.

In discussing whether even a series of mistakes could present a viable claim, the court of appeals went on to state that "[p]ermitting constitutional challenges to lethal injection protocols based on speculative injuries and the possibility of negligent administration is not only unsupported by Supreme Court precedent but is also beyond the scope of our judicial authority." *Id.* at 225. Describing this form of an Eighth Amendment challenge as "all but foreclosed," the Sixth Circuit rejected Biros' claim targeting a failure to implement improvements as "not

sufficient to demonstrate that a protocol without those improvements is unconstitutional." *Id.*
Again, the court of appeals did not speak in terms of a likelihood of success, but instead elected
to employ language targeting the sufficiency of the claim.

Similarly preclusive is the Sixth Circuit's disposition of Biros' challenge to the medical
personnel Ohio employs. The court of appeals held that Ohio's "requirements of training and
qualifications provide adequate supervision in the absence of physicians." *Id.* at 226 n.4.
Stating the point perhaps even more directly, the Sixth Circuit then stated that "Biros's claim
that Ohio's protocol is constitutionally deficient on the basis of poorly trained personnel or the
ceding of too much discretion to those personnel is therefore meritless." *Id.* Neither statement
indicates that Biros simply failed to demonstrate a likelihood of success that he would establish
the contrary. Rather, the appellate court provided an unequivocal conclusion that the claim itself
lacks merit, which means that it is not a plausible claim. Such a holding shuts the door on
another plaintiff's pursuit of the same claim.

Continuing its disposition of Biros' claims on their merits, the Sixth Circuit also held that
"[f]or similar reasons, we find that Biros's claim that a lack of proper supervision of the IV
injection by a physician constitutes an Eighth Amendment violation must also fail." *Id.* at 227.
In focusing not on the mere possibility of success on the claim but on the ultimate merits of the
claim, the court of appeals again provides a mandated outcome to a portion of today's analysis.
Having considered not only the facts alleged in Biros' pleading–factual allegation echoed by
Plaintiff here–but also relevant testimony, the Sixth Circuit concluded that "Biros cannot
demonstrate that Ohio's supervision procedures are unconstitutional." *Id.* This conclusion finds
the claim insufficient.

Equally conclusive is the Sixth Circuit's statement that "the training and qualifications of the medical personnel required by the protocol ensure that they can [determine when to move from Plan A to Plan B] competently." *Id.* This substantive determination on the merits led to the court of appeals' stating that "the assertion that the mere possibility of future improper administration of the lethal injection despite the training and safeguards is too 'attenuated' and 'speculative'–and certainly not intended–to constitute cruel and unusual punishment." *Id.* at 228. The "speculative" claim is therefore not "enough to raise a right to relief above the speculative level" as the Supreme Court has recognized Rule 12(b)(6) requires.[2] *Twombly*, 550 U.S. at 555.

Such appellate statements leave little doubt as to what the court of appeals meant in Biros when it stated that "*Baze* forecloses Biros's claims that Ohio's use of the one-drug IV injection are unconstitutional." *Cooey (Biros)*, 589 F.3d at 229. Foreclosed claims are of course not claims upon which this Court can grant relief. Instead, they are implausible claims asserted in contravention of Rule 12(b)(6).

This leaves the Plan B component of Plaintiff's cruel and unusual punishment argument in Claim One. Similar to its disposition of the Plan A arguments raised by Biros and now by Plaintiff, the Sixth Circuit has addressed and conclusively disposed of Plaintiff's concerns. The appellate court stated that the fact "[t]hat the [Plan B] procedure has never before been used does

---

[2] Moreover, to the extent that Plaintiff's amended complaint could be read to include to any degree the lack of a protocol ban on the use of cut-down procedures–a reading that is perhaps overly cautious–the Sixth Circuit has rejected such a claim, in part on the grounds that the court of appeals has previously approved use of the cut-down procedure as part of an execution protocol back-up plan. *Cooey (Biros)*, 589 F.3d at 228 (citing *Harbison v. Little*, 571 F.3d 531, 539 (6th Cir. 2009)).

not itself establish that the procedure is cruel and unusual." *Cooey (Biros)*, 589 F.3d at 229. This statement does not opine that no prior usage equals a failure to demonstrate a likelihood of success. The statement does indicate that no prior usage alone does not constitute the constitutional violation targeted in Claim One.

In regard to the actual drugs involved in Plan B, the Sixth Circuit considered the evidence before it as a result of the injunctive relief proceedings held in this Court and found that there was insufficient support for a substantial risk of severe pain or needless suffering. *Id.* at 230-32. Plaintiff has failed to plead factual allegations beyond the evidence upon which Biros relied, which leads to the conclusion that this Court could not grant relief on his claim. The Court recognizes Plaintiff's likely reaction to such a conclusion. Plaintiff may no doubt question how his claims, like Biros' claims, could be found meritless or unable to warrant relief based on no (or in the case of Biros, grossly incomplete) discovery. The Sixth Circuit also addressed that issue in *Biros*.

Noting Biros' desire for additional discovery, the Sixth Circuit nonetheless held that "additional time [would] not enhance Biros's likelihood of success on the merits." *Id.* at 233. Such a conclusion is logical for those claims the court of appeals held were meritless; if a claim itself is inherently without merit, there is no amount of discovery that can transform an invalid claim into a plausible claim. The Sixth Circuit went on, however, to set forth a rationale that resolved claims that were deemed insufficient without necessarily being labeled meritless. The appellate court explained:

> Biros's burden in demonstrating an Eighth Amendment violation is a "heavy" one, and *there is nothing in the record before us to indicate that additional testing and discovery will reveal a "substantial risk of severe pain" or contradict Dr. Dershwitz's testimony regarding the remoteness of a possibility of adverse side*

> *effects to the intramuscular procedure.*  Dr. Heath's concerns are without objective,
> concrete evidentiary support, as evidenced by his concession that adverse side effects
> are extremely unlikely to occur and, if they do at all, will do so for individualized,
> unforeseeable reasons.

*Id.* at 233 (emphasis added).  Thus, based on what the court of appeals knew, it had no reason to

believe that any other facts existed that potentially could lead to Biros succeeding on the merits

of his claims.

The Sixth Circuit was even more sweeping in its assessment of whether additional

discovery regarding the attempted execution of Rommell Broom *could* yield useful information,

explaining:

> Furthermore, Biros's assertions that time is needed to conduct further discovery
> regarding the halted Broom execution are unavailing.  The extensive depositions of
> Broom, members of his execution team, and other corrections personnel were part
> of the record before the district court and before us.  We have reviewed those
> depositions and conclude that further discovery regarding the Broom
> incident–including deposing Governor Strickland, who has declined
> questioning–would not bring to light evidence sufficient to enable Biros to
> demonstrate a likelihood of success on the merits of his Eighth Amendment claim
> based on the new protocol.

*Id.*  In other words, based on what it *already knew*, the Sixth Circuit *knew* that there was *nothing*

*that could be learned from additional discovery* that would be sufficient to change its collective

mind.

Having thus considered each of Biros' cruel and unusual punishment arguments, which

Plaintiff tracks in his amended pleading, the Sixth Circuit found that Biros had failed to

demonstrate a likelihood of success on his Eighth Amendment claim.  *Id.* at 233-34.  That

conclusion, grounded in the injunctive relief test, does not vitiate the reasoning and strict

language the court of appeals employed in reaching this ultimate conclusion.  Rather, as

Defendants argue, this Court must remain cognizant that claims held to be without merit or

10

claims predicated on asserted facts that do not present a violation obviously present an unlikelihood of success because they are ultimately implausible.  In other words, the Sixth Circuit's recognition of the proper injunctive relief test and phrasing of its holding in the language of that test does not narrow its broader analysis as Plaintiff suggests.  The court of appeals well knows the law involved and is fully capable of choosing its words with deliberate precision.  For example, there is a notable difference between saying a plaintiff lacks a likelihood of success on a claim and saying that the claim is meritless; the former leaves open a possibility of success, while the latter announces that the claim is in fact foreclosed.  To ignore the words the *Biros* panel used and the reasoning it employed would be to attribute to the panel a fundamental and wholly unlikely lack of understanding that would be unfounded.  Plaintiff's request that this Court do so and recharacterize the appellate court's reasoning and conclusions is not well taken.

*Biros* and both of the foregoing statements contained therein thus teach this Court that the factual allegations of Plaintiff's amended complaint, which mirror Biros' pleading, are themselves insufficient to establish a constitutional violation.  Additionally, pursuant to the controlling appellate rationale, these allegations and the evidence upon which they are based either do not suggest that more evidence exists or conclusively reveal that no evidence could exist to present a claim upon which this Court can grant relief.

Recognition of the effect of the Sixth Circuit's decision in *Biros* led this Court to its prior statement in a consolidated case that "the Sixth Circuit has conclusively foreclosed nearly all of these challenges absent a distinguishable or particularized showing by an inmate."  *Reynolds (Brown)*, 2010 WL 518150, at *2.  This Court was then unable to find that the inmate involved in

11

that decision, Mark Brown, had "set forth any particularized arguments that would remove him from the broad scope of the Sixth Circuit's wholesale rejection of his generalized arguments" and, accordingly, denied injunctive relief.  *Id.* at *3.  It is important to note that the factual allegations and claim in Brown's pleading mirror Plaintiff's pleading under consideration today; in fact, the first claim of each complaint is nearly word-for-word identical.  *Compare* Doc. # 16 ¶¶ 114-42 in Case No. 2:10-cv-27 *with* Doc. # 641 ¶¶ 126-51 in Case No. 2:04-cv-1156.

Brown did not prevail on appeal.  The Sixth Circuit's Order provided that "the panel affirms the district court for the reasons set forth in the district court opinion, *Reynolds (Brown) v. Strickland*, No. 2:10-cv-27 (S.D. Ohio Feb. 2, 2010), and in our recent opinion in *Cooey (Biros) v. Strickland*, 589 F.3d 210 (6th Cir. 2009)."  *Reynolds (Brown) v. Strickland*, 363 F. App'x 394, 394 (6th Cir. 2010).  This Court avoided for the most part characterizing the *Biros* decision as resolving the merits of Brown's claims.  The Court wanted the benefit of full briefing on whether claims had been foreclosed, an issue that this Court did not have to resolve to answer the injunctive relief motion then at issue.  Notably, however, the Court did suggest that Brown could only proceed under a particularized approach, and the court of appeals adopted that reasoning.

This Court then addressed a motion for injunctive relief filed by another inmate, Lawrence Reynolds.  In that decision, the Court adopted its *Brown* reasoning, citing to its prior Opinion and Order and *Cooey (Biros) v. Strickland*, 589 F.3d 210.  *Reynolds v. Strickland*, No. 2:10-cv-27, 2010 WL 696624, at *1 (S.D. Ohio Feb. 24, 2010).  This Court specifically noted that "Reynolds has failed to present any distinguishing arguments, facts, or law warranting a different result here."  *Id.*

Reynolds also unsuccessfully appealed.  *Reynolds v. Strickland*, 598 F.3d 300 (6th Cir. 2010).  Two judges joined the majority opinion, which expressed regret over the mandated decision they had to make, explaining:

> Reynolds now follows the exact same script as Brown.  He seeks a stay of his execution on the basis of the factual record developed in the *Biros* litigation, without any material addition.  We have great sympathy for Reynolds' position.  We fundamentally agree with Reynolds that our Court seriously mishandled the *Biros* litigation in the final days leading up to his execution.  Biros' original claim was not moot, *Cooey (Biros)*, 588 F.3d at 925-28 (Moore, J., dissenting from the denial of rehearing en banc), and he should have received an opportunity to litigate his challenge to Ohio's new lethal injection protocol to final adjudication but, instead, our Court engaged in a "classic rush-to-judgment."  *Cooey (Biros)*, 588 F.3d at 1124 (Griffin, J., dissenting from denial of rehearing en banc).  But, as wrong-headed as *Biros* might be, it is nevertheless the binding law of the Circuit on the factual record at issue in that litigation.  As that factual record is materially identical to the factual record in this case, except to the extent that Ohio may now point to two apparently successful executions using the new lethal injection protocol, we have no choice but to conclude that Reynolds has not met his burden of establishing entitlement to relief.  Thus, while others may take up the mantle of pressing the challenge to Ohio's new protocol, we must regretfully **DENY** Reynolds' motion to stay his execution.

*Id.* at 301-02.  The third panel member wrote only that "[w]hile I agree with much of the reasoning of the majority's opinion, particularly its conclusion that *Cooey (Biros) v. Strickland*, 589 F.3d 210 (6th Cir.2009), compels the denial of this stay motion, I must ultimately concur only in the judgment."  *Id.* at 302 (Sutton, J., concurring in judgment).  Notably, none of the appellate judges involved deemed the pleading involved and the evidence offered in support of that pleading to demonstrate a likelihood of success, much less a right to relief.  *Biros* and its rejection of the claims (and of additional discovery to support those claims) remained and remains controlling.

This chain of decisions leads to the conclusion that Biros mandates dismissal of Count One.  Because binding precedent teaches that Plaintiff has failed to assert a plausible claim or

plead factual content that allows this Court to draw the reasonable inference that Defendants are liable for the misconduct alleged, the Court **GRANTS** the motion to dismiss Claim One.

### 2. Claim Two

In Claim Two, Plaintiff asserts a Fourteenth Amendment Due Process claim predicated upon purported liberty, life, and property interests in a quick and painless execution. He avers that these interests arise from Ohio Revised Code § 2949.22(A), which provides that "a death sentence shall be executed by causing the application to the person, upon whom the sentence was imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death." Defendants move for dismissal on the grounds that precedent forecloses this claim, and they are correct.

In the consolidated case referenced in the preceding section, inmate Mark Brown had raised the § 2949.22(A) argument, which yet another inmate, Kenneth Biros, had also previously raised as part of the instant litigation. This Court rejected Brown's claim, relying on the Sixth Circuit's analysis in regard to Biros:

> Biros also claims that the planned execution will violate his right to a "quick and painless death." R. 610 at 9. He cites Ohio Revised Code § 2949.22(A), the statute that provides for a death caused by "a lethal injection of a drug . . . of sufficient dosage to quickly and painlessly cause death." But § 2949.22 creates no cause of action to enforce any right to a quick and painless death. *See State v. Rivera,* Nos. 08CA009426, 08CA009427, 2009 WL 806819, at *7 (Ohio Ct.App. Mar. 30, 2009) ("There is no 'action' for a quick and painless death" under Ohio Reg.Code Ann. § 2949.22(A).). We are not persuaded by Biros's assertion that § 2949.22 creates a federal right because the statute creates "liberty and property interests in a 'quick and painless execution' " protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. R. 610 at 9. Biros is unlikely to show that the reach of any such right extends beyond the incorporation of the Eighth Amendment. *Cf. Furman v. Georgia,* 408 U.S. 238, 359 n.141, 92 S.Ct. 2726, 33 L.Ed.2d 346 (Marshall, J ., concurring).

*Reynolds v. Strickland*, No. 2:10-cv-27, 2010 WL 518150, at *2 (S.D. Ohio Feb. 1, 2010)

14

(quoting *Cooey v. Strickland*, 589 F.3d 210, 234 (6th Cir. 2009)).  What is important for today's purposes is that this Court's holding was *not* that the evidence Brown presented fell short of demonstrating a substantial likelihood of success on the merits on his § 1983/§2949.22(A) claim. Rather, this Court's holding was that *the Sixth Circuit has conclusively held that, as a matter of law, § 2949.22(A) cannot provide a claim cognizable under § 1983*.  Brown was not entitled to injunctive relief because he could not prevail on a claim that was inherently invalid.  On appeal, the Sixth Circuit approved of this characterization of its prior *Biros* decision, stating as previously noted that "the panel affirms the district court for the reasons set forth in the district court opinion, *Reynolds (Brown) v. Strickland*, No. 2:10-cv-27 (S.D. Ohio Feb. 2, 2010), and in our recent opinion in *Cooey (Biros) v. Strickland*, 589 F.3d 210 (6th Cir. 2009)."  *Reynolds (Brown) v. Strickland*, 363 F. App'x 394, 394 (6th Cir. 2010).

Following the decision in regard to Brown, this Court addressed the validity of the same § 2949.22(A) claim as asserted by inmate Lawrence Reynolds.  *Reynolds v. Strickland*, No. 2:10-cv-27, 2010 WL 696624 (S.D. Ohio Feb. 24, 2010).  As noted above, this Court adopted its *Brown* reasoning, citing both its prior Opinion and Order and *Cooey (Biros) v. Strickland*, 589 F.3d 210.  *Id.* at *1.  Reynolds also appealed, and this appeal went to a slightly different panel of the Sixth Circuit than the panels responsible for *Cooey (Biros) v. Strickland*, 589 F.3d 210 (Siler, Gibbons, & Sutton, JJ.), and *Reynolds (Brown) v. Strickland*, 363 F. App'x 394 (Batchelder, C.J., Siler & Sutton, JJ.).  The panel for Reynolds also affirmed, without any panel member even mentioning the § 2949.22(A) claim in either the majority or concurring opinions.  *Reynolds v. Strickland*, 598 F.3d 300 (6th Cir. 2010) (Martin, Cole, & Sutton, JJ.).

The foregoing teaches that the Sixth Circuit has had multiple opportunities to recognize

15

that a plaintiff can predicate a § 1983 claim on § 2949.22(A). The court of appeals expressly rejected such recognition in the *Biros* appellate decision, adopted this Court's crediting that rejection in the *Brown* appellate decision, and affirmed this Court's adherence to that precedent without even mentioning the issue in the *Lawrence* appellate decision. In light of such controlling precedent, this Court can only conclude that Henderson has failed to present a plausible claim for relief in Claim Two. The Court therefore **GRANTS** the motion to dismiss Claim Two.

### 3. Claim Three

Defendants also move to dismiss Claim Three, in which Plaintiff asserts that the execution protocol denies him access to counsel in contravention of the Sixth Amendment. Plaintiff posits that he has a constitutional right to have counsel witness his execution and to represent his interests during what he describes as "the final, critical stage of a criminal proceeding." (Doc. # 641 ¶ 165.) He specifically objects to the fact that his counsel could only witness his execution if he named counsel as one of the three witnesses allotted to him under Ohio Revised Code § 2949.25(A)(5). Plaintiff also targets the lack of procedures that would enable him to communicate with counsel during the execution, that would ensure that attorney-client privilege be protected, and that would enable his counsel to be able to communicate with those responsible for the execution and the courts.

In their motion, Defendant argue that Plaintiff's amended complaint fails to cite any legal authority to support his claim. Citing primarily due process case law, Defendants argue that there is no " 'unfettered' right under the Sixth Amendment to counsel's presence as a witness at his execution." (Doc. # 652, at 10.) Plaintiff counters by arguing that Defendants' argument

16

limits the breadth of his claim and ignores fundamental constitutional considerations such as the right of access to the courts.  Plaintiff also directs this Court to *Harbison v. Bell*, ___ U.S. ___, 129 S. Ct. 1481 (2009), as support for his contention that "[i]f counsel is warranted and necessary to ensure the propriety of a death row inmate's plea for mercy in the state clemency process, certainly counsel is proper and necessary to ensure that the inmate's actual execution comports with the dictates of the evolving standards of decency under the Eighth and Fourteenth Amendments."  (Doc. # 667, at 2–21.)

Plaintiff's reliance on *Harbison* is notably suspect given that the Supreme Court only addressed clemency proceedings in that case and based its decision not on constitutional grounds but on a statute that on its face addresses the right to counsel in clemency proceedings. Obviously, an execution is not a clemency proceeding, and crediting a limited statutory right to counsel is not tantamount to recognizing a constitutional right to counsel during an execution. But Plaintiff's reliance on his right of access to the courts and the facts of the Broom execution that he incorporates into his pleading, particularly Defendants' reliance on the protocol in refusing to permit Broom to speak with counsel and in denying counsel's request to speak with Broom, present a facially plausible claim.

The Court reaches this conclusion cognizant that another judicial officer in the Sixth Circuit has in fact previously addressed a constitutional claim similar to the one at issue here.  In *Coe v. Bell*, 89 F. Supp. 2d 962 (M.D. Tenn. 2000), a inmate asserted that he had a constitutional right to have his counsel present at his execution, with counsel having access to a telephone. Issuing a temporary restraining order precluding Tennessee officials from interfering with that constitutional right, the trial court judge explained:

> This court is skeptical about a prisoner's realistic ability to assert and get redress for a violation of his right to be free from cruel and unusual punishment during the execution itself.  However, given society's (and the state's) interest in assuring that capital punishment is carried out in a humane manner and the minimal inconvenience to the state, this court finds the plaintiff's position well taken.
>
> This court holds that the plaintiff has the right under the First, Eighth and Fourteenth Amendments to have some access to his counsel during the last hour before the execution and to have his counsel witness the execution, from either the witness room or a room with closed circuit live television transmission.  His counsel must have access to a telephone with an unimpeded outside line at the time that he or she witnesses the execution.

*Id.* at 966-67 (footnotes omitted).  On appeal, the Sixth Circuit found the constitutional issue to be moot because the execution had been carried out, thereby terminating the effective period of the injunction, and because a Tennessee statute had been subsequently amended after the district court decision to provide for counsel to be present at a client's execution.  *Coe v. Bell*, 230 F.3d 1357, 2000 WL 1477441, at *1 (6th Cir. 2000) (unpublished table decision).  *Coe* nonetheless suggests the plausible nature of Plaintiff's Sixth Amendment claim given that Plaintiff has raised a right to relief above the speculative level.  The Court therefore **DENIES** the motion to dismiss Claim Three.

### 4.  Claim Four

In his fourth claim for relief, Plaintiff asserts a claim based upon a purported Fourteenth Amendment equal protection violation.  Relying on Ohio's asserted pattern of deviation from its written protocol, Plaintiff asserts in his pleading that Ohio's protocol and practices lack minimal procedural safeguards necessary to ensure that he be free from cruel and unusual punishment and that he be afforded substantive and procedural due process.  Consequently, Plaintiff pleads, Defendants will treat him differently than other condemned inmates in violation of his equal protection rights.

Defendants move for dismissal of this claim on the specific ground that the Equal Protection Clause does not provide protection against allegedly illegal or negligent acts by state officials.  They direct this Court to *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947) (plurality opinion), in which four Justices of the Supreme Court held that "[e]qual protection does not protect a prisoner against even illegal acts of officers in charge of him, much less against accidents . . . ."  *Id.* at 465 (citing *Lisenba v. People of State of California*, 314 U.S. 219, 226 (1941)).  Plaintiff places this quotation in the proper context, however, noting that the Justices went on to state that "[l]aws cannot prevent accidents nor can a law equally protect all against them.  *So long as the law applies to all alike*, the requirements of equal protection are met."  *Id.* (emphasis added).  In their reply memorandum, Defendant then argue that Plaintiff has failed to allege that the execution procedures as so irrational that they fail to satisfy the rational basis test.

Defendants' reply memorandum raises an argument not raised in their motion.  Their motion to dismiss is expressly limited in argument it makes in regard to Claim Four.  Defendants assert in their motion that Plaintiff's "equal protection and negligence claims similarly fail to state viable grounds for relief.  It is well-established [sic] that the Equal Protection Clause provides no additional protection against allegedly illegal acts by state officials, and that allegations of negligence cannot support a viable Eighth Amendment claim."  (Doc. # 652, at 8.) Defendants later return to this argument, stating:

> [Plaintiff] avers generally that he has a right under the Equal Protection Clause to prevent defendants from subjecting him to cruel and unusual punishment or otherwise acting wrongly in carrying out his execution.  The Supreme Court of the United States has held to the contrary.

(Doc. # 652, at 10.)  Defendants then proceed to quote *Resweber* as discussed above.  This is an

incorrect argument that the Equal Protection Clause simply does *not* provide Plaintiff protections of the sort he claims.  It is not the argument subsequently propounded in the reply memorandum that the conduct and practices that Plaintiff targets pass rational basis scrutiny.

This Court will not consider Defendants' rational basis argument because it was improperly raised for the first time in the reply memorandum.  *See Tolstih v. L.G. Electronics, U.S.A., Inc.*, No. 2:07-cv-582, 2009 WL 3241665, 6 (S.D. Ohio Oct. 2, 2009) (refusing to consider an argument raised for the first time in a reply memorandum); *Piergallini v. Alfa Leisure, Inc.*, No. 2:06-cv-0555, 2008 WL 687167, at *5 (S.D. Ohio Mar. 11, 2008) (declining to address an argument improperly raised for the first time in a reply memorandum); *Ferron v. Search Cactus, L.L.C.*, No. 2:06-cv-327, 2007 WL 1792332, at *4 (S.D. Ohio  June 19, 2007) (rejecting an argument improperly raised for the first time in a reply memorandum).  Therefore, addressing only what is properly before this Court and without opining on the ultimate substantive merits of the equal protection claim, the Court finds the argument for dismissal that Defendants asserted in their motion to dismiss not well taken.  This Court thus **DENIES** the motion to dismiss Claim Four.

### 5.  Claims Five and Six

During the course of the briefing on the motion to dismiss, Plaintiff filed a motion to delete Claims Five and Six from his January 8, 2010 amended complaint.  (Doc. # 684.)  The Court granted that motion on March 3, 2010.  (Doc. # 691.)  Accordingly, the Court need not and shall not discuss the moot arguments regarding the deleted claims.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Defendants' motion to dismiss.  (Doc. # 652.)  The Court dismisses Claims One and Two.

Claims Three and Four remain pending.

**IT IS SO ORDERED.**

     /s/   Gregory L. Frost             
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE