UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD COOEY, et al., | |
| Plaintiffs, | Case No. 2:04-cv-1156 |
| | JUDGE GREGORY L. FROST |
| v. | Magistrate Judge Mark R. Abel |
| TED STRICKLAND, et al., | |
| Defendants. | |
| | |
| BRETT HARTMAN, | |
| Plaintiff, | Case No. 2:09-cv-242 |
| | JUDGE GREGORY L. FROST |
| v. | Magistrate Judge E. A. Preston Deavers |
| TED STRICKLAND, et al., | |
| Defendants. | |
| | |
| LAWRENCE REYNOLDS, | |
| Plaintiff, | Case No. 2:10-cv-27 |
| | JUDGE GREGORY L. FROST |
| v. | Magistrate Judge Terence P. Kemp |
| TED STRICKLAND, et al., | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendants' Privilege Log (Doc. # 774-1), Defendants' Supplemental Privilege Log (Doc. # 777-1), and Plaintiffs' Memo in Opposition to Defendants' Privilege Log and Claims (Doc. # 794). For the reasons that follow,

1

the Court finds that the documents are privileged or protected by the work product doctrine.

## I. BACKGROUND

This is a federal civil rights case concerning Ohio's lethal injection policy and procedures. (Doc. # 794, at 7.) Plaintiffs Jonathan Monroe, Brett Hartman, and Jerome Henderson ("Plaintiffs") served discovery requests on Defendants on March 5, 2010. (Doc. # 745, at 3.) Defendants produced some answers and documents, but declined to provide other answers or documents regarding the November 30, 2009 execution policy, claiming that the deliberative-process privilege, the attorney-client privilege, and/or the work-product doctrine protected these answers and documents from disclosure. (Doc. # 745, at 3.) Following additional correspondence between the parties, the defendants produced some additional documents, but the plaintiffs determined that the additional responses were inadequate. (Doc. # 745, at 3.)

On April 28, 2010, the parties filed an agreement that they had reached regarding the discovery dispute, which called for Defendants to produce some additional information, to file under seal and for an *in camera* inspection copies of all documents that Defendants contended to be privileged along with a privilege log, and to allow Plaintiffs to subsequently file a response to the claims of privilege with the Court. (Doc. # 745, at 4.) The parties agreed that the Court would review Defendants' claims of privilege and determine to what extent, if any, Defendants would be required to produce additional information.

Defendants' privilege log was filed with the Court on May 18, 2010. (Doc. # 774-1.) The privilege log initially asserted that attorney-client privilege protected most of the communications and that the work-product doctrine protected seven others. (Doc. # 774-1.)

After a reassessment of the information, Defendants assert that most of the communications are protected by the attorney-client privilege and that only one of the documents is covered by the work-product doctrine. (Doc. # 794, at 24-25.) Defendants no longer assert that any information is protected by the deliberative-process privilege. (Doc. # 794, at 25.)

Plaintiffs argue that Defendants have not carried their burden of establishing that any privilege applies to protect the communications in question. (Doc. # 794, at 26.) Plaintiffs further assert that even if any privileges do apply, Defendants have not proved that the privileges were not waived or dissolved (Doc. # 794, at 26).

## II. LEGAL STANDARD

According to the Federal Rules of Civil Procedure, courts may issue protective orders regarding specific matters relating to disclosure or discovery. Fed. R. Civ. P. 26©. A protective order may, among other things, forbid the disclosure or discovery, specify terms of any discovery ordered, prescribe an alternate method of discovery, or limit the scope of discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(A)-(D). If a motion for a protective order is wholly or partially denied, the court may order any party to provide discovery. Fed. R. Civ. P. 26(c)(2). A district court's decision regarding discovery will only be reversed upon a showing of abuse of discretion that results in substantial prejudice to a party. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991).

## III. DISCUSSION

### A. Attorney Work-Product Doctrine

The work-product doctrine "protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative."

3

*United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). The burden of proving that an item is prepared in anticipation of litigation rests with the party asserting the privilege. *Id.* The Sixth Circuit adopted the "because of" test to determine whether this standard is met; that is, the asserting party must prove that the item was "prepared or obtained *because of* the prospect of litigation." *Id.* (quoting *United States v. Adlman (Adlman II)*, 134 F.3d 1194, 1202 (2d Cir. 1998)). Items that are "prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for non-litigation purposes," are not protected by the work-product doctrine. *Roxworthy*, 457 F.3d at 593. Thus, if the item would have been prepared in substantially the same manner, regardless of the anticipated litigation, the doctrine does not apply. *Id.* at 593-94.

Furthermore, the "because of" test includes both a subjective inquiry and an objective inquiry into the reasonableness of the party's actions. A court considering the matter must consider "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* at 594.

Defendant maintain that Item #215 is protected by the attorney word-produced doctrine. This Court has reviewed Item #215 and finds that the document is protected by the attorney work-product doctrine. The letter was prepared because of the pending litigation. In fact, the letter specifically refers to the method of execution proceedings. And, this Court finds that it was objectively reasonable to anticipate the need for the information requested because of the ongoing litigation

    **B.**    **Relevance**

4

Plaintiffs argue that Defendants' relevance objections to items 63-70 are improper. (Doc. # 794, at 28-29.) Specifically, Plaintiffs argue that because relevance is a substantive objection not related in any way to privilege, the defendants' failure to raise the objection within the time frame prescribed by Rule 34(b) of the Federal Rules of Civil Procedure has resulted in a waiver of that objection. *Id.*

Rule 34(b) gives parties thirty days from the date of service to respond to discovery requests. Fed. R. Civ. P. 34(b)(2). This thirty-day period includes the time that a party has to raise objections to discovery requests. *Cleveland Indians Baseball Co. v. United States*, No. 96-2240, 1998 U.S. Dist. LEXIS 1459, at *13 (N.D. Ohio Jan. 28, 1998). A party's "failure to respond within that thirty day period operates as a waiver of all objections a party might have." *Id.* The *Cleveland Indians* court believed that the waiver should bar all objections raised outside of the thirty-day time period, even those that are legitimate and that would have been sustained if raised in a timely manner. *Id.* at *14; *see also Davis v. Romney*, 53 F.R.D. 247, 248 (E.D. Pa. 1971) ("If discovery rules are to have 'any effect or meaning, the failure to serve such objections within the time prescribed . . . should be considered a waiver of such objections.' " (quoting *Bohlin v. Brass Rail, Inc.*, 20 F.R.D. 224, 225 (S.D.N.Y. 1957))).

However, other courts have left this matter to the discretion of the reviewing court when the objection concerns relevance of the information sought. *See Shenker v. Sportelli*, 83 F.R.D. 365, 367 (E.D. Pa. 1979) ("In instances in which some of the discovery appears to have absolutely no relevance to the subject matter of the suit or is otherwise patently improper, we believe that it is within the discretion of the court not to compel discovery as to those matters."); *see also Williams v. Krieger*, 61 F.R.D. 142, 145 (S.D.N.Y. 1973) ("Wright and Miller suggest

5

that the failure to make any objections with the proper time results in a waiver of the objection ... [a]s always, however, the matter is one within the sound discretion of [the] Court.").

This Court has reviewed the Items 63-70. There is absolutely no relevance to the disputed items and the ongoing litigation. The Court further finds that the contents of the items could not lead to any relevant information. Plaintiff's objections are overruled.

### C. Attorney-Client Privilege

Plaintiffs assert that the attorney-client privilege does not apply to protect the requested information from disclosure.

The attorney-client privilege is recognized as the oldest privilege relating to confidential communications. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The purposes of the privilege are to promote loyalty between lawyers and clients and to encourage full disclosure by clients to their attorneys. *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998). Because application of the privilege "excludes relevant evidence and stands 'in derogation of the search of the truth, ' " *id.*, courts should permit application of the privilege only when "necessary to achieve its purpose" and only to protect legal disclosures that "might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

Corporate clients may assert the attorney-client privilege, *Upjohn*, 449 U.S. at 390-91, and the Sixth Circuit has extended the privilege to protect governmental clients in civil matters. *Ross v. City of Memphis*, 423 F.3d 596, 601 (6th Cir. 2005). Regarding the Supreme Court's view that extension of the privilege serves the function of full and frank communication, the Sixth Circuit found that there is "no reason that [the] function is no longer served simply because the corporation is a municipality or, more broadly, that the organization or agency is a

government entity."[1]  *Ross*, 423 F.3d at 602.  Without the availability of the attorney-client privilege, "governments would be at an unfair disadvantage in litigation."  Restatement (Third) of Law Governing Lawyers § 74 cmt. B (2000).

> According to the Sixth Circuit, the elements of the privilege are as follows:
>
>> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protection is waived.

*Reed*, 134 F.3d at 355-56 (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992).  The party asserting the privilege bears the burden of establishing the existence of the privilege.  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

Plaintiffs contend that Defendants have not satisfied their burden of proving that all elements of the attorney-client privilege are met.  (Doc. # 794, at 31.)  In the instant matter, Defendants agreed to supply the court with a privilege log according to the standards set forth in *In re Universal Services Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669 (D. Kan. 2005).  (Doc. # 794, at 7.)  The *In re Universal Services* court held that "[t]he information provided [in a privilege log] must be sufficient to enable the court to determine whether *each element* of the asserted privilege or protection is satisfied."  *Id.* at 673 (quoting *Hill v. McHenry*, No. 99-2026-CM, 2002 U.S. Dist. LEXIS 6637, at *5 (D. Kan. Apr. 10, 2002).  Courts require the following to be included in privilege logs:

---

[1] Although the *Ross* court noted that the case at hand involved a claim of privilege made by a municipal government, other Circuits considering the issue did not differentiate among the varying levels of government in determining whether the privilege should apply.  *Ross*, 423 F.3d at 601 n.1.

> 1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
> 2. The date upon which the document was prepared;
> 3. The date of the document (if different from # 2);
> 4. The identity of the person(s) who prepared the document;
> 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"
> 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"
> 7. The number of pages of the document;
> 8. The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
> 9. Any other pertinent information necessary to establish the elements of each asserted privilege."

*In re Universal Serv.*, 232 F.R.D. at 673 (quoting *Hill*, 2002 U.S. Dist. LEXIS 6637, at *8).

The privilege log must be detailed enough to prove that the communications in question were in fact confidential communications relating to legal advice. *In re Search Warrant Executed at Law Offices of Stephen Garea*, No. 97-4112, 1999 U.S. App. LEXIS 3861, at * 7 (6th Cir. Mar. 5, 1999). The party asserting the privilege must make "at least a minimal showing that the communication contained legal matters," but that showing need not be "onerous and may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue for which advice was sought." *Id.* at *5-6. However, merely conclusory statements may not be enough to satisfy this minimal standard. *Id.* at *6. A "cryptic privilege log" does not satisfy this standard if "review of the documents themselves fails to reveal whether they were produced or

transmitted in the course of legal representation." *Id.* at *7. *See also United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of the legal requirements for application of the privilege, his claim will be rejected" (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993)).

The Court finds that the privilege log is sufficiently specific. A review of each of the items indicates that the identifying information provides sufficient detail. The *in camera* inspection of the items confirms the specificity needed.

The plaintiffs assert that the defendants have not met the general elements of the attorney-client privilege because "[a]n attorney is not acting in his or her capacity as a 'legal advisor' when the attorney is 'drafting or establishing broad policy' or 'recommending a[n agency] action or determination,' " and thus the communications at issue do not satisfy elements one, two, or three of the attorney-client privilege (Doc. # 794, at 14, 32). The plaintiffs rely on *General Electric Co. v. Johnson*, No. 00-2855, 2006 U.S. Dist. LEXIS 64907 (D.C. Cir. 2006) ("*Johnson*") to support their claim that when attorneys participate in creating policy, they are not acting in their primary legal capacity, and thus may not invoke the protections of the attorney-client privilege (Doc. # 794, at 13-14). Specifically, the plaintiffs state that "[w]hen government attorneys are, 'in effect . . . making law, they may not properly invoke the protections of the attorney-client privilege. In that context, the communications are not made for the purpose of securing legal advice or services, but rather for the purpose of securing policy' "(Doc. # 794, at 13-14) (quoting *Johnson*, 2006 U.S. Dist. LEXIS 64907, at *46). The *Johnson* Court held that

> [T]he privileged role of an attorney does not encompass the establishment of broad agency policy, adjudication of responsibilities, assessment of penalties,

9

> or other functions that create law . . . [so] when an attorney is acting more in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply.

*Johnson*, 2006 U.S. Dist. LEXIS 64907, at *50. The Second Circuit considered this limit on attorney-client privilege in *National Council of La Raza v. Departmentt of Justice*, 411 F.3d 350 (2d Cir. 2005). There, the Second Circuit held that the government could not invoke the attorney-client privilege to protect a legal memorandum because the government had incorporated the memorandum into its policy regarding immigration law enforcement authority by referencing it repeatedly in the agency policy and indicating that the agency intended the memorandum to be the exclusive statement of and justification for the policy. *Id.* at 357-61.

Participation in policy matters does not automatically render a communication unprivileged, however. When communications contain both legal advice and non-legal considerations, a court must consider "whether the predominant purpose of the communication is to render or solicit legal advice." *Pritchard v. County of Erie (In re County of Erie)*, 473 F.3d 413, 420 (2d. Cir. 2007). If so, all portions of the communication, including the non-legal considerations, will be protected. *Id.*

The *In re County of Erie* court recognized that the attorney-client privilege should apply "with special force" in the governmental setting. *Id.* at 419 ("It is crucial that government officials, who are expected to uphold and execute the law . . . be encouraged to seek out and receive fully informed legal advice."). The court noted that "[a]ccess to legal advice by officials responsible for formulating, implementing and monitoring governmental policy is fundamental to 'promot[ing] broader interests in the observance of law and administration of justice.' " *Id.* (quoting *Upjohn*, 449 U.S. at 389). Further, "when a lawyer has been asked to assess

10

compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation--or that advocates and promotes compliance, or oversees implementation of compliance measures--is legal advice." *In re County of Erie*, 473 F.3d at 422.  The availability of sound legal advice in these situations is beneficial not only to the client, but also to the public, especially when the public officials seeking advice are involved in law enforcement and corrections policies.  *Id.*

This Court finds that the *In re County of Erie* case more closely conforms to the instant matter than *National Council of La Raza* or *Johnson*.

The attorney-client privilege was not available to protect disclosure of the memorandum at issue in *National Council of La Raza*.  411 F.3d at 361.  The memorandum set forth the position taken by the Department of Justice regarding enforcement of federal immigration law by state and local authorities.  *Id.* at 352-53.  The official agency policy contained repeated references to the memorandum, and the United States Attorney General cited the legal opinions contained in the memorandum to be the reasoning behind the official agency policy.  *Id.* at 353-54.  Because of the repeated references to and reliance upon the memorandum, the Second Circuit found that the memorandum had been incorporated into agency policy.  *Id.* at 352.  The court stated that the attorney-client privilege could not be invoked to protect a communication that had been adopted as or incorporated by reference into agency policy because the "principal rationale behind the attorney-client privilege--'to promote open communication between attorneys and their clients so that fully informed legal advice may be given'--. . . evaporates; for once an agency incorporates or adopts a document, frank communication will not be inhibited." *Id.* at 360 (quoting *John Doe, Inc. v. United States (In re John Doe, Inc.)*, 13 F.3d 633, 635-36

(2d. Cir. 1994)).

In *Johnson*, the court found some of the disputed documents to be protected by the attorney-client privilege while others were not. *Johnson*, 2006 U.S. Dist LEXIS 64907. The discovery dispute arose out of a claim of facial unconstitutionality of certain provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and the Environmental Protection Agency's administration of that law. *Id.* at *4. General Electric served a broad discovery request upon the EPA, seeking disclosure of thousands of documents dating back as far as 1980. *Id.* at *8. The EPA claimed that the documents were protected by the deliberative-process privilege, the attorney-client privilege, and/or the attorney work-product doctrine. *Id.* With respect to the claims of attorney-client privilege, the court held that some of the documents were privileged, and some were not, because in some situations agency attorneys were acting in the same capacity as private attorneys, while in some situations they were not. *Id.* at *50-51. Attorneys for the EPA had a multitude of responsibilities, including drafting policy, recommending regulation, and performing other regulatory and adjudicatory functions. *Id.* at *50. In the context of the litigation before the court, the court found the attorneys to be functioning primarily in the same manner as would private attorneys protecting the agency's interests. *Id.* at *51. In the context of the agency's administration of CERCLA, however, the court found that agency attorneys were acting in a different capacity. *Id.* As part of its administration duties, the EPA held proceedings that functioned as prosecutions and adjudications of alleged violations of CERCLA. *Id.* When EPA attorneys were functioning in this context, their communications were not privileged, because the communications did not concern legal strategy of the agency or information that was confidential with the client agency.

12

*Id.*

In contrast, the *In re County of Erie* court found that contested documents at issue could be protected by the attorney-client privilege. *In re County of Erie*, 473 F.3d at 422-23 (declining to decide whether the documents were actually privileged and remanding for a determination of whether any privilege was waived by disclosure). *In re County of Erie* involved a claim by a class of individuals who alleged that Erie County had subjected them to unconstitutional strip searches upon admittance to the Erie County Holding Center and the Erie County Correctional Facility. *In re County of Erie*, 473 F.3d at 415-16. The documents in question were emails that contained review of the law concerning strip searches, assessments of the county's current policy, suggested alternatives, and a monitoring of the implementation of the policy changes. *Id.* at 416. The United States District Court for the Western District of New York ordered disclosure of the emails, finding that the communications went beyond the scope of legal analysis. *Id.* On appeal, the Second Circuit disagreed after employing the 'predominant purpose' rule. *Id.* at 422. The appellate court found that the emails were "sent for the predominant purpose of soliciting or rendering legal advice." *Id.* The emails conveyed to the Erie County officials responsible for the County's corrections policies "a lawyer's assessment of Fourth Amendment requirements, and provide[d] guidance in crafting and implementing alternative policies for compliance." *Id.* at 422-23. Because of the context in which the advice was solicited and rendered, the advice did "not constitute 'general policy or political advice' unprotected by the privilege." *Id.* at 423 (quoting *In re Lindsey*, 148 F.3d 1100, 1120 (D.C. Cir. 1998) (Tatel, *J.*, dissenting)).

The items in question contain emails and communication, the predominant purpose of

which was to schedule meetings or telephone calls and to provide or solicit legal advice. The attorney-client privilege applies to all of the withheld documents.

Plaintiffs alternatively claim that if the attorney-client privilege does apply to protect the communications at issue, Defendants waived that privilege when communications were disclosed to non-essential agency personnel outside of the attorney-client relationship (Doc. # 794, at 36).

Voluntary disclosure of communications made with one's attorney to a third party generally waives the attorney-client privilege. *Libbey Glass, Inc. v. Oneida Ltd.*, 197 F.R.D. 342, 347 (N.D. Ohio 1999). In some instances, however, communications disclosed to people other than the attorney and client may remain protected.

The privilege "must include all the persons who act as the attorney's agents." *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (quoting 8 Wigmore, Evidence, § 2301; Annot., 53 A.L.R. 369 (1928)). The *Kovel* Court found that "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others; few lawyers could now practice without the assistance of secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts," *id.*, and thus confidential communications in the presence of or disclosed to these agents should remain protected.

The common-interest doctrine also operates to protect information disclosed to other parties, expanding coverage of the attorney-client privilege to include situations in which two or more clients with a common interest in a matter agree to exchange information regarding the matter. *Reed*, 134 F.3d at 357. The exception typically arises when the parties are either

represented by the same attorney or are individually represented, but have the same goal in litigation. *Fresenius Med. Care Holdings v. Roxane Labs, Inc.*, No. 2:05-cv-0889, 2007 U.S. Dist. LEXIS 98216, at *6 (S.D. Ohio Mar. 21, 2007). "Under those circumstances, [parties] may freely share otherwise privileged communications without waiving the privilege." *Id.* Each client and each attorney become part of the protected attorney-client "unit", so that parties may pool their information in order to facilitate effective representation. 2-501 Federal Rules of Evidence Manual 501.02(5)(e)(ii).

It is not necessary that a common legal interest be derived from legal action; it is possible for two or more parties to share a common interest without becoming parties to the same litigation. *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04-cv-2347, 2006 U.S. Dist. LEXIS 4998, at *20 (N.D. Ohio Feb. 9, 2006), *rev'd in part on other grounds*, 258 F. App'x. 318 (Fed. Cir. 2007). Additionally, it is not necessary that parties be in agreement on every point; a communication is privileged as long as it deals with a matter on which parties have agreed to work toward a mutually beneficial goal, even if parties are in conflict on some points. 2-501 Federal Rules of Evidence Manual 501.02(5)(e)(ii).

The common-interest doctrine does have limitations. First, the doctrine applies only when all attorneys and clients have agreed to take a joint approach in the matter at issue. *Id.* It is not necessary that parties express this agreement in writing; so long as the parties clearly and specifically agree to the joint venture in some manner, the doctrine will apply. *Id.* Communications made before an agreement to proceed jointly are not privileged. *Id.* (citing *United States v. Melvin*, 650 F.2d 641 (5th Cir. 1981) (communications made to a co-defendant to enlist his participation in a common defense not privileged because the co-defendant had not

yet agreed to participate jointly)). Second, the doctrine applies only to protect communications regarding the common interest and intended to further that interest. 2-501 Federal Rules of Evidence Manual 501.02(5)(e)(ii). Extraneous communications that do not further the common goal are not privileged. *Id.* Third, communications made between parties themselves, when no attorneys are present, may not be privileged, as some courts find that these communications are not likely tied to the parties' common legal interest. *Id.* (citing *United States v. Gotti*, 771 F. Supp. 535, 545 (E.D.N.Y. 1991) (finding that extending the doctrine to such communications is "neither supported in law nor in logic")).

There has been no waiver of the attorney-client privilege in this case. A review of the items withheld indicates that the attorneys involved in this matter communicated among themselves with a common interest and were proceeding jointly to analyze Ohio's existing and proposed execution protocols.

Plaintiffs next contend that Defendants have waived any attorney-client privilege because the substance of the communications have been adopted as company policy (Doc. # 794, at 36). Plaintiffs claim that Defendants have adopted a new agency policy based upon the research done by in-house counsel, and Defendants have "not demonstrated that the substance of the communication has not been adopted as part of the new execution policy" (Doc. # 794, at 36).

As previously stated, the common interest doctrine applies and Defendants have not waived the attorney-client privilege. In fact, this Court finds that the attorneys scrupulously avoided any contact that would potentially waive the privilege.

Plaintiffs also argue that Defendants have waived any attorney-client privilege by Defendants' disclosure to Plaintiffs of a draft version of what became DRC Policy 01-COM-11

(DRC's execution policy).  (Doc. # 794, at 37.)  They claim that the research, consideration, and development of a new execution policy is the "subject matter" of the draft, and thus disclosure of the draft acts as a waiver on any other communication that relates to the same subject matter. (Doc. # 794, at 37.)

Federal Rules of Evidence Rule 502 limits subject-matter waiver.  FED. R. EVID. 502. The rule states:

> (a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.  When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>   (1) the waiver is intentional;
>   (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>   (3) they ought in fairness to be considered together.

*Id.*  The Advisory Committee Note to Rule 502 explains that "subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  FED. R. EVID. 502 advisory committee's note.

The Sixth Circuit considered a few cases in support of subject-matter waiver in *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251 (6th Cir. 1996):

> *See e.g.*, *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter."); *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all

17

> other communications relating to the same subject matter . . . ."); *Edwards v. Whitaker*, 868 F. Supp. 226, 229 (M.D. Tenn. 1994) ("Voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.").

*Id.* at 255. The Sixth Circuit noted, however, that "these cases do not truly answer the question of the proper scope of the waiver, for they only inform us that waiver applies to the rest of the communications on the same subject matter. But subject matter can be defined narrowly or broadly." *Id.* In its attempt to define the scope of the waiver, the court noted that it was "persuaded by the line of cases that try to make prudential distinctions between what was revealed and what remains privileged." *Id.* at 255-56. Specifically, the court cited to:

> *In re Sealed Case*, 877 F.2d 976, 981 (D.C. Cir. 1989) (remanding district court decision finding company waived privilege on six documents by inadvertently disclosing one of the documents, because lower court "did not fully explain why the communications were related"); *United States v. (Under Seal)*, 748 F.2d 871, 875 n.7 (4th Cir. 1984) ("If any of the non-privileged documents contain client communications not directly related to the published data, those communications, if otherwise privileged, must be removed by the reviewing court before the document may be produced."); *United States v. Cote*, 456 F.2d 142, 145 n.4 (8th Cir. 1972) (requiring in camera review of documents to protect information not already published, for "too broad an application of the rule of waiver requiring unlimited disclosure . . . might tend to destroy the salutary purpose of the privilege"); *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (finding waiver "only as to communications about the matter actually disclosed"); *Schenet v. Anderson*, 678 F. Supp. 1280, 1284 (E.D. Mich. 1988) ("The privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties.").

*Id.* at 256. A court considering how broadly to construe the scope of a waiver of attorney-client privilege must make its decision "dependant on the factual circumstances presented" to it. *N. Am. Rescue Prods. v. Bound Tree Med., LLC*,

No. 2:08-cv-101, 2010 U.S. Dist. LEXIS 45302, at *32 (S.D. Ohio May 10, 2010).

This Court finds that the disclosure of the final protocol did not waive the attorney-client privilege as to the items withheld. The attorneys in this case participated in the legal issues involved in drafting the new protocol and provided advice concerning the ongoing litigation. The disclosure of the final protocol did nothing to destroy the attorney-client privilege.

## IV. CONCLUSION

This Court has reviewed each of the withheld documents. In the end, the Court finds that the documents are all privileged or subject to the work product doctrine. It should be noted that the *in camera* review revealed very little substantive information that is relevant to this matter. That which is relevant is protected from disclosure.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost

**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**